**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **CAPP, INC., YOUNG PEOPLES DAY CAMPS INC., KMJA DAY CAMPS, INC., AND PRAYUS GROUP LLC,** on behalf of themselves and all others similarly situated, | Case No. 1:23-cv-04676-SCS |
| Plaintiffs, | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| **DISCOVER FINANCIAL SERVICES, DFS SERVICES, LLC, AND DISCOVER BANK,** | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiffs CAPP, Inc., Young Peoples Day Camps Inc., KMJA Day Camps, Inc., and Prayus Group LLC (collectively, "Plaintiffs"), by and through their undersigned counsel, bring this class action pursuant to Rule 23(a) and (b) of the Federal Rules of Civil Procedure on behalf of themselves and a proposed class of all similarly situated merchants. This class action is filed against defendants Discover Financial Services, DFS Services, LLC and Discover Bank (collectively "Defendants" or "Discover") and allege the following upon information and belief based on the investigation of their counsel, public records, filings with the Securities and Exchange Commission ("SEC"), the U.S. Federal Reserve Bank, and/or documents and information obtained through public resources, including Discover's website, except as to those paragraphs pertaining to Plaintiffs' own actions, which are alleged upon personal knowledge:

## I.     OVERVIEW OF THE CASE

1.      This case is about the ongoing fraudulent business practices of Discover, and its enterprise, who created a scheme to defraud and conceal the misclassification of interchange fees

in millions of transactions of hard working business owners. For an untold number of years, Discover has been engaged in the misclassification scheme within its own company and utilizing the services of credit card processors who collaborated in the scheme and benefitted from the proceeds, while allowing fraudulent practices to remain hidden from merchants.

2.      As detailed herein, when Discover Bank issues a credit card, it provides every account a classification.  That classification is a central variable that dictates the interchange fee rate paid by a merchant on a Discover card purchase transaction. Credit card accounts classified as "commercial" draw the highest fee rate (*i.e.,* 2.4% on the purchase amount) in the industry while basic consumer accounts draw the lowest fee rate (*i.e.,* 1.4% on the purchase amount).

3.      To obtain the highest possible interchange fee, Discover was falsely misclassifying consumer credit cards as "commercial" pursuant to established systems, practices and procedures that were intentionally designed to disregard the *actual* type of credit account being created.

4.      When an individual seeking a credit card account self-reported that their vocation was "professional", Discover classified the credit account as "commercial". Thus, in processing millions of credit card applications annually, Discover Bank was not questioning nor verifying when a credit card account was (1) being requested on behalf of an *owner* of a business entity for (2) primarily business-related expenses.

5.      Discover's practices and procedures were intentionally designed to enable Discover to misclassify millions of individual consumer accounts as "commercial".

6.      Small businesses throughout the United States were unknowingly paying Discover overinflated interchange fees each and every time these millions of misclassified Discover cards were used in a purchase transaction. The manner in which this scheme was perpetrated, was designed to conceal from merchants that certain transactions were being overcharged. These small

2

businesses would have no way of knowing whether the interchange fee was correct. Plaintiffs did not, and could not have, known or even suspected the possibility of this misclassification scheme until April 25, 2023, when Discover admitted to weaknesses in its classification system and that regulators were investigating its classification practices. In the aggregate, the amount of merchant overpayments are astronomical. On July 19, 2023, Discover issued a press release admitting that it had been misclassifying card products since mid-2007 and set aside a liability reserve of $365 million. However, the full extent of the liability is unclear given the availability of historical data and other factors. Only a detailed investigation and discovery will reveal the true scope of the harm caused by Discover over the course of this scheme.

7.      Discover's credit card misclassification scheme also resulted in a fraud on the government and bank regulators. As required by federal law, including Title I, 165(d) of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act"), the Board of Governors of the Federal Reserve System ("Federal Reserve") and the Federal Deposit Insurance Corporation ("FDIC") require bank holding companies with consolidated assets of $50 billion or more, such as Discover, to submit periodic financial reports and resolution reports in the event of material financial distress or failure, to the Federal Reserve, the FDIC and state bank regulators.

8.      Interchange fees comprise a primary source of revenue for Discover, over a billion dollars annually, and thus Discover's misclassification scheme resulted in years of material misreporting of its income to federal and state regulators. The security of the entire U.S. banking system depends and wholly relies upon the accuracy of banks' reporting of assets, liabilities, income, debts, and cash reserves.

9.     Discover's actions have caused Plaintiffs and millions of merchants across the United States to suffer harm, including but not limited to excess interchange fees of upwards of hundreds of millions of dollars.

10.     Plaintiffs seek to remedy these harms and prevent their future occurrence, individually and on behalf of the proposed Classes of similarly-situated merchants who were wrongfully overcharged interchange fees by Discover. Plaintiffs assert claims for themselves and on behalf of a nationwide class of merchants against Discover for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO"), the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. § 505/1 *et seq.*, and (3) unjust enrichment.

11.     In addition, Plaintiffs seek to represent their respective States' Subclasses and further allege violations of (1) the New Jersey Consumer Fraud Act, N.J. Stat. §56:8-1 *et seq*. and New Jersey Racketeer Influenced and Corrupt Organizations Act, N.J. Stat. § 2C:41-2(c) on behalf of the New Jersey Subclass; (2) New York's Deceptive Practices Act, N.Y. Bus. Gen. Law § 349 on behalf of the New York Subclass; (3) Pennsylvania's Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201-1 *et seq.* on behalf of the Pennsylvania Subclass; (4) Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a *et seq.*, on behalf of the Connecticut Subclass; (5) Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), § 501.201 *et seq*. on behalf of the Florida Subclass; and (6) Massachusetts Consumer Protection Act, ("MCPA"), Mass. Gen. Law Chapter 93A, on behalf of the Massachusetts Subclass.

12.     Plaintiffs seek to recover for themselves and the Classes actual and statutory damages, injunctive relief, restitution, disgorgement, and reasonable attorneys' fees and costs.

## II.    JURISDICTION AND VENUE

13.    This Court has jurisdiction over the subject matter of this action pursuant to 18 U.S.C. §§1961, 1962, 1964 and 28 U.S.C. §§1331 and 1367. This Court also has jurisdiction over this class action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), providing for jurisdiction where, as here, "any member of a class of Plaintiffs is a citizen of a State different from any defendant" and the aggregated amount in controversy exceeds five million dollars ($5,000,000), exclusive of interests and costs. *See* 28 U.S.C. §§ 1332(d)(2) and (6).

14.    This Court has personal jurisdiction over Defendants pursuant to 18 U.S.C. §1965(a) and Fed. R. Civ. P. 4(k). Discover's principal place of business is 2500 Lake Cook Road, Riverwoods, Illinois 60015, and is located in this District. Moreover, Discover is subject to personal jurisdiction in this District because it is authorized to conduct business in this District, and regularly conducts and transacts business in this District.

15.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the circumstances that relate to the disputed transactions occurred primarily and substantially in Illinois. Indeed, Illinois is at the center of the misconduct.  Discover devised, implemented, and deployed its scheme from its headquarters in Illinois. All processes needed to deploy the scheme occurred in Illinois, including the misclassification of the credit accounts. The false and misleading charges and any false statements arising from the misclassification were generated in Illinois. Finally, the different levels of Discover executives and employees that took part in this scheme were based in Illinois.

## III.    THE PARTIES

16.    Plaintiff **CAPP, Inc. ("CAPP")** is a Pennsylvania corporation with its principal place of business located at 201 Marple Ave., Clifton Heights, Pennsylvania.  CAPP is a leading

supplier of heating and air conditioning products. CAPP accepts Discover and derives revenue through Discover credit card payments. CAPP is charged an interchange fee on every Discover credit card transaction processed by its credit card processor, including commercial interchange fees.

17.     Plaintiff **Young Peoples Day Camps Inc. ("YPDC")** is a New York corporation with its principal place of business in New Jersey. YPDC operates day camps in various locations in New York and New Jersey. YPDC accepts Discover credit cards and derives revenue through Discover credit cards payments. YPDC is charged an interchange fee on every Discover credit card transaction processed by its credit card processor, including commercial interchange fees.

18.     Plaintiff **KMJA Day Camps, Inc. ("KMJA")**, is a New Jersey corporation with its principal place of business in New Jersey. KMJA operates day camps in various locations in New York and New Jersey. KMJA accepts Discover credit cards and derives revenue through Discover credit cards payments. KMJA is charged an interchange fee on every Discover credit card transaction processed by its credit card processor, including commercial interchange fees.

19.     Plaintiff **Prayus Group LLC** ("Prayus") is a Massachusetts limited liability company with its principal place of business located at 4900 Transit Rd. Suite 300, Depew, New York. Prayus owns and operates wellness centers and spas in Connecticut, Massachusetts, and New York. Prayus accepts Discover and derives revenue through Discover credit card payments. Prayus is charged an interchange fee on every Discover credit card transaction processed by its credit card processor, including commercial interchange fees.

20.     Defendant **Discover Financial Services** ("DFS") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 2500 Lake Cook Rd., Riverwoods, Illinois 60015. DFS is the parent holding company of DFS Services,

LLC and Discover Bank.  DFS is the bank holding company and financial holding company subject to oversight, regulation, and examination by the Federal Reserve.

21.    Defendant **Discover Bank** ("Discover Bank") is a wholly-owned direct subsidiary of DFS. Discover Bank is an FDIC-insured Delaware state-chartered bank located in Delaware. Discover Bank is regulated by the Delaware State Bank Commissions and the FDIC.  Discover Bank originates credit card, personal, and student loans as well as direct-to-consumer deposits and serves as the primary legal entity for the card issuing business line.

22.    Defendant **DFS Services, LLC** ("Discover Network"), a Delaware limited liability company wholly owned by DFS, owns and operates the Discover Network and serves as the primary legal entity for the card network core business line. Discover Network processes all transactions for Discover-branded credit and debit cards and provides payment transaction processing and settlement services. No other payment network processes Discover-brand credit card transactions in the United States.

23.    Defendants DFS, Discover Bank, and Discover Network are collectively referred to herein as "Discover" or "Defendants".

## IV.    <u>FACTUAL BACKGROUND</u>

### A.    <u>Discover and its Network</u>

24.    Discover provides digital banking products and services and payment services.  It is the third largest credit card company in the world after Visa, MasterCard and American Express, with 7.6% of the credit card market with more than 57 million cardholders in the United States.

25.    Discover Bank's credit card issuing business line offers and issues proprietary credit cards to consumers and small businesses.  *See* Discover Financial Services, Resolution Plan

Public, dated Dec. 18, 2014, at https://www.federalreserve.gov/bankinforeg/resolution-plans/discover-fs-3g-20141231.pdf.

26.     Discover Network provides payment services and processes all transactions involving a Discover credit card, including more than 3 billion transactions annually in the United States alone.

27.     Discover is accepted by more than 60 million merchants around the world.

28.     For a merchant to accept Discover credit cards, the merchant will require a merchant account, either directly through Discover or indirectly through a credit card processor known as a merchant acquirer (hereinafter "Credit Card Processors"). Credit Card Processors are financial institutions that act as an intermediary between merchants and card payment networks such as Discover, Visa, MasterCard, and America Express.  For merchants with a direct account, Discover has internal procedures and processes to process the charges.

29.     With every purchase made using a Discover card account, a merchant pays an interchange fee with the average credit card interchange fee reportedly ranging from 1.55% to 2.5%, depending on certain core variables.

30.     Interchange fees are a major source of revenue for Discover which reportedly earned over $3.581 billion dollars in interchange fee revenue from 2020 through 2022. Discover is also required by law to regularly report its interchange fee revenue to the SEC, FDIC, Federal Reserve, as well as other credit and banking regulators.

31.     Merchants with direct relationships with Discover submit their transactions directly to Discover Network who then returns to the direct merchants the amount of their card transactions minus the interchange fees. However, the majority of merchants are indirect in that they use a

Credit Card Processor intermediary to submit their transactions to Discover. Discover Network then pays the amount of the card transactions minus its interchange fees.

32.     The following chart shows the Discover card transaction cycle as processed on the Discover Network:



*Source:* DFS Form 10-K for the period ending December 31, 2022, available at https://www.sec.gov/ix?doc=/Archives/edgar/data/0001393612/000139361223000007/dfs-20221231.htm.

**B.     Discover's Misclassification Scheme**

33.     As set forth above, a merchant's interchange fee rate varies depending on the Discover "card product" that is used in a particular transaction.

34.     A card product refers to a classification of cards (*i.e.*, Commercial or Consumer). Discover interchange fees depend on the card product type and in some cases depends on how that card was processed (*i.e.*, whether the card was present at the store or keyed in over the telephone).

35. Discover generally defines a commercial card product type as one issued to a business owner or their designated representative for business related expenses approved by the employer.

36. Discover anticipates that all purchases made using a commercial card product type will be used nearly exclusively or at least primarily for a business purpose. Thus Discover charges a higher interchange fee on commercial card types because it expects that those business owners will have higher than average income, volume, and amount of annual purchases.

37. As of 2022, Discover's reported interchange fee rates were as follows:

| Card Product/Processing Type | Volume Rate | Per-Transaction Fee |
| --- | --- | --- |
| Basic, Card Present | 1.56% | $0.10 |
| Rewards / Premium, Card Present | 1.71% | $0.10 |
| Premium Plus, Card Present | 2.15% | $0.10 |
| Basic, Keyed | 1.87% | $0.10 |
| Rewards, Keyed | 1.97% | $0.10 |
| Premium, Keyed | 2.00% | $0.10 |
| Premium Plus, Keyed | 2.40% | $0.10 |
| Commercial, All Methods | 2.30% | $0.10 |

38. As reflected in the chart above, Discover Bank generally charges merchants the highest interchange fee on commercial card products in comparison to cards issued to individual consumers.

39. In 2023, as supported by Discover Bank's recent disclosure, it was revealed that Discover was engaged in the fraudulent practice of misclassifying millions of card accounts as "commercial" while knowing that these cards were being issued to consumers that had not expressed any intention of using the card primarily for their business expenses or commercial purposes.

40.     For years, Discover Bank was classifying millions of consumer credit card accounts as "commercial" for interchange fee purposes based solely on credit card applicants self-reporting that they were "professionals."

41.     Discover Bank did not require these individual consumers requesting a card account to certify or confirm that the card they were seeking was to be used by a business for business expenses, much less primarily for business expenses.  Without any basis beyond the self-reported attribute of being a professional, Discover designated millions of consumer accounts as "commercial."

42.     By misclassifying these accounts as "commercial," Discover Bank was able to charge a significantly higher interchange fee, sometimes *almost double* what the interchange fee should have been had it been accurately classified.

43.     As a result, Discover was able to significantly overstate its interchange fee revenue to state and federal bank regulators in mandated quarterly and financial reporting as well as in compulsory reports required by the Dodd-Frank Act.

44.     Merchants accepting Discover cards were unknowingly getting overcharged on interchange fee assessments each and every time a misclassified account was used in connection with a purchase transaction.

45.     Meanwhile, Discover Network and Credit Card Processors who process billions of Discover transactions every year, and had an aggregate view of the total interchange fees, and sales volume and purchase amounts by credit card type knew, or at least had to know, that Discover Bank was misclassifying credit accounts as "commercial" and inflating its interchange fees.  At a minimum, Discover Network and Credit Card Processors failed to question the increases in fees and higher overall interchange fee rates incurred on Discover transactions and cooperatively

11

continued to process these transactions as "commercial" and pass the inflated interchange fees onto the merchants.

46.     While the date that the scheme started is not yet known, the total amount of inflated interchange fee revenue must have been substantial, potentially in the hundreds of millions of dollars, because Discover with annual net income of $4.4 billion was required to report the issue in its most recent quarterly financial report.

47.     Specifically, on April 25, 2023, Discover disclosed that it was "currently engaged in a review of Discover Bank's card product classification practices (which determine how certain credit cards are assigned to network product categories) and related risk management and governance issues." *See* Discover Form 10-Q, for the period ending March 31, 2023.

48.     That Discover pointed to risk management and governance issues indicates that Discover's management was involved, or at the very least had knowledge of the misclassification scheme.

## TOLLING OF THE STATUTE OF LIMITATIONS

49.     An ordinary merchant would not have been able to identify Discover's misclassification scheme from their monthly invoices or transaction data. Nor did ordinary merchants have any way to validate Discover's classification of credit account types.

50.     Moreover, unlike Visa and MasterCard, Discover is unique in that its entire credit card business is a closed ecosystem. Discover issues and distributes credit cards *and* provides the network upon which all Discover credit card transactions are processed. Visa and MasterCard, on the other hand, do not issue and distribute credit cards. Their function is that of a credit card payment network limited to processing payments between banks and merchants for credit card

purchases. As a result, there are checks and balances in the Visa and MasterCard systems that do not exist in a closed credit card ecosystem such as Discover.

51.     Given the nature of the fraudulent scheme and Defendants' knowing and active concealment of the facts alleged herein, any applicable statute of limitations has been tolled. Plaintiffs and members of the Class could not have reasonably discovered, much less suspected the misclassification scheme, until DFS's disclosure in its quarterly filing made on April 25, 2023.

## RICO ALLEGATIONS

### A.  The Credit Misclassification Enterprise

52.     DFS, Discover Bank and Discover Network, are all "persons" within the meaning of 18 U.S.C. §1961(3) since all are capable of holding a legal or beneficial interest in property;

53.     DFS, Discover Bank, Discover Network, its employees and the Credit Card Processors form an association-in-fact and function as a continuing unit in furtherance of a common purpose. The fraudulent activity described herein, constitutes an enterprise within the meaning of 18 U.S.C. § 1961(4) (the "Credit Misclassification Enterprise").

54.     The Credit Misclassification Enterprise was and continues to be an ongoing organization which engaged in, and whose activities affected, interstate commerce.

55.     DFS, Discover Bank, Discover Network, and the Credit Card Processors participated in and are members and part of the Credit Misclassification Enterprise, but they also have an existence separate and distinct from the Enterprise.

56.     As set forth above, the Credit Misclassification Enterprise has an ascertainable structure separate and apart from the pattern of racketeering activity in which DFS, Discover Bank, Discover Network, and the Credit Card Processors have engaged.

### B. **Operation and Control**

57.     Defendant Discover Bank controlled and operated the Credit Misclassification Enterprise by, among other things:

      (a)     Dictating the credit account type for tens of millions Discover credit card accounts used in transactions processed and settled by the Credit Card Processors;

      (b)     Misclassifying credit card type as "commercial" while knowing credit accounts were non-commercial, "consumer" accounts;

      (c)     Causing Credit Card Processors to collect false, artificially inflated interchange fees from merchants;

      (d)     Submitting false invoice data to Credit Card Processors containing overstated interchange fees on purchase transactions made on the misclassified accounts; and

      (d)     Overstating the total interchange fee revenue earned by DFS on reports filed with the U.S. Federal Reserve Bank, the SEC, and other federal and state regulators.

### C. **Mail and Wire Fraud**

58.     Section 1961(1) of RICO provides that "racketeering activity" includes any act indictable under 18 U.S.C. §1341 (relating to mail fraud) and 18 U.S.C. §1343 (relating to wire fraud). As set forth below, Defendants engaged in conduct violating each of these laws to effectuate their scheme.

59.     For the purpose of executing and/or attempting to execute the above described scheme to defraud or obtain money by means of false or fraudulent pretenses, representations or promises, Defendants and Credit Card Processors, in violation of 18 U.S.C. §1341, caused matter and things to be delivered by the Postal Service or by private or commercial interstate carrier,

and/or received matter and things from the Postal Service or private or commercial interstate carriers. These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme, or with knowledge that the use of the mails would follow in the ordinary course of business, or that such use could have been foreseen, even if not actually intended.

60.     Defendants and Credit Card Processors carried out their scheme in all fifty states and territories and could not have done so unless it used the Postal Service or private or commercial interstate carriers.

61.     For the purpose of executing and/or attempting to execute the above described scheme to defraud or obtain money by means of false pretenses, representations or promises, Defendants and Credit Card Processors, in violation of 18 U.S.C. § 1343, transmitted, caused to be transmitted and/or received by means if wire communication in interstate and foreign commerce, various writings, signs, and signals. These acts were done intentionally and knowingly with the specific intent to advance Defendants' scheme, or with knowledge that the use of wire communications would follow in the ordinary course of business, or that such use could have been foreseen, even if not actually intended.

62.     The matter and things sent by Defendants and Credit Card Processors via the Postal Service, private or commercial carrier, wire or other interstate electronic media include invoices that falsely and fraudulently misrepresented the number of transactions and sales volume in terms of dollars that were subject to higher commercial interchange fees, knowing that many of these transactions and sales were non-commercial transactions that should have been subject to the lower non-commercial interchange fee.

63. Other matter and things sent through or received from the Postal Service, private or commercial carrier or interstate wire transmission by Defendants and Credit Card Processors included information or communications in furtherance of or necessary to effectuate the scheme.

64. Defendants' and Credit Card Processors misrepresentations, acts of concealment and/or failures to disclose were knowing and intentional, and made for the purpose of deceiving Plaintiffs and the Class and obtaining their property for Defendants' gain.

65. Defendants and Credit Card Processors either knew or recklessly disregarded the fact that the misrepresentations and omissions described above were material, and Plaintiffs and the Class relied on the misrepresentations and omissions as set forth above.

66. As a result, Defendants have obtained money and property belonging to Plaintiffs and Class members, and Plaintiffs and the Class have been injured in their business or property by Defendants' overt acts of mail and wire fraud.

**D.  Money Laundering**

67. Defendants committed acts constituting indictable offenses under 18 U.S.C. § 1956 in that, knowing that funds they received from Plaintiffs and other Class members constituted the proceeds of unlawful activity including mail and wire fraud, Defendants conducted and attempted to conduct certain financial transactions affecting interstate commerce involving these proceeds.

68. These proceeds were the portions of overpayments received by Defendants from Plaintiffs and other Class members as a result of the misclassification scheme alleged herein.

69. These financial transactions conducted by Defendants and Credit Card Processors were intended to promote the carrying on of the mail and wire fraud by making the interchange fees appear to have a legitimate business purpose, and to hide from Plaintiffs and other Class members the false overstated interchange fees charged to merchants.

16

70.     Defendants and Credit Card Processors further had knowledge that these financial transactions were designed to, and did, conceal and disguise the nature, location, source, ownership or control of the proceeds of the mail and wire fraud, by making it appear that the full invoice amount was legitimate when in fact Defendants and Credit Card Processors overstated the number and volume of commercial transactions and overcharged merchants on those phony commercial transactions, representing the proceeds of the mail and wire fraud, to DFS, and thus hiding the falsely inflated fee component from merchants.

71.     Defendants, with the assistance of Credit Card Processors, committed acts constituting indictable offenses under 18 U.S.C. § 1957 in that it knowingly engaged in and attempted to engage in monetary transactions affecting interstate commerce and involving funds received from Plaintiffs and other Class members, which Defendants knew to be the proceeds of mail and wire fraud and criminally derived property from unlawful activity as described above, of a value greater than $10,000.

72.     Defendants, upon information and belief, deposited these funds in financial institutions, and withdrew, transferred and exchanged such funds from those financial institutions.

**E.  Pattern of Racketeering Activity**

73.     Defendants and the Credit Card Processors, each of whom are persons associated and contracted with Discover for the processing of transactions involving the Discover Network did knowingly, willfully, and unlawfully conduct or participate in the affairs or the Misclassification Scheme and enterprise through a "pattern of racketeering activity," within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c). The racketeering activity was made possible by each Credit Card Processors' regular and repeated collection from merchants of inflated and false interchange fees on transactions that they knew were not commercial and then

remitted these overcharges back to DFS with the specific intent to engage in the substantive RICO violation alleged herein.

74.     Credit Card Processors each committed or aided and abetted in the commission of at least two acts of racketeering activity, *i.e.*, indictable violations of 18 U.S.C. §§ 1341, 1343, 1956 and 1957 as described above, within the past ten years. In fact, Credit Card Processors collectively have committed thousands of acts of racketeering activity. The acts of racketeering were not isolated, but rather had the same or similar purpose, participants, method of commission, and victims, including Plaintiffs and Class members.

75.     The multiple acts of racketeering activity that Credit Card Processors committed and/or conspired to or aided and abetted in the commission of, were continuous. There was repeated conduct in a closed, but substantial period of time at least during the period from 1998 to 2004. This conduct therefore constituted a "pattern of racketeering activity" as defined in 18 U.S.C. § 1961(5).

## CLASS ACTION ALLEGATIONS

76.     Plaintiffs bring this action on behalf of themselves and as a class action under Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class:

> All persons and entities in the United States and its territories who, within the applicable statute of limitations, accepted Discover credit cards and were overcharged as a result of Discover's misclassification of the credit card used in any purchase transaction. Excluded from the Class are Defendants, their parent company, subsidiaries, affiliates, officers, directors, employees, assigns, successors, agents, and the Court and its staff [hereinafter, the "Nationwide Class"].

77.     Plaintiffs also bring this action on behalf of the following subclasses:

> All persons and entities in Connecticut who, within the applicable statute of limitations, accepted Discover credit cards and were overcharged as a result of Discover's misclassification of the credit

card used in any purchase transaction. Excluded from the Class are Defendants, their parent company, subsidiaries, affiliates, officers, directors, employees, assigns, successors, agents, and the Court and its staff [hereinafter, the "Connecticut Subclass"].

All persons and entities in Florida who, within the applicable statute of limitations, accepted Discover credit cards and were overcharged as a result of Discover's misclassification of the credit card used in any purchase transaction. Excluded from the Class are Defendants, their parent company, subsidiaries, affiliates, officers, directors, employees, assigns, successors, agents, and the Court and its staff [hereinafter, the "Florida Subclass"].

All persons and entities in Massachusetts who, within the applicable statute of limitations, accepted Discover credit cards and were overcharged as a result of Discover's misclassification of the credit card used in any purchase transaction. Excluded from the Class are Defendants, their parent company, subsidiaries, affiliates, officers, directors, employees, assigns, successors, agents, and the Court and its staff [hereinafter, the "Massachusetts Subclass"].

All persons and entities in New Jersey who, within the applicable statute of limitations, accepted Discover credit cards and were overcharged as a result of Discover's misclassification of the credit card used in any purchase transaction. Excluded from the Class are Defendants, their parent company, subsidiaries, affiliates, officers, directors, employees, assigns, successors, agents, and the Court and its staff [hereinafter, the "NJ Subclass"].

All persons and entities in New York who, within the applicable statute of limitations, accepted Discover credit cards and were overcharged as a result of Discover's misclassification of the credit card used in any purchase transaction. Excluded from the Class are Defendants, their parent company, subsidiaries, affiliates, officers, directors, employees, assigns, successors, agents, and the Court and its staff [hereinafter, the "NY Subclass"].

All persons and entities in Pennsylvania who, within the applicable statute of limitations, accepted Discover credit cards and were overcharged as a result of Discover's misclassification of the credit card used in any purchase transaction. Excluded from the Class are Defendants, their parent company, subsidiaries, affiliates, officers, directors, employees, assigns, successors, agents, and the Court and its staff [hereinafter, the "PA Subclass"].

78.     While Plaintiffs do not know the exact number of members of the Nationwide and State Subclasses (collectively, the "Classes"), Plaintiffs believe that the class size is so numerous that joinder is impracticable given that Discover has millions of credit accounts and millions of geographically dispersed merchants accept Discover credit cards throughout the United States and its territories. The Classes are ascertainable, likely and primarily through business records maintained by Defendants or the Credit Card Processors.

79.     Plaintiffs will fairly and adequately protect the interests of the Classes and have no interests adverse to, or which directly and irrevocably conflict with, the interests of other Class members.

80.     Plaintiffs are represented by counsel experienced and competent in the prosecution of complex class action litigation and other complex litigation including federal RICO claims.

81.     Common questions of law and fact exist as to all members of the Classes. This is particularly true given the nature of Defendants' unlawful conduct, which was generally applicable to all the members of the Classes, thereby making relief with respect to the Classes as a whole appropriate. Such questions of law and fact common to the Class include, but are not limited to:

> a.     Whether Defendants engaged in a scheme to improperly and unlawfully overcharge merchants who accept Discover credit cards;
>
> b.     The identity of the Credit Card Processors who aided and abetted Defendants in this scheme;
>
> c.     Whether Defendants engaged in mail and wire fraud;
>
> d.     Whether Defendants engaged in money laundering;
>
> e.     Whether Defendants and the Credit Card Processors engaged in a pattern of racketeering activity;
>
> f.     Whether the Misclassification Scheme conducted on the Discover Network payment system with the compliance and assistance of the Credit Card Processors is an enterprise within the meaning of 18 U.S.C. 1961(4);

g.  Whether Defendants and Credit Card Processors conduct or participation in the Misclassification Scheme constitutes a pattern of racketeering activity in violation of 18 U.S.C. 1962(c);

h.  Whether Defendants and Credit Card Processors conspired to violate 18 U.S.C. §§ 1962(c) as prohibited by 18 U.S.C. § 1962(d);

i.  Whether Defendants' violations of 18 U.S.C. §§ 1962(c) and/or 1962(d) proximately caused injury to Plaintiffs' and the other Class members' business or property;

j.  Whether Defendants' conduct violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. § 505/1 *et seq.*;

k.  Whether Defendants' conduct violated the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110a *et seq.*;

l.  Whether Defendants' conduct violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), § 501.201 *et seq.;*

m.  Whether Defendants' conduct violated the Massachusetts Consumer Protection Act, ("MCPA"), Mass. Gen. Law Chapter 93A.

n.  Whether Defendants' conduct violated the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1 *et seq.*;

o.  Whether Defendants' conduct violated the New Jersey Racketeer Influenced and Corrupt Organizations Act ("New Jersey RICO"), N.J. Stat. Ann. § 2C:41-2(c);

p.  Whether Defendants' conduct violated the New York Deceptive Practices Act – N.Y. Gen. Bus. Law § 349;

q.  Whether Defendants' conduct violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1 *et seq.*;

r.  Whether Defendants were unjustly enriched by their unlawful conduct;

s.  Whether the conduct of Defendants and Credit Card Processors caused injury to the business or property of Plaintiffs and the members of the Classes;

t.  Whether Defendants and Credit Card Processors fraudulently concealed the misclassification and overcharge scheme;

u.  The appropriate injunctive and related equitable relief for Plaintiffs and the Classes; and

v.  The appropriate class-wide measure of damages.

82. Plaintiffs' claims are typical of the claims of the members of the Classes, and Plaintiffs and their undersigned counsel will fairly and adequately protect the interests of the Classes. Plaintiffs and all members of the Classes are similarly affected by Defendants' unlawful conduct in that they paid inflated interchange fees on transactions using credit accounts that were improperly classified as "commercial".

83. Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes. Plaintiffs' interests coincide with, and are not antagonistic to, those of the other members of the Classes.

84. Plaintiffs are represented by competent counsel who are experience in the prosecution of class actions and the claim asserted herein, including federal RICO claims.

85. The questions of law and fact common to members of the Class predominate over any questions affecting individual members including legal and factual issues relating to liability and damages.

86. Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that it might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

87.     The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for Defendants.

## LEGAL COUNTS

### COUNT I

(Violation of 18 U.S.C. § 1962(c)
on behalf of a Nationwide Class)

88.     Plaintiffs hereby incorporate by reference all preceding paragraphs as if fully set forth herein.

89.     This claim for relief arises under 18 U.S.C. § 1962(c) and is brought on behalf of the Nationwide Class.

90.     As set forth above, Defendants have violated 18 U.S.C. § 1962(c) by conducting, or participating directly or indirectly in the conduct of the Misclassification Scheme that took place on the Discover Network through a pattern of racketeering.

91.     As a direct and proximate result, Plaintiffs and the members of the Class have been injured in their business or property by the predicate acts which make up the Defendants' pattern of racketeering activity through the Misclassification Scheme that took place on the Discover Network with the assistance of Credit Card Processors.

92.     Specifically, Plaintiffs and members of the Class have been injured in their business or property by having been charged too much for purchase transactions involving a Discover credit card that had been misclassified as a "commercial" card.

## COUNT II

(Violation of 18 U.S.C. § 1962(d)
on behalf of a Nationwide Class)

93.     Plaintiffs hereby incorporate by reference all preceding paragraphs as if fully set forth herein.

94.     This claim for relief arises under 18 U.S.C. § 1962(d) and is brought on behalf of the Nationwide Class.

95.     In violation of 18 U.S.C. § 1962(d), Discover and Credit Card Processors have, as set forth above, conspired to violate 18 U.S.C. § 1962(c). The conspiracy commenced at least as early as 2013 and has continued since then. The object of the conspiracy was to submit falsely inflate invoices to merchants in order obtain money or property rightfully belonging to Class members.

96.     As set forth above, Discover and Credit Card Processors knowingly, willfully, and unlawfully agreed and combined to conduct or participate, directly or indirectly, in the conduct of the affairs and activities of the Misclassification Scheme on the Discover Network through a pattern of racketeering activity, including acts indictable under 18 U.S.C. §§ 1341, 1343, 1956 and 1957 in violation of 18 U.S.C. § 1962(c). Credit Card Processors objectively manifested their agreement to the commission of the substantive RICO violations by at least one member of the conspiracy by words or acts.

97.     Discover committed at least one overt act of racketeering activity or other wrongful activity in furtherance of such conspiracy.

98.     Even if some of the Credit Card Processors did not agree to harm specifically the Plaintiffs or other Class members, the purpose of the acts that caused them injury was to advance

the overall object of the conspiracy, and the harm to Plaintiffs and other Class members was a reasonably foreseeable consequence of Discover's scheme.

99.     As a direct and proximate result, Plaintiffs and the members of the Class have been injured in their business or property by the predicate acts which make up Discover and the Credit Card Processors' pattern of racketeering activity through the Discover Network.

100.     Specifically, Plaintiffs and members of Class have been injured in their business or property by having paid too much for transactions processed on the Discover Network.

## COUNT III

(Violations of the Illinois Consumer Fraud and
Deceptive Business Practices Act ("ICFA")
815 Ill. Comp. Stat. § 505/1 *et seq.,* on behalf of a Nationwide Class)

101.     Plaintiffs hereby incorporate by reference all preceding paragraphs as if fully set forth herein.

102.     This claim for relief arises under 815 Ill. Comp. Stat. § 505/2 and is brought on behalf of the Nationwide Class.

103.     The ICFA prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce.

104.     Discover engaged in unfair and deceptive acts and practices by:

   a)  misclassifying non-commercial credit accounts as "commercial accounts";

   b)  misrepresenting that the Discover purchase transactions were associated with a "commercial account" when in fact they were non-commercial;

   c)  overcharging merchants a higher commercial interchange fee on transactions that should have been subject to a lower "non-commercial" interchange fee; and

d) knowing of, and concealing, this misclassification scheme for a period of many years.

105. Discover engaged in the aforementioned unfair and deceptive acts and practices during the course of trade and commerce and intended for Plaintiffs and other Class members to rely on its false classification of credit accounts.

106. In addition, Discover's misconduct substantially took place in Illinois and, upon information and belief, was known to Discover's management and implemented by employees all based in Illinois.

107. Plaintiffs and the other Class members have been injured as a direct and proximate result of Discover's unfair and deceptive acts and practices.

## COUNT IV

(Unjust Enrichment on behalf of a Nationwide Class)

108. Plaintiffs hereby incorporate by reference all preceding paragraphs as if fully set forth herein.

109. This claim is brought on behalf of the Nationwide Class under Illinois law.

110. As set forth above, Defendants knew about the existence, use, and execution of the misclassification system. Defendants further knew that all transactions associated with the misclassified accounts would be subject to an inflated interchange fees and that Defendants were submitted false invoices to Credit Card Processors who, in turn, were passing on the inflated interchange fees to merchants.

111. As a result of the acts alleged, Plaintiffs and Class members paid inflated fees on millions of Discover purchase transactions, resulting in hundreds of millions of dollars of ill-gotten gains by Discover.

112.     Discover accepted and retained the proceeds of these illegal acts and thus, was unjustly enriched by these illegal overcharges. Equity requires disgorgement to prevent Discover from benefiting from the retention of the Plaintiffs' and Class members' funds.

113.     Plaintiffs and Class members seek an order directing Discover to return the benefit Discover unjustly procured, received, and retained from the unlawful conduct alleged herein.

### COUNT V

(Violation of the New Jersey Racketeer Influenced and
Corrupt Organizations Act ("New Jersey RICO"), N.J.S.A. § 2C:41-2(c) on
behalf of Plaintiffs YPDC and KMJA and the New Jersey Subclass)

114.     Plaintiffs hereby incorporate by reference all preceding paragraphs as if fully set forth herein.

115.     This claim for relief arises under New Jersey RICO, N.J.S.A. § 2C:41-2(c) and is brought on behalf of the New Jersey Subclass.

116.     DFS, Discover Bank, Discover Network and said Credit Card Processors are all actors associated with an enterprise and therefore constitute persons defined as defined under New Jersey RICO, N.J.S.A. § 2C:41-2(c).

117.     DFS, Discover Bank and Discover Network and said Credit Card Processors were either employed or associated with an enterprise as defined under New Jersey RICO, N.J.S.A. § 2C:41-2(c).

118.     The fraudulent inflation of the credit card interchange fees and the processing of credit card transactions via credit card processors affects commerce in the amount of billions of dollars in transaction fees paid to Discover each year and serve as a large portion of Discover's revenue.

119.     The scheme alleged above clearly outlines a pattern of racketeering in the knowing and repeated (many more than two) overcharging of credit card interchange fees. The fraudulent upcharge of possibly millions of credit card transaction all served similar purpose and results and the same method has been employed over a long period of time. The overcharge of the interchange fees were deliberate, continual and repeated, possibly millions of times, satisfying the element of a pattern of racketeering under N.J.S.A. § 2C:41-2(c). In addition, the manner in which the fraudulent transactions were implemented prevented the injured parties from discovering the scheme, creating the predicate money laundering count.  These actions make up a clear pattern of racketeering under N.J.S.A. § 2C:41-2(c).

## COUNT VI

(Violation of the New Jersey Consumer Fraud Act
("NJCFA"), N.J. Stat. Ann. §56:8-1 *et seq*. on behalf of Plaintiffs
YPDC and KMJA and the New Jersey Subclass)

120.     Plaintiffs hereby incorporate by reference all preceding paragraphs as if fully set forth herein.

121.     This claim for relief arises under the NJCFA is brought on behalf of Plaintiffs YPDC and KMJA and the New Jersey Subclass.

122.     Plaintiff YPDC and KMJA and the New Jersey Subclass are "person(s)" as that term is defined by NJCFA at N.J.S.A. 56:8-1(d).

123.     The NJCFA prohibits the "use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation . . . in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby." N.J.S.A. 56:8-2.

124. Discover has engaged in, and continues to engage in, unconscionable commercial practices, deceptive acts and misrepresentations in the conduct of their trade and/or commerce in New Jersey. Specifically, Discover's misclassification scheme constitute an unconscionable and deceptive practice under the NJCFA.

125. Discover also made numerous misrepresentations in carrying out this scheme to defraud Plaintiffs YPDC and KMJA and the New Jersey Subclass every time it billed and collected a false, overinflated interchange fee.

126. Plaintiffs YPDC and KMJA and the New Jersey Subclass have suffered an ascertainable loss of moneys or property as a direct and proximate result of Defendants' unfair and unconscionable practices.

127. As a result, Plaintiffs YPDC and KMJA and the New Jersey Subclass are entitled to treble damages and the recovery of their attorneys' fees and expenses.

## COUNT VII

(Violation of the New York Deceptive Practices Act ("NYDPA")
N.Y. Gen. Bus. Law § 349 on behalf of Plaintiffs
Prayus, YPDC, and KMJA and the New York Subclass)

128. Plaintiffs hereby incorporate by reference all preceding paragraphs as if fully set forth herein.

129. This claim for relief arises under New York's Deceptive Practices Act and is brought on behalf of the New York Subclass.

130. Discover has engaged in, and continues to engage in, materially deceptive practice or act. Specifically, Discover's misclassification scheme constitutes a materially deceptive practice or act under the NYDPA. Discover's misrepresentations in carrying out this scheme to defraud

Plaintiffs Prayus, YPDC and KMJA and the New York Subclass also constitute materially deceptive practices and acts.

131.     Discover's misconduct was consumer-oriented as required under the NYDPA and was intentionally designed to, and did, mislead a reasonable merchant acting reasonably under the circumstances.

132.     As a result, Plaintiffs Prayus, YPDC and KMJA and the New York Subclass were injured due to Discover's deceptive practices and acts.

## COUNT VIII

(Violations of the Pennsylvania Unfair Trade Practices and
Consumer Protection Law, 73 Pa. Stat. § 201-1 *et seq.* on
behalf of Plaintiff CAPP and the Pennsylvania Subclass)

133.     Plaintiffs hereby incorporate by reference all preceding paragraphs as if fully set forth herein.

134.     CAPP and the members of the Pennsylvania Subclass are "person[s]" as defined in by the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), Pa. Stat. §201-2(2).

135.     Discover's misclassification scheme and overcharge of interchange fees was in the scope of "trade" or "commerce" as defined in Pa. Stat. § 201-2(3).

136.     The UTPCPL declares unlawful any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce," which includes, among others, "[m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions" and "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."  Pa. Stat. §§201-3, 201-2(4)(xi) and (xxi).

137.     As alleged herein and above, Discover has engaged in unfair methods of competition and unfair or deceptive acts or practices in connection with its misclassification of credit accounts and improper billing and collection of false and overstated interchange fees. These acts and practices violate the UTPCPL.

138.     Plaintiff CAPP and the other members of the Pennsylvania Subclass have been and continues to be injured as a direct and proximate result of Defendants' violations of the UTPCPL.

139.     CAPP and the other members of the Pennsylvania Subclass either overpaid Discover in reliance on a reasonable presumption that Discover was billing them accurately and not misclassifying its credit accounts. No reasonable person would have knowingly paid an excessive rate.

140.     CAPP and the other members of the Pennsylvania Subclass are entitled to pursue a claim on behalf of the Pennsylvania Subclass against Discover pursuant to Pa. Stat. § 201-9.2 for damages, treble damages, equitable relief, and attorneys' fees and costs to remedy Discover's violations of the UTPCPL.

## **COUNT IX**

(Violations of the Connecticut Unfair Trade Practices Act ("CUTPA"),
CT Gen. Stat. § 42-110b, on behalf of
Plaintiff Prayus and the Connecticut Subclass)

141.     Plaintiffs hereby incorporate by reference all preceding paragraphs as if fully set forth herein.

142.     Prayus is entitled to pursue a claim on behalf of itself and the other members of the Connecticut Subclass against Discover pursuant to the Connecticut Unfair Trade Practices Act ("CUTPA"), CT Gen. Stat. § 42-110b.

143.    Prayus and the members of the Connecticut Subclass are "consumers" as defined by the CUTPA, at § 42-110a.

144.    Discover's misclassification scheme and overcharge of interchange fees was in the scope of "trade or commerce" as defined by CUTPA, at § 42-110a.

145.    CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." CT Gen Stat § 42-110b(a).

146.    As alleged herein and above, Discover has engaged in unfair methods of competition and unfair or deceptive acts or practices in connection with its misclassification of credit accounts and improper billing and collection of false and overstated interchange fees.  These acts and practices violate CUTPA.

147.    Plaintiff Prayus and the other members of the Connecticut Subclass have been and continues to be injured as a direct and proximate result of Defendants' violations of the CUTPA.

148.    Prayus and the other members of the Connecticut Subclass are entitled to compensatory and punitive damages, costs and reasonable attorneys' fees as a result of Discover's violations of CUTPA.

## COUNT X

(Violations of the Florida Deceptive and Unfair
Trade Practices Act ("FDUTPA"), § 501.201- *et seq*.,
on behalf of Plaintiff Prayus and the Florida Subclass)

149.    Plaintiffs hereby incorporate by reference all preceding paragraphs as if fully set forth herein.

150.    Prayus and the members of the Florida Subclass are "consumers" as defined by the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") at § 501.203(7).

151.     Discover's misclassification scheme and overcharge of interchange fees was in the scope of "trade or commerce" as defined by § 501.203(8).

152.     The FDUTPA, at § 501.204, states that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

153.     As alleged herein and above, Discover has engaged in unfair methods of competition and unfair or deceptive acts or practices in connection with its misclassification of credit accounts and improper billing and collection of false and overstated interchange fees.  These acts and practices violate the FDUTPA.

154.     Plaintiff Prayus and the other members of the Florida Subclass have been and continues to be injured as a direct and proximate result of Defendants' violations of the FDUTPA.

155.     Prayus and the other members of the Florida Subclass either overpaid Discover in reliance on a reasonable presumption that Discover was billing them accurately and not misclassifying its credit accounts. No reasonable person would have knowingly paid an excessive rate.

156.     Prayus and the other members of the Florida Subclass are entitled to pursue a claim on behalf of the Florida Subclass against Discover pursuant to FDUTPA for actual damages and attorneys' fees and costs.

## COUNT XI

(Violations of the Massachusetts Consumer Protection Act
("MCPA"), Mass. Gen. Law Chapter 93A,
on behalf of Plaintiff Prayus and the Massachusetts Subclass)

157.     Plaintiffs hereby incorporate by reference all preceding paragraphs as if fully set forth herein.

158.    Prayus and the members of the Massachusetts Subclass are consumers as defined by the MCPA.

159.    Discover's misclassification scheme and overcharge of interchange fees was in the scope of trade or commerce as defined by the MCPA.

160.    If Discover's actions did not primarily and substantially take place in Illinois, but rather in Massachusetts, then Discover has engaged in unfair methods of competition and unfair or deceptive acts or practices in connection with its misclassification of credit accounts and improper billing and collection of false and overstated interchange fees.  These acts and practices violate the MCPA.

161.    Plaintiff Prayus and the other members of the Massachusetts Subclass have been and continue to be injured as a direct and proximate result of Defendants' violations of the MCPA.

162.    Prayus and the other members of the Massachusetts Subclass are entitled to pursue a claim on behalf of the Massachusetts Subclass against Discover pursuant to MCPA for damages, treble damages, equitable relief, and attorneys' fees and costs to remedy Discover's violations of the MCPA.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the Classes respectfully request the following relief:

A.    That the Court determined that this action may be maintained as a class action under Rule 23(a), 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, appoint Plaintiffs as representatives of the Classes and the undersigned law firms as Class Counsel; and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the Classes;

B.      The Court adjudge and decree that the acts, omissions and practices of the Defendants are illegal and unlawful, and constitute violations of the (1) federal Racketeer Influenced and Corrupt Organizations Act ("RICO") and its New Jersey state statutory corollary; (2) Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. § 505/1 *et seq.*; (3) the New Jersey Consumer Fraud Act, N.J. Stat. § 56:8-1 *et seq.*; the New York Deceptive Practices Act, N.Y. Gen. Bus. Law § 349; and the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201-1 *et seq.*; and/or constituted unjust enrichment;

C.      The Court permanently enjoin and restrain Defendants, their parents, affiliates, successors, transferees, assignees, and other offices, directors, agents, and employees thereof, and all other persons acting or claiming to act on their behalf, from overcharging merchants on the basis of a misclassified credit card account;

D.      That Judgment be entered against Defendants and in favor of Plaintiffs and members of the Classes for treble the amount of damages sustained by Plaintiffs and the Classes as allowed by law, together with costs of the action, including reasonable attorneys' fees, pre- and post-judgment interest at the highest legal rate from and after the date of service of this Complaint to the extent provided by law; and

E.      That the Court award Plaintiff and members of the Class such other and further relief as the case may require and the Court may deem just and proper under the circumstances.

## JURY DEMAND

Plaintiffs demand a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil

Procedure, of all issues so triable.


Dated: August 11, 2023

                                          Respectfully submitted,

                                          /s/ *Nada Djordjevic*
                                          Amy E. Keller
                                          Nada Djordjevic
                                          **DICELLO LEVITT GUTZLER LLC**
                                          Ten North Dearborn Street, Sixth Floor
                                          Chicago, IL 60602
                                          Tel: (312) 214-7900
                                          Fax: (312) 253-1443
                                          akeller@dicellolevitt.com
                                          ndjordjevic@dicellolevitt.com

                                          *Liaison Counsel for Plaintiffs and Putative*
                                          *Class and Subclasses*

Catherine Pratsinakis (pro hac to be filed)
Nina C. Spizer (pro hac to be filed)
DILWORTH PAXSON LLP
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
Telephone:  (215) 575-7000
Facsimile:  (215) 575-7200
cpratsinakis@dilworthlaw.com
nspizer@dilworthlaw.com

*Counsel for Plaintiffs and Putative*
*Class and Subclasses*