**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CAPP, INC., YOUNG PEOPLES DAY CAMPS INC., KMJA DAY CAMPS, INC., AND PRAYUS GROUP LLC, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br>    v.<br><br>DISCOVER FINANCIAL SERVICES, DFS SERVICES, LLC, AND DISCOVER BANK,<br><br>        Defendants. | Case No. 1:23-cv-04676 |
| LEMMO'S PIZZERIA, LLC, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br>    v.<br><br>DISCOVER FINANCIAL SERVICES, DFS SERVICES, LLC, DISCOVER BANK, AND DOES 1–100,<br><br>        Defendants. | Case No. 1:23-cv-14250 |
| SUPPORT ANIMAL HOLDINGS, LLC, and LENNYS CASITA, LLC, individually, and on behalf of all other similarly situated,<br><br>        Plaintiffs,<br>    v.<br><br>DISCOVER FINANCIAL SERVICES, DFS SERVICES, LLC, DISCOVER BANK, AND DOES 1–100,<br><br>        Defendants. | Case No. 1:23-cv-15297 |

**JOINT DECLARATION OF ROGER HELLER, TARAS KICK, AND**
**CATHERINE PRATSINAKIS IN SUPPORT OF MOTION FOR PRELIMINARY**
**APPROVAL OF MODIFIED CLASS ACTION SETTLEMENT**

Roger Heller, Taras Kick, and Catherine Pratsinakis hereby jointly declare and state:

1.      Roger Heller is an attorney duly licensed to practice law in the State of California, and a member in good standing of the California State Bar.  He is admitted *pro hac vice* to practice before this Court.  *See Lemmo's Pizzeria, LLC v. Discover Fin. Servs.*, No. 1:23-cv-14250 ("the *Lemmo's* action"), ECF No. 27.  Mr. Heller is a partner at Lieff Cabraser Heimann & Bernstein, LLP ("LCHB"), one of the plaintiffs' counsel of record in the *Lemmo's* action, and one of the Settlement Class Counsel.

2.      Taras Kick is an attorney duly licensed to practice law in the State of California, and a member in good standing of the California State Bar.  He is admitted *pro hac vice* to practice before this Court.  *See Lemmo's*, ECF No. 43.  Mr. Kick is the shareholder of The Kick Law Firm, APC ("Kick Law Firm"), one of the plaintiffs' counsel of record in the *Lemmo's* action, and one of the Settlement Class Counsel.

3.      Catherine Pratsinakis is an attorney duly licensed to practice law in the States of Delaware, Pennsylvania, and New Jersey, and a member in good standing with the Delaware, Pennsylvania, and New Jersey State Bars.  She is also a member in good standing of the general bar of Illinois.  *See CAPP Inc. v. Discover Fin. Servs*, No. 1:23-cv-04676 ("the *CAPP* action"), ECF No. 25.  Ms. Pratsinakis is a partner at the law firm Dilworth Paxson LLP ("Dilworth Paxson"), plaintiffs' counsel of record in the *CAPP* action, and one of the Settlement Class Counsel.

4.      We have personal knowledge of the facts set forth in this declaration, and could and would testify competently to them if called upon to do so.

5.      We respectfully submit this declaration in support of Plaintiffs' Motion for Preliminary Approval of Modified Class Settlement, filed herewith.

6.      On July 19, 2023, Plaintiffs CAPP, Inc., Young Peoples Day Camps Inc., and KMJA Day Camps, Inc. filed the *CAPP* action in this District, asserting claims against Defendants on behalf of a nationwide class and three state subclasses.  Plaintiffs alleged,

generally, that Discover misclassified certain credit card transactions, resulting in interchange fee overcharges. On August 13, 2023, the *CAPP* plaintiffs filed an amended complaint, adding an additional plaintiff, Prayus Group LLC, additional causes of action, and three additional state subclasses. *See CAPP*, ECF No. 13.

7. On August 14, 2023, Plaintiff Lemmo's Pizzeria, LLC ("Lemmo's") filed a complaint in the Central District of California, asserting claims regarding substantially the same alleged conduct on behalf of a nationwide class and California subclass. *Lemmo's*, ECF No. 1. On September 5, 2023, the *Lemmo's* plaintiffs filed an amended complaint. *Lemmo's*, ECF No. 15. On September 12, 2023, the *Lemmo's* action was transferred to this District pursuant to joint stipulation. *See Lemmo's*, ECF No. 21.

8. On August 29, 2023, Plaintiffs Support Animal Holdings, LLC and Lenny's Casita, LLC filed a complaint in the Central District of California, asserting claims regarding substantially the same alleged conduct on behalf of a nationwide class and California subclass. *Support Animal Holdings, LLC v. Discover Financial Services*, No. 1:23-cv-15297 ("the *Support Animal* action"), ECF No. 1. The *Support Animal* plaintiffs filed an amended complaint, also on August 29, 2023. *Support Animal*, ECF No. 3. On October 3, 2023, the *Support Animal* action was transferred to this District pursuant to joint stipulation. *See Support Animal*, ECF No. 14.

9. On the parties' motions, on January 8, 2024, this Court found the *CAPP*, *Lemmo's*, and *Support Animal* actions related for purposes of Local Rule 40.4, and ordered that the *Lemmo's* and *Support Animal* actions be reassigned to this Court for all further proceedings. *See CAPP*, ECF No. 36; *Lemmo's*, ECF No. 41; *Support Animal*, ECF No. 21.

10. On January 23, 2024, Plaintiffs in the *CAPP*, *Lemmo's*, and *Support Animal* actions filed motions to consolidate the three actions and to appoint interim class counsel and liaison counsel. *See CAPP*, ECF No. 39, 40; *Lemmo's*, ECF No. 50, 51; *Support Animal*, ECF No. 27, 28.

11. On January 23, 2024, the parties informed the Court that they had scheduled a mediation with the Hon. Jay C. Gandhi (Ret.) of JAMS, and asked the Court to stay the litigation for approximately one month pending the anticipated mediation. *See CAPP*, ECF No. 37; *Lemmo's*, ECF No. 44; *Support Animal*, ECF No. 26. The Court thereafter granted the parties' request to stay the litigation pending mediation. *See CAPP*, ECF No. 42; *Lemmo's*, ECF No. 53; *Support Animal*, ECF No. 34. The stay was extended multiple times at the parties' request, in light of the parties' ongoing mediation efforts.

12. On March 28, 2024, the parties informed the Court that they reached an agreement in principle to resolve this litigation on a class basis. *See CAPP*, ECF No. 47; *Lemmo's*, ECF No. 59; *Support Animal*, ECF No. 39. The Court thereafter denied without prejudice as moot Plaintiffs' motions to consolidate the cases and to appoint interim class counsel and liaison counsel. *See CAPP*, ECF No. 48; *Lemmo's*, ECF No. 60; *Support Animal*, ECF No. 40.

13. On June 28, 2024, the parties executed a written class settlement agreement (the "Original Settlement"). *See CAPP*, ECF No. 55; *Lemmo's*, ECF No. 67; *Support Animal*, ECF No. 48.

14. On October 22, 2024, the Court granted preliminary approval of the Original Settlement. *See* Order Preliminarily Approving the Class Action Settlement, at *CAPP*, ECF No. 63; *Lemmo's*, ECF No. 74; *Support Animal*, ECF No. 56.

15. On November 21, 2024, Discover notified Settlement Class Counsel that Discover had identified (in the possession of Discover Bank) MID-level, transactional data for the Settlement Class for 2007–2015, that Discover was previously unaware of despite its previous efforts to locate such data. This was significant because such additional data meant the parties could now calculate Annual MID Amounts for the merchant identification numbers ("MIDs") in the Settlement Class, for years 2007–2015, using the MID-level data for those years, rather than utilizing assumptions and extrapolation for those years (as was done under the original

Methodology). The extrapolation was previously necessary for those years because, as Discover explained, Discover "d[id] not have similar transaction-level data prior to 2016." *See CAPP*, ECF No. 60 at 14; *Lemmo's*, ECF No. 72; *Support Animal*, ECF No. 53.

16. Promptly after learning about the discovery of this new data, Settlement Class Counsel served document requests regarding the new data, including requesting a sample of the new data for review and analysis by Settlement Class Counsel and their data expert, Arthur Olsen of Cassis Technology, LLC. In addition, the parties commenced discussions about how this new data from 2007–2015 could improve the Settlement, the Methodology, and claims administration.

17. Discover produced additional documents and data in response to Settlement Class Counsel's requests. Settlement Class Counsel and their expert, Mr. Olsen, reviewed and analyzed the data and other materials provided. Additionally, Settlement Class Counsel conducted an interview of a knowledgeable Discover employee regarding the source, reliability, and completeness of the new data.

18. Following weeks of arm's-length negotiations and the additional confirmatory discovery, the parties agreed that the newly discovered data was sufficient to support revisions to the Original Settlement and the original Methodology. The parties thereafter negotiated, and on January 21, 2025 executed, a modified settlement agreement (the "Modified Settlement"), that is being filed herewith for the Court's consideration. Attached hereto as **Exhibit A** is a true and correct redline showing all changes between the Original Settlement and the Modified Settlement.

19. The Modified Settlement that is presented for the Court's consideration is the product of several additional weeks of arm's-length negotiations and follows additional confirmatory discovery and expert analysis. These efforts are on top of the extensive negotiations, confirmatory discovery, and expert analysis conducted in connection with the Original Settlement and previously described. CAPP, ECF No. 59-2, Original Jt. Decl. ¶¶ 14–

34. At all times, the settlement negotiations in this case were adversarial, non-collusive, and arm's-length.

**Background and Qualifications**

*LCHB*

20.     LCHB is one of the oldest, largest, most respected, and most successful law firms in the country representing plaintiffs in class actions, and brings to the table a wealth of class action experience. LCHB has been repeatedly recognized over the years as one of the top plaintiffs' law firms in the country, including by The National Law Journal and The American Lawyer. A copy of LCHB's firm resume, which describes the firm's experience in class action and other complex litigation, can be found at www.lieffcabraser.com/pdf/Lieff_Cabraser_Firm_Resume.pdf, and is not attached hereto given its length.

21.     Among the firm's other areas of practice, LCHB has extensive experience prosecuting consumer class actions against banks, payment processing companies, and other financial institutions. By way of example only:

a.     LCHB served as Plaintiffs' Liaison Counsel and on the Plaintiffs' Executive Committee in *In re Chase Bank USA, N.A. "Check Loan" Contract Litigation* (MDL No. 2032, N.D. Cal.), a nationwide Multi-District class action alleging that Chase breached its good faith obligation to credit cardholders by modifying the terms of their long-term fixed rate loans. In November 2012, the court granted final approval to a $100 million nationwide settlement that provided direct payments to approximately one million cardholders and injunctive relief.

b.     LCHB served as Co-Class Counsel in *Gutierrez v. Wells Fargo Bank, N.A.*, (No. 07-5923 WHA, N.D. Cal.), a class action alleging unfair practices and false representations by Wells Fargo in connection with its imposition of overdraft charges. In 2013,

the court reinstated a $203 million class judgment that had been entered in 2010 following a bench trial, and in 2014 the reinstated judgment was affirmed by the Court of Appeals.

        c.      LCHB served on the Plaintiffs' Executive Committee in *In re Checking Account Overdraft Litigation* (MDL 2036, S.D. Fla.), a Multi-District proceeding involving more than two dozen banks and allegations of unfair practices and false representations in connection with the banks' imposition of overdraft charges. Class settlements totaling hundreds of millions of dollars have been approved by the court to date.

        d.      LCHB served as Co-Class Counsel in *Patti's Pitas, LLC et al. v. Wells Fargo Merchant Services, LLC* (No. 1:17.cv-04583 AKT, E.D.N.Y), a nationwide class action alleging improper charges in connection with processing card transactions. In 2021, the court approved of a class settlement providing up to $40 million in relief.

        e.      LCHB served as Co-Class Counsel in *Lusnak v. Bank of America, N.A.* (No. 2:14-cv-01855-GW, N.D. Cal.), a class action challenging Bank of America's failure to pay mortgage escrow interest to its California customers as required by California law. In 2020, the district court granted approval of a $35 million class settlement that provided direct payments to the settlement class members.

        f.      LCHB served as Co-Class Counsel in *Cymbalista v. JPMorgan Chase Bank* (E.D.N.Y), a class action alleging that defendant failed to pay interest on mortgage customers' mortgage escrow balances, as required by state law. In 2022, the court grated final approval of a settlement that included an $11.5 million fund and practice changes.

        g.      LCHB served as Settlement Class Counsel in *Kline v. The Progressive Corporation* (No. 02-L-6, Illinois Circuit Court, Johnson County), a nationwide class action challenging Progressive Corporation's private passenger automobile insurance sales practices. In 2002, the court approved a settlement valued at approximately $450 million, which included both cash and equitable relief.

22.     Roger Heller graduated from Columbia University School of Law in 2001, where he was a Senior Editor for the *Columbia Law Review*. From 2001 through 2005, he was a litigation associate at O'Melveny & Myers LLP. From 2005 through 2008, he worked for the non-profit law firm Disability Rights Advocates, where he was a Senior Staff Attorney and worked primarily on prosecuting class actions under federal and state anti-discrimination laws. He joined LCHB in 2008, and became a partner at LCHB in 2011. In 2022, he became the head of LCHB's Consumer Protection practice group. During his time at LCHB, his practice has been focused on consumer protection class actions. He has successfully represented large classes in numerous cases, including cases involving false advertising, telecommunications services, consumer banking, payment processing, insurance, and credit cards.

**The Kick Law Firm, APC**

23.     Taras Kick has been a member of the California State Bar since 1989, the year he graduated from the University of Pennsylvania Law School. He has served as class counsel in numerous national and California state class actions, including being appointed lead counsel and a member of plaintiffs' executive committees. From 2012 to September 2017, he was a Commissioner of the California Law Revision Commission, an independent state agency created by statute in 1953 to assist the Legislature and Governor by examining California law and recommending needed reforms, having been appointed by Governor Edmund G. Brown Jr. in 2012, and was Chairperson of the Commission from September 2015 through September 2016. For over five years, he was a member of the national Board of Directors of Public Justice, including its Class Action Preservation Committee. He is or has been a member of numerous other committees pertaining to consumer class actions, including the American Association for Justice Class Action Litigation Sub-Group; the Consumer Attorneys of California Class Action Group; the American Bar Association Committee on Class Actions & Derivative Suits; and, the State Bar of California Antitrust and Unfair Competition Litigation section.

24.     The class action cases in which The Kick Law Firm has been appointed either as lead counsel, or as co-lead counsel, include *Galgano v. TD Bank, N.A.*, United States District Court for the District of New Jersey, Case No. 1:20-cv-5623-KMW-SAK (final approval granted in July 2023); *In Re Southern California Gas Leak Cases*, Judicial Council Coordinated Proceeding No. 4861 (final approval granted April 29, 2022); *Lloyd v. Navy Federal Credit Union*, United States District Court for the Southern District of California, Case No. 3:17-cv-01280 (final approval granted May 18, 2019); *Story v. SEFCU*, United States District Court for the Northern District of New York, Case No. 1:18-cv-00764 (final approval granted on February 25, 2021); *Smith v. Bank of Hawaii*, United States District Court for the District of Hawaii, Case No. 1:16-cv-00513 (final approval granted on December 22, 2020); *Walker v. People's United Bank*, United States District Court for the District of Connecticut, Case No. 3:17-cv-00304 (final approval granted on June 29, 2020); *Coleman-Weathersbee v. Michigan State University Federal Credit Union*, United States District Court for the Eastern District of Michigan, Case No. 2:19-cv-11674 (final approval granted on July 29, 2020); *Salls v. Digital Federal Credit Union*, United States District Court for the District of Massachusetts, Case.  No. 18-cv-11262-TSH (final approval granted on December 19, 2019); *Pingston-Poling v. Advia Credit Union*, United States District Court for the Western District of Michigan, Case No. 1:15-CV-1208 (final approval granted in January 2020); *Fry v. MidFlorida Credit Union*, United States District Court for the Middle District of Florida, Case No. 8:15-CV-2743 (final approval granted);  *Harrold v. MUFG Union Bank, N.A.*, Los Angeles County Superior Court, Case No. BC680214 (final approval granted July 25, 2024);  *Eaton v. Cavalia (USA) Inc., et al.*, San Francisco County Superior Court, Case No. CGC-19-579421 (final approval granted November 21, 2022); *Lynch v. San Diego County Credit Union*, San Diego County Superior Court, Case No. 37-2015-00008551 (final approval granted); *Gunter v. United Federal Credit Union*, United States District Court for the District of Nevada, Case No. 3:15-cv-00483-MMD-WGC (final approval granted); *Manwaring v. Golden 1 Credit Union*, Sacramento County Superior Court, Case No.

34-2013-00142667 (final approval granted); *Casey v. Orange County Credit Union*, Orange County Superior Court No. 30-2013-00658493-CJ-BT-CXC (final approval granted); *Sewell v. Wescom Credit Union*, Los Angeles County Superior Court No. BC5860 (final approval granted); *Howard v. Sage Software*, Los Angeles County Superior Court Case No. BC487140 (final approval granted); *Kirtley v. Wadekar*, United States District Court for the District of New Jersey, Case No. 05-5383 (final approval granted); *Pereyra v. Mike Campbell & Associates*, Los Angeles County Superior Court Case No. BC365631 (final approval granted); *Alston v. Pacific Bell*, Los Angeles County Superior Court Case No. BC297863 (final approval granted); *Oshaben v. Monster Worldwide, Inc., et al.*, San Francisco County Superior Court Case No. CGC-06-454538 (lead counsel, final approval granted); *Cole v. T-Mobile USA, et al.*, Central District of California Case No. 06-6649 (final approval granted).

### Dilworth Paxson

25.     Established in 1933, Dilworth Paxson is a multi-disciplinary law firm with over 120 attorneys headquartered in Philadelphia with satellite offices in Harrisburg, Pennsylvania; Cherry Hill, Freehold, and Princeton, New Jersey; New York, New York; and Wilmington, Delaware.  The Firm has a broad, diverse regional and national law practice representing a wide variety of clients including government entities, quasi-governmental entities, public pensions, institutional clients, Fortune 500 companies, start-ups, closely-held businesses, and individuals.

26.     Dilworth Paxson prides itself on its rich history filled with landmark work that has sparked growth and progress in American society and business.  For example, the plaintiff's briefing in the landmark *Brown v. Board of Education*, was largely Dilworth work product. Dilworth partner Harold Kohn was a pioneer of the modern-day antitrust class action.

27.     Catherine Pratsinakis graduated from Rutgers University – School of Law, *cum laude,* in 2001, where she was an Associate Editor for the *Rutgers University Law Review*, and separately and concurrently completed a dual degree program earning her *Masters in Business Administration*, with honors, from the Rutgers University - School of Business.

28.     Ms. Pratsinakis is Co-chair of the Dilworth Paxson Plaintiffs' Rights Practice Group, which is comprised of a team of litigators who have deep experience in complex commercial, class, and representative litigation, from building successful litigation strategies to obtaining class certification, securing discovery, negotiating settlements, conducting trials, and handling appeals.  The Practice Group has experience in litigating claims concerning: (1) unfair and deceptive business practices and antitrust violations; (2) breaches of fiduciary duty; (3) consumer fraud; (4) data breach, technology and privacy suits; (5) environmental law; (6) ERISA; (7) Qui Tam/whistleblower actions; (8) securities fraud; and (9) shareholder disputes.

29.     Ms. Pratsinakis has been litigating consumer, securities, and corporate class actions for 24 years in a wide cross-section of industries, scope, and significance and helped to secure nearly half a billion dollars in recoveries for consumers and investors. Examples of her representative litigations include:

a.     *Verthelyi v. PNMAC Capital Management, LLC and PennyMac Mortgage Investment Trust*, 2:2024-cv-05028 (C.D. Cal.): Lead Counsel in putative class action involving allegations that PennyMac violated the LIBOR Act when it failed to adopt SOFR and sought to impose a fixed rate on investors entitled to a floating rate note.

b.     *In re Facebook, Inc.  Deriv. Litig*., Civ. No. 2018-0307 (Del. Ch.): prosecuting derivative suit in the Delaware Court of Chancery against officers and directors for violation of the law or breaching their oversight responsibilities by allowing Facebook to illegally share user data without user notice or consent; Ms. Pratsinakis is co-chair of the Executive Committee.

c.     *DeLuca, et al.  v. GPB Auto.  Portfolio, LP*, et al., No. 19-cv-10498-LAK (SDNY): lead counsel in class action against auditors for their role in aiding and abetting and/or committing fraud in connection with a Ponzi-like scheme; settled in 2024 for $46 million.

d.     *W2007 Grace Acquisition I, Inc., Preferred Stockholder Litig*., No. 2:13-cv-2777 (W.D. Tenn.): represented preferred stockholders in a breach of fiduciary duty action

against a real estate investment trust that went "dark" on stockholders for over five years after being taken private that resulted in a settlement valued at $76 million for current and former stockholders.

e.     *Roth v. The Phoenix Companies*, No. 650634/2016 (N.Y. Sup. Ct.): represented bondholders against Phoenix Companies, a publicly-traded insurer that had entered into a going-private transaction and sought to amend the bond indenture to limit financial reporting obligations to bondholders.  The settlement secured ongoing financial reporting akin to that of a public company.  This preserved bond liquidity and enhanced the bonds' value by over $16 million. The Court hailed the settlement as "outstanding" because it provided "expeditious beneficial relief for the class that affords them material remedial disclosures…. Class counsel performed substantial work and obtained an extremely favorable result for the class."

f.     *In re Cigna-American Specialty Health Administrative Fee Litig*., No. 2:16-cv-03967-NIQA (E.D. Pa.): represented insureds alleging that Cigna violated ERISA by overcharging for services by the amount of administrative fees and hiding the fees from insureds. The matter settled for a full or near-full recovery of administrative fee overcharges, totaling $8.25 million.

g.     *In re 24 Hour Fitness Prepaid Memberships. Litig*., No. 4:16-cv-01668-JS (N.D. Cal.): full-relief settlement providing over $8 million in refunds and an estimated minimum of $16 million in future rate reductions for class of consumers who purchased prepaid gym memberships.

h.     *TRSL v. Greenberg, et al*., No. 20106 (Del. Ch.): represented institutional stockholder in a derivative suit against the officers and directors of AIG for certain self-dealing transactions involving related party entities, successfully challenged findings of a special litigation committee, and then settled the case for $115 million on eve of trial.

i.      *In re American International Group, Inc. Consolidated Derivative Litig.*, No. 769 (Del. Ch.): recovered $90 million representing an institutional investor in a derivative suit challenging AIG's officer and board conduct in connection with various accounting issues.

j.      *In re Parmalat Sec. Litig.*, MDL 04-1653 (S.D.N.Y.): prosecuted a global international securities fraud class action that resulted in total recoveries of approximately $100 million.

k.      *In re Hollinger Int'l Sec. Litig.*, No. 04-CV-0834 (N.D. Ill.): prosecuted a securities fraud action regarding, *inter alia*, unauthorized transfers of assets of at least $32 million to corporate insiders and related entities; the case settled for $37.5 million.

l.      *High Street Rehab., LLC, et al. v. American Specialty Health Inc., et al.*, No. 2:12-cv-07243-NIQA (E.D. Pa.): represented medical professionals in class action alleging that Cigna and American Specialty Health impose utilization management review requirements on out-of-network chiropractic providers in a deliberate effort to avoid paying benefits provided by employer-sponsored health benefits plans that Cigna insured and/or for which Cigna administered benefits claims in violation of ERISA and the terms of Cigna insurance plans; matter settled for $11.75 million.

30.     A copy of Dilworth Paxson's firm resume, which provides highlights of Ms. Pratsinakis' and Dilworth Paxson's experience in class action and other complex litigation, is attached as Exhibit B to the Original Joint Declaration, *CAPP*, ECF No. 59-2.

## The Class Representatives Have Been Actively Involved

31.     The proposed Class Representatives have been actively engaged in this litigation since first getting involved. Among other things, they have provided documents and information about their experiences, reviewed pleadings, reviewed and approved the Original Settlement and Modified Settlement, and communicated with counsel about the status of the case and the settlement.

## The Modified Settlement is Fair, Reasonable and Adequate

32.     Based on our experience and knowledge about the facts and issues in this litigation, we believe that the Modified Settlement represents a fair, reasonable, and adequate result for, and is in the best interests of, the Settlement Class.

33.     Attached hereto as **Exhibits C and D**, respectively, are a true and correct copies of the parties' updated agreed forms of [Proposed] Final Approval Order and [Proposed] Judgment.

We declare under penalty of perjury of the laws of the United States that the forgoing is true and correct.

Executed on January 22, 2025, in San Francisco, CA.

By: *s/ Roger N. Heller*

Executed on January 22, 2025, in Los Angeles, CA.

By: *s/ Taras Kick*

Executed on January 22, 2025, in Philadelphia, PA.

*By: s/ Catherine Pratsinakis*

-13-

## <u>CERTIFICATION PURSUANT TO GENERAL ORDER 16-0020</u>

I hereby certify that the content of the document is acceptable to all persons required to sign the document, and all such persons have consented to inclusion of their electronic signatures on the document.

Dated: January 22, 2025           _/s/ Catherine Pratsiankis_

# EXHIBIT A

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

This Class Action Settlement Agreement and Release ("Agreement") is entered into by and between Plaintiffs CAPP, Inc.; Young Peoples Day Camps Inc.; Prayus Group LLC; Lemmo's Pizzeria, LLC; and Lennys Casita, LLC (collectively the "Settlement Class Representatives"), on behalf of themselves and the Settlement Class, as defined below, on one hand, and Defendants Discover Financial Services; DFS Services LLC ("DFS Services"); and Discover Bank (collectively "Discover"), on the other hand (together the "Parties").

## 1. RECITALS

WHEREAS, on July 19, 2023, Plaintiffs CAPP, Inc., Young Peoples Day Camps, Inc., and KMJA Day Camps, Inc. filed a putative class action lawsuit in the United States District Court for the Northern District of Illinois, styled *CAPP, Inc. et al. v. Discover Financial Services et al.*, Case No. 1:23-cv-4676 (the "CAPP Lawsuit"), and on August 11, 2023, filed an Amended Complaint naming an additional plaintiff, Prayus Group LLC, and asserting additional claims in that action;

WHEREAS, on August 14, 2023, Plaintiff Lemmo's Pizzeria, LLC filed a putative class action lawsuit in the United States District Court for the Central District of California, styled *Lemmo's Pizzeria, LLC v. Discover Financial Services et al.*, Case No. 2:23-cv-6651, and on September 5, 2023, filed a First Amended Complaint in that action, which was subsequently transferred to the United States District Court for the Northern District of Illinois and assigned Case No. 1:23-cv-14250 (the "Lemmo's Lawsuit");

WHEREAS, on August 29, 2023, Plaintiffs Support Animal Holdings, LLC and Lenny's Casita, LLC filed a putative class action lawsuit in the United States District Court for the Central District of California, styled *Support Animal Holdings, LLC et al. v. Discover Financial Services et al.*, Case No. 2:23-cv-7131, and the same day filed an Amended Complaint in that action, which was subsequently transferred to the United States District Court for the Northern District of Illinois and assigned Case No. 1:23-cv-15297 (the "Support Animal Lawsuit");

WHEREAS, on January 8, 2024, the CAPP Lawsuit, Lemmo's Lawsuit, and Support Animal Lawsuit (collectively the "Lawsuits") were deemed related and collectively assigned to the Hon. Steven C. Seeger;

WHEREAS, the Lawsuits allege that beginning in 2007, Discover incorrectly classified a portion of its consumer credit cards as commercial, which in turn caused Plaintiffs and members of the Settlement Class to incur excessive interchange fees; collectively, the Lawsuits allege claims under the federal RICO statute, 18 U.S.C. § 1962(c)-(d), and under several state consumer protection and common laws;

WHEREAS, Discover denies all claims asserted in the Lawsuits, and makes no admissions by entering this Agreement;

WHEREAS, the Parties desire to resolve all claims that are or could have been asserted in the Lawsuits regarding, or that otherwise relate to any claims brought by individuals who or entities that incurred, excessive interchange fees as a result of Discover's incorrect classification of credit cards as commercial where such credit cards should have been classified as "rewards," "premium," or "premium plus";

WHEREAS, on February 13, 2024, March 21, 2024, and May 14, 2024, the Parties participated in mediation sessions in Los Angeles, California, with the Hon. Jay C. Gandhi (Ret.) of JAMS, through which after extensive, arm's-length negotiations, the Parties reached an agreement in principle to settle on the terms and conditions embodied in this Agreement;

WHEREAS, the Parties executed a settlement agreement on June 28, 2024, which was the subject of Plaintiffs' August 27, 2024 motion for preliminary approval and which the Court granted preliminary approval of on October 22, 2024;

WHEREAS, Discover has become aware of additional data from 2007-2015 and determined the data was sufficient to support changes to the Methodology set forth in Exhibit B for calculating the MID Amount associated with a MID, and the Parties agreed that this Agreement should be modified to account for that data and the revised Methodology;

WHEREAS, in addition to the litigation that has occurred, the Parties' counsel have reviewed documents and data relating to the Lawsuits and analyzed the legal issues in the cases, the Parties' counsel have engaged ~~and will engage in further~~ in confirmatory discovery as set forth herein, and the Settlement Class Representatives and their counsel believe that the claims asserted in the Lawsuits have merit and Discover and its counsel deny and believe that they have meritorious defenses;

WHEREAS, Settlement Class Counsel believes that the proposed Settlement of the Lawsuits, as set forth herein, is in the best interest of the Settlement Class as defined herein;

WHEREAS, the Parties, Settlement Class Counsel, and Discover Counsel believe the Settlement is fair, reasonable, and adequate, and that the Settlement should be approved by the Court under Federal Rule of Civil Procedure 23(e);

WHEREAS, the Parties have concluded that continued litigation will likely be protracted and expensive, and that it is desirable that the Lawsuits be fully and finally settled in the manner and on the terms set forth in this Agreement in order to avoid the costs, delays, and uncertainties of continued litigation; and

WHEREAS, the Settlement resolves the Lawsuits in their entirety, and the parties intend this Settlement to bind the Parties and all Settlement Class Members who have not timely and validly excluded themselves, as provided herein, from the Settlement Class;

THEREFORE, Discover and the Settlement Class Representatives, on behalf of themselves and the Settlement Class, through their undersigned counsel, agree to settle the Lawsuits, subject to Court approval, under the following terms and conditions.

## 2. DEFINITIONS

As used in this Agreement, including in the attached exhibits, the following terms have the following meanings unless this Agreement specifically provides otherwise.

2.1. "**Active Direct End Merchant**" means a Direct End Merchant that either: (a) according to the records of DFS Services, has (i) an effective contract with DFS Services to accept Discover Credit Card Transactions as of the date of entry of the Preliminary Approval Order and

has (ii) processed a Discover Credit Card Transaction within the ninety (90) days preceding the date of entry of the Preliminary Approval Order; and/or (b) the Settlement Administrator determines to a reasonable degree of confidence is still in operation as of the date of entry of the Preliminary Approval Order and is able to locate a current corporate address as of that time.

2.2. "**Adjusted Total Non-Claimant Payment**" means the total of all Non-Claimant Payments reported by Discover pursuant to Section 3.5.1 up to but not to exceed, in the aggregate, the Total Allocated MID Amounts , as determined pursuant to Section 3.4, associated with every Non-Claimant Payment, as determined pursuant to Section 3.4. "Minimum Adjusted Total Non-Claimant Payment" means the total of all Non-Claimant Payments reported by Discover pursuant to Section 3.5.1 up to but not to exceed, in the aggregate, the Total Allocated MID Amounts associated with every Non-Claimant Payment, as determined pursuant to Section 3.4, with the exception that the Annual MID Interest Amounts are calculated (pursuant to Section 2.3 of the Methodology) up to the date of entry of the Preliminary Approval Order only.

2.3. "**Agreement**" means this Class Action Settlement Agreement and Release. For the avoidance of doubt, "Agreement" does *not* mean the Class Action Settlement Agreement and Release previously executed on June 28, 2024.

2.4. "**Allocated MID Amount**" means the portion or percentage of the MID Amount attributable to a MID Claimant or Non-Claiming Entity, as determined in accordance with Section 3.4 of this Agreement.

2.5. "**Attorneys' Fees and Expenses**" means those amount(s), to be determined by the Court, awarded to Settlement Class Counsel for: (a) attorneys' fees (not to exceed $25,000,000.00); and (b) reimbursement of litigation expenses (not to exceed $1,000,000.00).

2.6. "**Base Payment Eligible Settlement Class Member**" means a Payment Eligible Settlement Class Member whose Total Allocated MID Amounts are less than $10.00.

2.7. "**Claim**" or "**Claims**" means any and all actual or potential claims, counterclaims, cross claims, third-party claims, actions, causes of action, suits, liabilities, and demands for monetary relief, damages (whether actual, nominal, punitive, exemplary, statutory, or otherwise),

4

injunctive relief, restitution, disgorgement, costs, fees, attorneys' fees, or penalties of any kind. For the avoidance of doubt, "Claim" or "Claims" includes but is not limited to any cause of action asserted in the Lawsuits.

2.8.    "**Claim Form**" means the electronic and/or paper form(s), substantially in the form(s) that will be agreed to by Settlement Class Counsel and Discover Counsel and attached to the Motion for Preliminary Approval, that certain Settlement Class Members, as described herein, must use to submit a Settlement Claim under this Agreement.  The Claim Form shall require the following information: (a) name, mailing address, email address, and phone number; (b) TIN; (c) whether the Settlement Class Member requests payment by a method other than mailed check; and (d) to the best of the Settlement Class Member's knowledge and belief, the range of years they accepted Discover credit cards; and (e) confirmation that, to the best of their knowledge and belief, no other person or entity has a claim to any Settlement Payment payable to the Settlement Class Member.  Claim Forms may be submitted electronically via the Settlement Website or by mail. To the extent the information is available in Discover's records, Discover will provide the Settlement Administrator with information needed to pre-populate the Claim Forms, and the Settlement Administrator shall pre-populate Claim Forms (electronic and hard copy claim forms sent with direct notices) with the following information as available (subject to modification by the claimant): (a) name; (b) mailing address; (c) email address; (d) phone number; and (e) TIN (with the first 5 numbers concealed on any hard copy forms included with notices).  The Claim Form shall also permit, but shall not require, claimants to submit any additional information they wish supporting that they are a member of the Settlement Class and/or concerning what portion of a MID Amount(s) they are entitled to receive under the terms of the Settlement.[1]

2.9.    "**Court**" means the United States District Court for the Northern District of Illinois.

---

[1] The electronic Claim Form shall provide the opportunity to provide additional information and electronic payment preference information on subsequent screens after the submission of the remaining claim information.  Electronic Claim Forms shall be deemed submitted even if the claimant takes no action on such subsequent screen(s).

2.10. "**Direct End Merchant**" means an End Merchant that, according to the records of DFS Services, has, or during the Relevant Period had, a written contractual relationship directly with Discover allowing the End Merchant to accept Discover Credit Card Transactions without the aid of entities other than Discover (such as Merchant Acquirers or Payment Intermediaries).

2.11. "**Discover**" means, individually and collectively, Discover Financial Services, DFS Services LLC, and Discover Bank.

2.12. "**Discover Counsel**" means attorneys responsible for this matter at the law firm Covington & Burling LLP.

2.13. "**Discover Credit Card Transaction**" means a transaction subject to United States pricing made for the purpose of accepting or facilitating a payment in exchange for the delivery of goods or services made using a credit card account issued by Discover Bank.

2.14. "**Discover Released Claims**" means all claims and causes of action based upon the institution, prosecution, or settlement of the Lawsuits.

2.15. "**Discover Released Parties**" means Settlement Class Counsel, the Settlement Class Representatives, and each Settlement Class Member, and any agents, representatives, trustees, trusts, executors, administrators, heirs, beneficiaries, estates, administrators, advisors, assigns, predecessors, and successors of any of the foregoing.

2.16. "**Discover Releasing Parties**" means Discover Financial Services, DFS Services LLC, and Discover Bank, along with their predecessors, successors (including without limitation acquirers of all or substantially all of their assets, stock, or other ownership interests), and assigns; the past, present, and future, direct and indirect, parents, subsidiaries, and affiliates; and the past, present, and future principals, trustees, partners, officers, directors, employees, agents, attorneys, shareholders, advisors, predecessors, successors, assigns, representatives, heirs, executors, and administrators of any of the foregoing.

2.17. "**Downstream**" means, for any given Discover Credit Card Transaction, all persons or entities participating in the transaction with a farther relational position from DFS Services. For example, in a Discover Credit Card Transaction involving DFS Services, a single Merchant

6

Acquirer, a single Payment Intermediary, and an End Merchant, both the Payment Intermediary and the End Merchant are Downstream from the Merchant Acquirer, and the End Merchant is Downstream from the Payment Intermediary.

2.18. "**Downstream Entities**" means all of the Downstream contractual entities involved in accepting or processing a Discover Credit Card Transaction facilitated by a particular Managed Active Direct End Merchant, Merchant Acquirer or Payment Intermediary, including all Payment Intermediaries and End Merchants.

2.19. "**Effective Date**" means the date on which all of the following events have occurred: (a) the Court has entered both the Final Approval Order and Judgment (or the substantive equivalent(s) thereof); and (b) either: (i) the time to appeal from the Final Approval Order and Judgment has expired and no appeal has been taken, or (ii) if a timely appeal of the Final Approval Order or Judgment is taken, and if the Final Approval Order and Judgment have not been reversed in any way, the date on which the Final Approval Order and Judgment are no longer subject to further direct appellate review.  If Settlement Class Counsel and Discover Counsel agree in writing, the Effective Date can occur on an earlier agreed date.

2.20. "**End Merchant**" means an individual natural person or business entity that during the Relevant Period accepted a Discover Bank-issued credit card directly from a person as payment in return for the delivery of goods or services.  For the avoidance of doubt, and for purposes of this Settlement, an entity characterized by Discover's rules and regulations as a "Merchant" is not necessarily an End Merchant.

2.21. "**Escrow Agent**" means the agreed-upon entity to hold the Settlement Escrow Account.  The Parties agree that Citi Private Bank shall serve as Escrow Agent, subject to approval by the Court.

2.22. "**Final Approval Hearing**" means the hearing to be held by the Court for the purpose of determining whether to approve this Settlement as fair, reasonable, and adequate.  The Parties agree to request that the Court hold the Final Approval Hearing ~~three~~ two hundred ~~and seventy two (372~~ninety six (296) days after the Preliminary Approval Order is entered.

7

2.23.   "**Final Approval Order**" means the order in substantially the form that will be agreed to by Settlement Class Counsel and Discover Counsel and attached to the Motion for Preliminary Approval, subject to any non-substantive modifications the Court may direct, that the Parties agree to seek to have entered by the Court to grant final approval of the Settlement and direct its consummation pursuant to the terms and conditions in this Agreement, approve the Release, and dismiss the Claims asserted in the Lawsuits with prejudice.

2.24.   "**Inactive Direct End Merchant**" means a Direct End Merchant that is not an Active Direct End Merchant.

2.25.   "**Indirect End Merchant**" means an End Merchant that is not a Direct End Merchant, including any person or entity that accepts or processes Discover Credit Card Transactions through Merchant Acquirers and/or Payment Intermediaries.

2.26.   "**Judgment**" means the judgment in substantially the form that will be agreed to by Settlement Class Counsel and Discover Counsel and attached to the Motion for Preliminary Approval, subject to any non-substantive modifications the Court may direct, that the Parties agree to seek to have entered by the Court.

2.27.   "**Lawsuits**" means, collectively, the CAPP Lawsuit (as defined in the Recitals), the Lemmo's Lawsuit (as defined in the Recitals), and the Support Animal Lawsuit (as defined in the Recitals).

2.28.   "**Managed**" describes a Settlement Class Member that interacts with Discover through client relationship managers on a regular basis.  The list of Managed entities was provided by Discover to Settlement Class Counsel and the Settlement Administrator on May 17, 2024, and is final as of the Execution DateJune 28, 2024.

2.29.   "**Managed Active Direct End Merchant Payment Details**" means information that Managed Active Direct End Merchants must provide to the Settlement Administrator to receive a Settlement Payment for years 2016-2023 confirming (i) the appropriate entity name for payment; (ii) how and where such Settlement Payment should be sent by check or electronic payment; and (iii) that, to the best of the Managed Active Direct End Merchant's knowledge, there

are no entities Downstream to the Managed Active Direct End Merchant. If the Settlement Class Member cannot make the certification required by Section 2.29(iii) as to all of the MIDs associated with that Settlement Class Member, then the entity shall (a) make the certification required by Section 2.29(iii) as to any associated MIDs for which there are no Downstream entities, and the entity shall be considered for purposes of this Settlement as a Managed Active Direct End Merchant only as to those certified MIDs and, (b) shall provide the Settlement Administrator with the name and contact information for any Downstream Entity known by the Settlement Class Member to be associated with any non-certified MID(s).

2.30. "**Merchant Acquirer**" means an individual natural person or business entity that during the Relevant Period had an agreement with Discover to facilitate Discover Credit Card Transactions and was characterized by Discover's rules and regulations as an "Acquirer."

2.31. "**Merchant Acquirer Information**" means, for each Settlement Class Member that is a Merchant Acquirer and at any time during the Relevant Period, (a) a list of all of the Downstream Entities known to the Merchant Acquirer (by name, TIN, and MID) along with each Downstream Entity's last known mailing and email addresses, and (b) for each MID associated with the Merchant Acquirer and its Downstream Entities, documentation and/or other information supporting the allocation of each MID Amount between the Merchant Acquirer, on one hand, and the Downstream Entities to that MID, on the other hand, sufficient to reasonably demonstrate to the Settlement Administrator which portion of the MID Amount was paid individually by (i.e., is attributable to) the Merchant Acquirer, on one hand, as opposed to any of the Downstream Entities, on the other. Such documentation or information may include, for example, reliable data or documentation showing the Downstream Entities' pricing arrangement(s) with the Merchant Acquirer and the years in which such arrangement(s) were in effect, or that otherwise demonstrates that interchange fees caused by a Misclassified Card Transaction were or were not passed on to Downstream Entities.

2.32. "**Methodology**" means the formula set forth in Exhibit B for calculating the MID Amount associated with a MID. ~~The Methodology and the calculations thereunder are subject to further confirmatory discovery.~~

2.33. "**MID**" means the merchant identifier code used by Discover in its merchant acquiring systems to identify an End Merchant, or, where no such code exists, the substitute code created by the Settlement Administrator to track the MID Amount associated with an End Merchant that cannot be linked to a code used by Discover in its merchant acquiring systems to identify an End Merchant. For the avoidance of doubt, an End Merchant may have a single MID or multiple MIDs.

2.34. "**MID Amount**" means the amount associated with a MID, as determined using the Methodology (including Section 2.4 thereof).

2.35. "**MID Claimant**" means a Settlement Class Member who is Payment Eligible in relation to a particular MID.

2.36. "**MID Claimants**" means all Payment Eligible Settlement Class Members and all Non-Claiming Entities associated with a particular MID.

2.37. "**Minimum Total Class Payout**" means $~~500,000,000.00~~ 540,000,000 (~~Five Hundred Million Dollars~~five hundred forty million dollars).

2.38. "**Misclassified Card Transaction**" means a Discover Credit Card Transaction in which, at the time of processing and according to the records of Discover, the credit card account was classified by Discover Bank as a "commercial" card product but should have been classified under Discover Bank's card classification guidelines as "rewards," "premium," or "premium plus."

2.39. "**Motion for Preliminary Approval**" means the motion to be filed by Settlement Class Representatives seeking entry of the Preliminary Approval Order, as set forth in Section 5.1.

2.40. "**Motion for Final Approval**" means the motion to be filed by Settlement Class Representatives seeking entry of the Final Approval Order, as set forth in Section 5.10.

2.41.  "**Non-Claimant Payment**" means a payment made or agreed to by Discover to resolve Claims regarding the Misclassified Card Transactions during the Relevant Period of a person or entity, either (i) by no earlier than July 19, 2023 (the date on which the CAPP Lawsuit was filed) and no later than the date on which Discover must submit the affidavit required by Section 3.5.1, to any Settlement Class Member that has timely excluded itself from the Settlement Class, or (ii) by no earlier than July 19, 2023 and no later than the entry of the Preliminary Approval Order, to any person or entity who would otherwise meet the definition of a Settlement Class Member if they had not entered into an agreement with Discover to resolve the Released Claims of that person or entity (i.e., the entities listed on Exhibit A).

2.42.  "**Non-Claiming Entity**" means a Merchant Acquirer, Payment Intermediary, or End Merchant that is either (a) not a Settlement Class Member, either (1) by function of the Settlement Class definition or (2) due to the person or entity's timely and valid Request for Exclusion, or (b) is not Payment Eligible.

2.43.  "**Notice**" means the notice of the terms of the proposed Settlement.

2.44.  "**Notice and Settlement Administration Costs**" means all fees, costs, and other expenses, without limitation, relating to the Settlement Administrator's implementation and administration of the Settlement, as well as the costs and expenses of the Escrow Agent.  Notice and Settlement Administration Costs shall be paid by Discover in addition to (i.e., on top of) the Settlement Payments to Settlement Class Members.

2.45.  "**Notice Date**" means the date on which the Notice Program commences, which shall occur no later than ~~ninety (90~~forty five (45) days after the entry date of the Preliminary Approval Order.

2.46.  "**Notice Program**" means the procedures to disseminate Notice to the Settlement Class that will be agreed to by Settlement Class Counsel and Discover Counsel and attached to the Motion for Preliminary Approval.

2.47.  "**Objection Deadline**" means the last day a Settlement Class Member may submit, file, or mail any objection to the Settlement.  The Parties shall propose that the Court set the

Objection Deadline as two hundred ~~seventy~~ forty (~~270~~240) days after the Court enters the Preliminary Approval Order.

2.48.  "**Opt-Out Deadline**" means the last day a Settlement Class Member may validly exclude itself from the Settlement Class.  The Parties shall propose that the Court set the Opt-Out Deadline as two hundred ~~seventy~~ forty (~~270~~240) days after the Court enters the Preliminary Approval Order.

2.49.  "**Parties**" means the Settlement Class Representatives and Discover, collectively.

2.50.  "**Payment Account Information**" means, where a Settlement Class Member has requested the distribution of a Settlement Payment by ACH, the routing and account number for the bank or credit union account to which they want such payment sent/credited.

2.51.  "**Payment Eligible**" describes a Settlement Class Member who is eligible to receive a Settlement Payment in connection with the Settlement, either because the Settlement Class Member is a/an:

2.51.1. Unmanaged Active Direct End Merchant that has not submitted a timely and valid Request for Exclusion and ~~(i) for years 2016-2023,~~ has a positive Total Allocated MID Amount ~~and/or (ii) for years 2007-2015, has submitted a timely and valid Settlement Claim~~;

2.51.2. Managed Active Direct End Merchant that has not submitted a timely and valid Request for Exclusion and ~~(i) for years 2016-2023,~~ has a positive Total Allocated MID Amount and has timely provided Managed Active Direct End Merchant Payment Details ~~and/or (ii) for years 2007-2015, has submitted a timely and valid Settlement Claim~~;

2.51.3. Inactive Direct End Merchant, Indirect End Merchant, Merchant Acquirer, or Payment Intermediary that has not submitted a timely and valid Request for Exclusion and has submitted a timely and valid Settlement Claim.

2.52. "**Payment Intermediary**" means a business entity (or portion of that entity's business) that during the Relevant Period processed a Discover Credit Card Transaction on behalf of a Downstream Entity, but that is neither a Merchant Acquirer nor an End Merchant.

2.53. "**Payment Intermediary Information**" means, for each Settlement Class Member who is a Payment Intermediary and at any time during the Relevant Period, (a) a list of all of the Downstream Entities known to that Payment Intermediary (by name, TIN, and, if available, MID) along with each Downstream Entity's last known mailing and email addresses; and (b) for each MID associated with the Payment Intermediary and its Downstream Entities, documentation and/or other information supporting the allocation of each MID Amount between the Payment Intermediary, on one hand, and the Downstream Entities to that MID, on the other hand, sufficient to reasonably demonstrate to the Settlement Administrator which portion of the MID Amount was paid individually by (i.e., attributable to) the Payment Intermediary, on one hand, as opposed to any of the Downstream Entities, on the other. Such documentation or information may include, for example, reliable data or documentation showing the Downstream Entities' pricing arrangement(s) with the Payment Intermediary and the years in which such arrangement(s) were in effect, or that otherwise demonstrates that interchange fees caused by Misclassified Card Transactions were or were not passed on to Downstream Entities.

2.54. "**Plaintiffs**" means, collectively, each of the named plaintiffs in the Lawsuits.

2.55. "**Preliminary Approval Order**" means the order in substantially the form that will be agreed to by Settlement Class Counsel and Discover Counsel and attached to the Motion for Preliminary Approval, subject to any non-substantive modifications as the Court may direct, that the Parties agree to seek to have the Court enter that concludes that the Court will likely be able to approve the Settlement reflected in this Agreement, orders Notice be provided to the Settlement Class, and certifies the Settlement Class for settlement purposes only.

2.56. "**Release**" means the releases and waivers described in Section 3.7 of this Agreement and in the Final Approval Order.

2.57. "**Released Claims**" means any and all Claims based in any way on conduct that occurred prior to the date of execution of this Agreement that the Settlement Class Representatives or any Settlement Class Member ever had, now have, or may have in the future had, arising out of or in any way relating to the Misclassified Card Transactions during the Relevant Period. "Released Claims" does not include any Claims based on damages that Discover shareholders may have incurred as a result of any alleged violations of any securities laws, including the claims asserted in the case styled *KBC Asset Management N.V. v. Discover Financial Services*, No. 23-cv-6788 (N.D. Ill.) and the claims asserted in the case styled *In re Discover Financial Services Derivative Litigation*, No. 23-cv-1102 (D. Del.).

2.58. "**Released Parties**" means Discover Financial Services, DFS Services LLC, and Discover Bank, with their predecessors, successors (including without limitation acquirers of all or substantially all of their assets, stock, or other ownership interests), and assigns; the past, present, and future, direct and indirect, parents, subsidiaries, and affiliates; and the past, present, and future principals, trustees, partners, officers, directors, employees, agents, attorneys, shareholders, advisors, predecessors, successors, assigns, representatives, heirs, executors, and administrators of any of the foregoing.

2.59. "**Releasing Parties**" means the Settlement Class Representatives and each Settlement Class Member (except those who timely and validly exclude themselves from the Settlement Class pursuant to the provisions of this Agreement), on behalf of themselves and any other legal or natural persons or entities who or which may claim by, through, or under them, and any agents, representatives, trustees, trusts, executors, administrators, heirs, beneficiaries, estates, administrators, advisors, assigns, predecessors, and successors of any of the foregoing.

2.60. "**Relevant Period**" means January 1, 2007 through December 31, 2023.

2.61. "**Request for Exclusion**" means a timely request by a Settlement Class Member for exclusion from the Settlement Class made pursuant to the provisions of Section 5.7 of this Agreement.

2.62.  "**Service Awards**" means any awards approved by the Court to the Settlement Class Representatives in recognition of their efforts and commitment in the Lawsuits on behalf of the Settlement Class, in amount(s) to be determined by the Court (not to exceed $7,500.00 each).

2.63.  "**Settlement**" means the settlement contemplated by the terms of this Agreement.

2.64.  "**Settlement Administrator**" means Epiq Class Action & Claims Solutions, Inc., subject to Court approval.  The Settlement Administrator shall perform the duties and services contemplated by this Agreement and such other reasonable services to effectuate the Settlement, as are required by law, as are agreed to by the written consent of both Settlement Class Counsel and Discover Counsel, and as approved by the Court.

2.65.  "**Settlement Base Payment**" means the payment to be made to qualifying Settlement Class Members based on the methodology set forth in Section 3.5.4.

2.66.  "**Settlement Base Payment Maximum**" means $50,000,000.00 (Fifty Million Dollars), which is the maximum amount that Discover is obligated to pay in the aggregate as Settlement Base Payments, unless the provisions of Section 3.5.5 apply.

2.67.  "**Settlement Claim**" means a claim to receive a Settlement Payment submitted in the form applicable to the Settlement Class Member as described in Sections 3.3.4 through 3.3.6 of this Agreement.

2.68.  "**Settlement Claim Deadline**" means the date by which a Settlement Class Member (other than Active Direct End Merchants for years 2016-2023) must submit a Settlement Claim to the Settlement Administrator under this Agreement in order for the Settlement Claim to be deemed valid and receive a Settlement Payment.  The Parties shall propose that the Court set the Settlement Claim Deadline as three two hundred sixty five (365 ninety four (294) days after the Court enters the Preliminary Approval Order.

2.69.  "**Settlement Class**" means, for purposes of the Settlement and the proceedings contemplated in this Agreement for effectuating the Settlement, a settlement class under Federal Rule of Civil Procedure 23(a), 23(b)(3), and 23(e), defined as: all End Merchants, Merchant Acquirers, and Payment Intermediaries involved in processing or accepting a Misclassified Card

Transaction during the Relevant Period. The entities and individuals listed on Exhibit A are excluded from the Settlement Class, even if they meet the foregoing definition.

2.70. "**Settlement Class Counsel**" means Roger N. Heller of Lieff Cabraser Heimann & Bernstein LLP, Catherine Pratsinakis of Dilworth Paxson LLP, and Taras Kick of The Kick Law Firm, APC.

2.71. "**Settlement Class Member**" means a member of the Settlement Class. Each entity with a unique TIN shall be considered a single Settlement Class Member, even if the Settlement Class Member is Payment Eligible under more than one provision of Sections 3.3.1 through 3.3.6 of this Agreement.

2.72. "**Settlement Class Representatives**" means Plaintiffs CAPP, Inc.; Young Peoples Day Camps Inc.; Prayus Group LLC; Lemmo's Pizzeria, LLC; and Lennys Casita, LLC.

2.73. "**Settlement Escrow Account**" means the escrow account managed by the Escrow Agent used to make Settlement Payments made pursuant to the Settlement.

2.74. "**Settlement Payment**" means the amount payable to a Payment Eligible Settlement Class Member, as calculated pursuant to Section 3.5 of this Agreement.

2.75. "**Settlement Website**" means the website that is to be created for notice, claims submission, and settlement administration purposes by the Settlement Administrator in the manner contemplated in this Agreement.

2.76. "**TIN**" means the Taxpayer Identification Number assigned by the Internal Revenue Service ("IRS") or Social Security Administration and used by the IRS in the administration of tax laws.

2.77. "**Total Allocated MID Amount**" means, for each Settlement Class Member or Non-Claiming Entity, the total of the Allocated MID Amount(s) for every MID associated with that Settlement Class Member or Non-Claiming Entity.

2.78. "**Total Non-Claimant Payments**" means the total aggregate amount of any Non-Claimant Payment(s) made by Discover.

2.79. "**Total Settlement Payout**" means the sum of: (a) $~~1,093,735,923;~~ 1,225,311,279 plus (b) the aggregate of all Annual MID Interest Amounts ~~for year 2024 as calculated pursuant to Section 1.13 and Section 2.4 (Step 3) of the Methodology~~ through the date of the Escrow Final Funding Date as set forth in Section 5.11 of this Agreement.

2.80. "**Unmanaged**" describes a Settlement Class Member that is not Managed.

## 3. SETTLEMENT TERMS

3.1. **Certification of Settlement Class.**

3.1.1. Only for the purposes of the Settlement and the proceedings contemplated herein for effectuating the Settlement, the Parties agree that Plaintiffs shall move the Court to provisionally certify the Settlement Class, as defined in Section 2.69 of this Agreement, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(3), and 23(e).

3.1.2. Only for the purposes of the Settlement and the proceedings contemplated herein for effectuating the Settlement, the Parties agree that Settlement Class Counsel shall move for the appointment of Settlement Class Representatives as representatives of the Settlement Class and the following attorneys as Settlement Class Counsel: Roger N. Heller of Lieff Cabraser Heimann & Bernstein LLP, Catherine Pratsinakis of Dilworth Paxson LLP, and Taras Kick of The Kick Law Firm, APC.

3.1.3. The Parties expressly recognize and agree that any preliminary or final order certifying the Settlement Class and appointing Settlement Class Representatives and Settlement Class Counsel shall be of no force or effect, and has no evidentiary significance, outside of enforcing or effecting the terms of this Agreement. By entering into this Agreement, Discover does not waive its right to challenge or contest the maintenance of any lawsuit against it as a class action and to oppose certification of any class other than the Settlement Class in connection with the Settlement.

3.2. **Settlement Consideration.** In consideration for the complete and final settlement of the Lawsuits, the Releases, and the other promises and covenants set forth in this Agreement, and subject to the other terms and conditions herein, Discover agrees to the implementation of the

notice and claims process set forth in this Agreement and to pay the Settlement Payments as calculated pursuant to Section 3.5 of this Agreement. As set forth in further detail in this Agreement, in addition to (i.e., on top of) the Settlement Payments to Payment Eligible Settlement Class Members, Discover also agrees to pay any Court-awarded Attorneys' Fees and Expenses, any Court-awarded Service Awards, and all Notice and Settlement Administration Costs. Discover shall have no other monetary obligations under this Agreement and in connection with the Settlement.

3.3. **Settlement Claims Process.** The process by which Settlement Class Members will be entitled to receive a Settlement Payment shall be as follows:

3.3.1. <u>Unmanaged Active Direct End Merchants</u>. Each Unmanaged Active Direct End Merchant shall be automatically deemed Payment Eligible ~~for the years 2016 to 2023 (inclusive)~~, and shall be issued a Settlement Payment (calculated pursuant to Section 3.5 of this Agreement) in check form based on the then-current address information on file with Discover (unless otherwise modified in writing by the Unmanaged Active Direct End Merchant), without the need to submit a Settlement Claim.

3.3.2. <u>Managed Active Direct End Merchants</u>. Each Managed Active Direct End Merchant shall be automatically deemed Payment Eligible ~~for the years 2016 to 2023 (inclusive)~~, and shall be issued a Settlement Payment (calculated pursuant to Section 3.5 of this Agreement) in the manner described in the Managed Active Direct End Merchant Payment Details without the need to submit a Settlement Claim, as long as they provide the Settlement Administrator with their Managed Active Direct End Merchant Payment Details in writing or by electronic submission by the Settlement Claim Deadline. The Settlement Administrator will make reasonable efforts to obtain (i) Managed Active Direct End Merchant Payment Details, including at least two follow up attempts at least thirty (30) days in advance of the Settlement Claim Deadline for those Managed Active Direct End Merchants that have not yet provided the Managed Active Direct End Merchant Payment Details, and (ii) the name and contact information for any Downstream Entity

known by the Settlement Class Member to be associated with any non-certified MID(s). Where the Settlement Administrator receives such information from a Managed Active Direct End Merchant about a Downstream Entity associated with non-certified MID(s), the Settlement Administrator shall make reasonable efforts to obtain from such Downstream Entity the information corresponding to Section 2.29(i)-(iii) for such Downstream Entity and MID(s); if the Downstream Entity provides such information to the Settlement Administrator (including the corresponding certification in Section 2.29(iii)), in writing or by electronic submission within sixty (60) days after being contacted by the Settlement Administrator, such Downstream Entity shall be automatically deemed Payment Eligible for the years 2016 to 2023 (inclusive), and shall be issued a Settlement Payment (calculated pursuant to Section 3.5 of this Agreement) without the need to submit a Settlement Claim. These additional efforts by the Settlement Administrator shall also include a reminder for the Managed Active Direct End Merchant and relevant Downstream Entities to submit Claim Forms in order to be eligible to receive payments for years 2007-2015.

3.3.3. Both Unmanaged and The following process shall be used to determine which Settlement Class Members qualify as Managed Active Direct End Merchants must submit a valid Claim Form by the Settlement Claim Deadline to be issued any additional Settlement Payment, including as an Unmanaged or Managed and Unmanaged Active Direct End Merchant, for any of the years 2007 to 2015. Merchants:

3.3.3.1. Within fourteen (14seven (7) days of the entry of the Preliminary Approval Order, Discover shall provide the Settlement Administrator with a list of the Active Direct End Merchants within subsection (a) of Section 2.1 of this Agreement, including for each of them: (a) name; (b) contact information; (c) TIN; and (d) associated MID(s) and MID Amount(s).

3.3.3.2. Within fourteen (14seven (7) days of entry of the Preliminary Approval Order, Discover shall provide the Settlement Administrator with a list of Direct End Merchants that are **not** within subsection (a) of Section 2.1 of this

Agreement, including for each of them: (a) name; (b) contact information; (c) TIN; and (d) associated MID(s) and MID Amount(s).  The Settlement Administrator shall work with Discover, and in consultation with Settlement Class Counsel, to identify Unmanaged Active Direct End Merchants within subsection (b) of Section 2.1 of this Agreement.

3.3.4.   Inactive Direct End Merchants and Indirect End Merchants.  Inactive Direct End Merchants~~,~~  and Indirect ~~End Merchants, and (to the extent they are seeking a Settlement Payment for years 2007 to 2015) Active Direct~~ End Merchants that submit a valid Claim Form by the Settlement Claim Deadline shall be issued a Settlement Payment (calculated pursuant to Section 3.5 of this Agreement).

3.3.5.   Merchant Acquirers:  Merchant Acquirers that submit a valid Claim Form by the Settlement Claim Deadline shall be issued a Settlement Payment (calculated pursuant to Section 3.5 of this Agreement) if, in addition to the Claim Form, they provide to the Settlement Administrator their Merchant Acquirer Information within one hundred and ~~fifty (150~~five (105) days after the date of entry of the Preliminary Approval Order.

3.3.6.   Payment Intermediaries:  Payment Intermediaries that submit a valid Claim Form by the Settlement Claim Deadline shall be issued a Settlement Payment (calculated pursuant to Section 3.5 of this Agreement) if, in addition to the Claim Form, they provide to the Settlement Administrator their Payment Intermediary Information within two hundred ~~seventy~~ ten (~~270~~210) days after the date of entry of the Preliminary Approval Order.

3.3.7.   Additional Efforts to Obtain Merchant Acquirer Information and Payment Intermediary Information.  For any Merchant Acquirers or Payment Intermediaries that do not provide on a timely basis, as applicable, Merchant Acquirer Information or Payment Intermediary Information that can be obtained through commercially reasonable means, including to the extent they provide Merchant Acquirer Information or Payment Intermediary Information that is not sufficient to reasonably demonstrate to the Settlement

Administrator how to allocate MID Amounts, the Settlement Administrator shall take additional steps to try to obtain such information. Any information obtained by the Settlement Claim Deadline shall be deemed the same as if the Merchant Acquirer or Payment Intermediary had submitted such information by the deadline set forth in Sections 3.3.5 and 3.3.6 of this Agreement, and shall considered by the Settlement Administrator, including: (a) as practicable based on when the information is obtained for purposes of providing notice to the Settlement Class under Section 5.4; (b) allocating MID Amounts under Section 3.4; and (c) calculating the Settlement Payment due to Payment Eligible Settlement Class Members under Section 3.5.

3.3.8. The Parties acknowledge that a single Settlement Class Member could qualify for a Settlement Payment under multiple provisions of Section 3.3.1 – Section 3.3.6, depending on the nature of its relationship with Discover and potentially Downstream Entities. For the avoidance of doubt, a Settlement Class Member is only entitled to a Settlement Payment without submitting a Settlement Claim for the portion of any MID that arises out of the Settlement Class Member's relationship with Discover as (i) an Unmanaged Active Direct End Merchant ~~and for the years 2016 to 2023~~ or (ii) a Managed Active Direct End Merchant (or corresponding identified Downstream Entity associated with non-certified MID(s) pursuant to the terms of Section 3.3.2) ~~and for the years for the years 2016 to 2023~~, if the Managed Active Direct End Merchant timely provides Managed Active Direct End Merchant Payment Details; that Settlement Class Member must submit a Settlement Claim to be eligible to receive a Settlement Payment in connection with the portion of any MID that arises out of any other ~~years or~~ aspect of the Settlement Class Member's relationship with Discover. If the Settlement Class Member's relationship with Discover is covered by multiple provisions of Section 3.3.4 – Section 3.3.6, then the Settlement Class Member must provide the corresponding information for each in order for the Settlement Class Member's claim for that applicable provision to be deemed valid. All references to a Settlement Class Member's eligibility for a Settlement

Payment, other than those in Section 3.5.4, shall be understood to refer individually to the portion of the Settlement Class Member's claim under each of the provisions of Sections 3.3.1 – 3.3.6, and not to any aggregate rights across those categories. Upon request from a Settlement Class Member, the Settlement Administrator shall assist the Settlement Class Member in determining which provision of Section 3.3.1 – Section 3.3.6 applies to the Settlement Class Member. If a Settlement Class Member seeks a Settlement Payment (including by submitting a Settlement Claim) under a provision of Sections 3.3.1 – 3.3.6 and the Settlement Administrator determines, based on information reasonably available to the Settlement Administrator, that the Settlement Claim should have been provided under a different provision of Section 3.3.1 – Section 3.3.6, the Settlement Administrator shall work with the Settlement Class Member as may be necessary to supplement the Settlement Claim.

3.3.9. The Settlement Administrator shall be responsible for reviewing, maintaining records of, and determining the validity or completeness (as applicable) of all submitted Claim Forms and all additional information submitted by End Merchants, Merchant Acquirers and Payment Intermediaries, including Merchant Acquirer Information and Payment Intermediary Information. The Settlement Administrator, in conjunction with the Parties, shall use responsible, adequate, and customary procedures and standards to identify and prevent the issuance of Settlement Payments to those who submit fraudulent, untimely, or invalid Settlement Claims; may reject Settlement Claims that are invalid or evidence fraud or abuse; and shall otherwise prevent fraud, waste, and abuse in the claims process. Claim Forms that contain sufficient information for the Settlement Administrator to review and process a Settlement Claim shall not be deemed invalid solely on the basis that the claimant fails to provide information that is expressly optional or that is otherwise not necessary to process the claim or perform MID Amount allocations under Section 3.4 (e.g., phone number not included). For the avoidance of doubt, Settlement Claims submitted by Settlement Class Members shall not be deemed

invalid on the basis that the Settlement Administrator determines there are no Allocated MID Amount(s) for that Settlement Class Member. Settlement Claims submitted by entities that Discover demonstrates have agreed to or received a Non-Claimant Payment shall be deemed invalid. Determination of the validity of all Settlement Claims shall occur within thirty (30) days of the date of entry of the Final Approval Order. All Settlement Claims that the Settlement Administrator deems invalid or untimely shall be identified and presented to the Parties, who shall meet-and-confer over the validity and timeliness of any such Settlement Claim(s). If the Parties cannot agree whether a Settlement Claim is valid or timely, the Settlement Administrator shall have final authority to determine whether that Settlement Claim is valid and timely.

3.4. **Allocation of MID Amounts.** Within one hundred ~~twenty (120~~sixty five (165) days after the Effective Date, the Settlement Administrator, in consultation with Discover, Discover Counsel, and Settlement Class Counsel, shall determine:

3.4.1. for each MID associated with any timely and valid Settlement Claim, the associated MID Claimants; and

3.4.2. the portion or percentage of the MID Amount attributable to each of the MID Claimants (i.e., the "Allocated MID Amount"), which shall be based on all information made available to the Settlement Administrator, including information gathered by the reasonable efforts of the Settlement Administrator (through the claims process contemplated by this Settlement, follow up efforts, or otherwise), Settlement Class Counsel, or Discover (e.g., through information sharing agreements or otherwise) to obtain information sufficient to determine the allocation of the MID Amount among the MID Claimants, including any Non-Claiming Entity or Entities associated with the same MID. MID Allocations shall be based only on information sufficient to reasonably demonstrate to the Settlement Administrator that the Allocated MID Amount is properly allocated to each of the MID Claimants. In making the allocations, the Settlement Administrator may consider all available reliable evidence provided from any source. The Allocated MID

Amount calculated by the Settlement Administrator for any MID Claimant shall not include any portion of the MID Amount determined by the Settlement Administrator to be payable/attributable to another MID Claimant or to a Non-Claiming Entity. By way of illustration:

3.4.2.1. the Allocated MID Amount for Merchant Acquirers (including Merchant Acquirers that are Non-Claiming Entities) may be calculated by the Settlement Administrator as the portion of the MID Amount that the Merchant Acquirer demonstrates via the Merchant Acquirer Information that it paid individually (as opposed to portions passed through to Payment Intermediaries or End Merchants);

3.4.2.2. the Allocated MID Amount for Payment Intermediaries (including Payment Intermediaries that are Non-Claiming Entities) may be calculated by the Settlement Administrator as the portion of the MID Amount that the Payment Intermediary demonstrates via the Payment Intermediary Information that it paid individually (as opposed to portions paid by a Merchant Acquirer or other Payment Intermediaries or passed through to further Payment Intermediaries or End Merchants);

3.4.2.3. the Allocated MID Amount for Class Members initially identified as Managed Active Direct End Merchants may be calculated by the Settlement Administrator as the full MID Amount for each MID associated with the Managed Active Direct End Merchant, unless (i) the Managed Active Direct End Merchant did not make the certification required by Section 2.29(iii) as to that MID, or (ii) another MID Claimant for an associated MID submits a timely Settlement Claim for all or a portion of such MID Amount. In either case, and for that MID only, the Settlement Administrator shall determine the Allocated MID Amounts as if the Managed Active Direct End Merchant had timely submitted Settlement Claims for that MID, and the portion of any Settlement Payment any Managed Active Direct

24

End Merchant shall be entitled to receive under Section 3.5.2 shall be based on this Allocated MID Amount;

3.4.2.4. the Allocated MID Amount for Non-Claiming Entities may be calculated by the Settlement Administrator as the portion of the MID Amount that information provided to the Settlement Administrator demonstrates was paid by the Non-Claiming Entity (as opposed to passed through to a Downstream Entity or otherwise paid by another entity). On its own, the mere fact that a Non-Claiming Entity has received or made a claim to receive a Non-Claimant Payment is not determinative. Evidence of the amount that Discover has paid, agreed to pay, or proposed to pay a Non-Claiming Entity in connection with a MID, up to the MID Amount as calculated under the Methodology, shall be considered reliable evidence that the MID Amount or, as applicable, any portion thereof should be allocated to that entity if supported by sufficient information beyond mere existence of the payment, agreement, or proposal to pay;

3.4.2.5. the Allocated MID Amount for all other End Merchants (including End Merchants that are Non-Claiming Entities) may be calculated by the Settlement Administrator as the portion of the MID Amount that the End Merchant demonstrates based on reliable evidence that it paid individually, or as any portion of the MID Amount not claimed by a Merchant Acquirer or a Payment Intermediary (including Non-Claiming Entities that are Merchant Acquirers or Payment Intermediaries).

3.4.3. To the extent (a) sufficient Merchant Acquirer Information or Payment Intermediary Information is not provided for a MID (including following the additional efforts to obtain such information pursuant to Section 3.3.7 of this Agreement) by the Settlement Claim Deadline; (b) there is a corresponding End Merchant that has submitted a timely and valid Settlement Claim; and (c) all or any portion of the MID Amount for the MID has not been determined by the Settlement Administrator, pursuant to Section 3.4.2,

to be payable to a Non-Claiming Entity based on information provided by or about the Non-Claiming Entity, the Allocated MID Amount for the End Merchant for that MID shall be equal to the full MID Amount for that MID.

3.4.4. If the Settlement Administrator cannot independently calculate the Allocated MID Amount for any MID associated with any timely and valid Settlement Claim due to incomplete or conflicting information in the Merchant Acquirer Information, Payment Intermediary Information, and any additional information obtained pursuant to Section 3.3.7 of this Agreement, the Settlement Administrator shall promptly consult with Discover, Discover Counsel, and Settlement Class Counsel regarding how the MID Amount shall be allocated among MID Claimants, including regarding the extent to which it is appropriate, in making such allocation, to account for any corresponding Non-Claimant Payments. Where it is appropriate to account for Non-Claimant Payments, in no event shall Non-Claimant Payment(s) be accounted for in excess of the Allocated MID Amount for that MID and the Non-Claimant Payment payee(s).

3.4.5. The allocations and calculations described in this Section 3.4 shall be performed in such a way that under no circumstances shall the aggregate of the Allocated MID Amount(s) for a MID (including any Allocated MID Amount(s) determined by the Settlement Administrator to be properly attributable to an Non-Claimant Payment payee) equal more than the MID Amount for that MID.

3.5. **Settlement Payment Calculation.** Within ~~one~~ two hundred ~~eighty five (185~~thirty (230) days after the Effective Date, and unless the Parties mutually agree to another date when this calculation may be performed for a particular Payment Eligible Settlement Class Member, the Settlement Administrator shall calculate the Settlement Payment payable to each Payment Eligible Settlement Class Member as follows:

3.5.1. <u>Calculation of Total Non-Claimant Payments</u>. Within ~~ninety (90~~one hundred thirty five (135) days after the Effective Date, Discover shall provide to the Settlement Administrator and, as directed by the Court in the Preliminary Approval Order

or other Court order, to Settlement Class Counsel an affidavit verifying all Non-Claimant Payments, including a breakdown of the individual payments (by recipient and associated MIDs) comprising the Total Non-Claimant Payments. The Settlement Administrator and Settlement Class Counsel shall not further distribute this information except as directed by Court order or with Discover's written agreement. The Settlement Administrator shall then promptly calculate the "Adjusted Total Non-Claimant Payment," as defined above. In addition, within ~~ninety (90~~ one hundred thirty five (135) days after the Effective Date, Discover shall provide to the Settlement Administrator and, as directed by the Court in the Preliminary Approval Order or other Court order, to Settlement Class Counsel an affidavit verifying all payments that Discover has proposed to pay a Non-Claiming Entity in connection with a MID, including a breakdown of the individual payments (by recipient and associated MIDs) comprising all such proposed payments.

3.5.2. <u>Settlement Payment Calculation for Unmanaged Active Direct End Merchants and Managed Active Direct End Merchants</u> ~~for 2016 2023~~. Unless the provisions of Sections 3.5.4, 3.5.5, or 3.5.6 apply, to the extent the Settlement Class Member is entitled to a Settlement Payment as an Unmanaged Active Direct End Merchant or Managed Active Direct End Merchant (that timely provides Managed Active Direct End Merchant Payment Details) without the need to submit a Settlement Claim, that Settlement Payment will be equal to the MID Amount for ~~the period from 2016 2023 for~~ every MID associated with that Settlement Class Member's relationship with Discover as an Active Direct End Merchant.

3.5.3. <u>Settlement Payment Calculation for Other Payment Eligible Class Members</u>. Unless the provisions of Section 3.5.4, 3.5.5, or 3.5.6 apply, to the extent the Settlement Class Member is entitled to a Settlement Payment ~~as an Active Direct End Merchant for the period from 2007 2015, or for any years~~ as an Inactive Direct End Merchant, an Indirect End Merchant, a Merchant Acquirer, or a Payment Intermediary, the Settlement Payment will be equal to the Allocated MID Amount (as determined through

27

the provisions of Section 3.4) for that Settlement Class Member for every MID associated with that Settlement Class Member's Settlement Claim (i.e., the "Total Allocated MID Amount").

3.5.4. Base Payments for Payment Eligible Class Members if MID-Based Settlement Payment is Less Than $10.00. If the total Settlement Payment for a Payment Eligible Settlement Class Member is calculated under Section 3.5.2 and Section 3.5.3 to be less than $10.00, then the Settlement Class Member is a Base Payment Eligible Settlement Class Member and shall receive a Settlement Class Payment calculated as follows and subject to the following limitations:

3.5.4.1. If the total Settlement Payment payable to the Settlement Class Member under the provisions of Section 3.5.2 and Section 3.5.3 is equal to or less than $0.00, then, subject to the provisions of Sections 3.5.4.3, 3.5.5, and 3.5.6, the Settlement Class Member shall receive a Settlement Base Payment of $10.00.

3.5.4.2. If the total Settlement Payment payable to the Settlement Class Member under the provisions of Section 3.5.2 and Section 3.5.3 is between $0.01 and $9.99, then, subject to the provisions of Sections 3.5.4.3, 3.5.5, and 3.5.6, the Settlement Class Member shall receive, in addition to the Settlement Payment calculated through Sections 3.5.2 and 3.5.3, a Settlement Base Payment in an amount reflecting the difference between $10.00 and the Settlement Payment owed to that Settlement Class Member under the provisions of Sections 3.5.2 and 3.5.3.

3.5.4.3. The total amount of Settlement Base Payments that Discover is obligated to pay under this Settlement Agreement shall not exceed the Settlement Base Payment Maximum, unless the provisions of Section 3.5.5 apply, in which case the amount of each Settlement Base Payment shall be increased on a pro rata basis. Otherwise, the amount of each Settlement Base Payment shall be reduced on a pro rata basis until the total amount of Settlement Base Payments reaches the Settlement Base Payment Maximum.

3.5.4.4.  A Settlement Class Member is only eligible to receive a maximum of one Settlement Base Payment, regardless of how many MIDs are associated with the Settlement Class Member.

3.5.5.  <u>Increases to Settlement Payments to Meet Minimum Total Class Payout</u>.  If the total of the Settlement Payments due to all Payment Eligible Settlement Class Members under the provisions of Sections 3.5.2 through Section 3.5.4, together with the <u>Minimum</u> Adjusted Total Non-Claimant Payment, does not exceed the Minimum Total Class Payout, then each Payment Eligible Settlement Class Member's Settlement Payment shall be increased on a pro rata basis until the total amount of Settlement Payments, together with the <u>Minimum</u> Adjusted Total Non-Claimant Payments, reaches the Minimum Total Class Payout.

3.5.6.  <u>Total Settlement Payout</u>.  If the total of the Settlement Payments due to all Payment Eligible Settlement Class Members under the provisions of Sections 3.5.2 through 3.5.4, together with the Adjusted Total Non-Claimant Payment, exceeds the Total Settlement Payout, then each Payment Eligible Settlement Class Member's Settlement Payment shall be decreased on a pro rata basis until the total amount of Settlement Payments, together with the Adjusted Total Non-Claimant Payments, reaches the Total Settlement Payout.

3.5.7.  **Settlement Payment Tax Implications.**  Neither Settlement Class Counsel nor Discover or Discover Counsel are providing any opinion or advice as to the tax consequences or liabilities of Settlement Class Members as a result of any payments or benefits under this Agreement.  Nothing in this Agreement should be relied upon by any Settlement Class Member as the provision of tax advice.  Each Settlement Class Member's tax consequences or liabilities, and the determination thereof, are the sole responsibility of the Settlement Class Member, and it is understood that each Settlement Class Member's federal, state, or foreign tax consequences or liabilities may vary depending on the particular circumstances of each individual Settlement Class Member.  Settlement Class Members shall hold Discover, Discover Counsel, and Settlement Class

29

Counsel harmless from any federal, state, or foreign tax assessments, interest, and/or penalties that result for any amounts paid or benefits provided under this Agreement, and Discover shall not be liable for the payment of any additional amounts now or in the future for any amount related to a Settlement Class Member's tax consequences.

        3.5.8.  **Dissolved, Deceased, or Bankrupt Settlement Class Members.**  Nothing in this Agreement shall prevent a Settlement Payment from being provided, upon appropriate proof, to, or for the benefit of, an otherwise eligible Settlement Class Member, or that Settlement Class Member's successor or legal representative, notwithstanding that Settlement Class Member's dissolution, death, or bankruptcy (whether discharged or ongoing), in accordance with applicable law.

      3.6.  **Attorneys' Fees and Costs; Service Awards.**

        3.6.1.  No later than ~~two~~ one hundred (~~200~~and twenty five (125) days after the date of entry of the Preliminary Approval Order, Settlement Class Counsel may file a motion with the Court requesting an award of attorneys' fees (in an amount not to exceed $25,000,000.00) and reimbursement of litigation expenses (in an amount not to exceed $1,000,000.00).  Settlement Class Counsel's entitlement to Attorneys' Fees and Expenses will be determined by the Court. The Settlement is not and shall not be conditioned upon Court approval of Attorneys' Fees and Expenses.  In the event the Court declines the request for Attorneys' Fees and Expenses or awards less than the amount sought, but otherwise approves the Settlement contemplated by this Agreement, the remaining provisions of this Agreement will continue to be effective and enforceable by the Parties.

        3.6.2.  Settlement Class Counsel shall have the sole and absolute discretion to allocate any Attorneys' Fees and Expenses award among Plaintiffs' counsel.  Discover shall have no liability or other responsibility for allocation of any Attorneys' Fees and Expenses awarded, and, in the event that any dispute arises relating to the allocation of Attorneys' Fees and Expenses, Settlement Class Counsel and Plaintiffs' counsel agree to hold Discover harmless from any and all such liabilities, costs, and expenses of such dispute.

3.6.3.   Discover shall pay the Court-awarded Attorneys' Fees and Expenses in addition to (i.e., on top of) the Settlement Payments to Settlement Class Members within ~~14 calendar~~ ten (10) days after the date of Judgment or the order awarding Attorneys' Fees and Expenses (whichever comes last), notwithstanding the existence of any timely filed objections or potential for appeal therefrom, or collateral attack on the Settlement or any part hereof.  Discover shall pay any Court-awarded Attorneys' Fees and Expenses by wire to an account specified by Settlement Class Counsel.  In the event this Agreement is terminated or invalidated for any reason, including if the Effective Date does not occur, or if the order awarding Attorneys' Fees and Expenses is reversed or modified on appeal, Settlement Class Counsel jointly and severally guarantee that any and all fees and expenses paid to Settlement Class Counsel will be returned to Discover within 14 days of such termination or entry of an order on appeal reversing final approval or reversing or modifying the fee and expense award.

3.6.4.   Settlement Class Representatives and Settlement Class Counsel may ask the Court, as part of and at the same time as the application for Attorneys' Fee and Expenses, to award Plaintiffs Service Awards in an amount not to exceed $7,500.00 per Settlement Class Representative. Any request for Service Awards will be based on Settlement Class Representatives' time, effort, and commitment in the Lawsuits, and will not be based or conditioned upon Settlement Class Representatives' support for the Settlement. Any Service Awards awarded by the Court shall be paid by Discover, in addition to (i.e., on top of) the Settlement Payments to Settlement Class Members, within fourteen (14) calendar days of the later of the Effective Date or the date that Discover receives all information necessary to process these payments.  The Settlement is not and shall not be conditioned upon Court approval of Service Awards.  In the event the Court declines the request for Service Awards or awards less than the amount sought, but otherwise approves the Settlement contemplated by this Agreement, the remaining provisions of this Agreement will continue to be effective and enforceable by the Parties.

3.6.5. Settlement Class Representatives' and Settlement Class Counsel's application for Attorneys' Fees and Expenses and Service Awards shall be promptly posted on the Settlement Website after it is filed.

3.7. **Releases and Waivers of Rights.**

3.7.1. **Release by Releasing Parties.** Upon the occurrence of the Effective Date, and in addition to and not in lieu of the preclusive effect of the dismissal of the Lawsuits with prejudice, the Releasing Parties release, relinquish, and forever discharge each of the Released Parties from any and all Released Claims. The Releasing Parties covenant and agree that they will not take any step whatsoever to assert, sue on, continue, pursue, maintain, prosecute, or enforce any Released Claim, directly or indirectly, against any of the Released Parties.

3.7.2. **Additional General Release by Plaintiffs.** Upon the Effective Date, Plaintiffs also agree to generally release, relinquish, and forever discharge Released Parties from any and all Claims that Plaintiffs could have asserted against Discover as of the date of the Execution Date, regardless of whether Plaintiffs know of any such Claim(s).

3.7.3. **Release by Discover Releasing Parties.** Upon the occurrence of the Effective Date, the Discover Releasing Parties release, relinquish, and forever discharge each of the Discover Released Parties from any and all Discover Released Claims. The Discover Releasing Parties covenant and agree that, upon the occurrence of the Effective Date, they will not take any step whatsoever to assert, sue on, continue, pursue, maintain, prosecute, or enforce any Discover Released Claim, directly or indirectly, against any of the Discover Released Parties.

3.7.4. **Releases Related to Litigation Conduct.** The Settlement Class Representatives, Settlement Class Counsel, Discover, and Discover Counsel agree to release each other from any and all Claims relating in any way to any Party or counsel's conduct in the Lawsuits, including but not limited to any Claims arising out of the institution, prosecution, assertion, or resolution of the Lawsuits. The list of Claims released by this Section 3.7.4 includes, but is not limited to, Claims for attorneys' fees, costs of suit, or sanctions of any kind except as otherwise expressly set forth in Section 3.6 of this Agreement.

3.7.5.   **Possible Future Claims.**   For the avoidance of doubt, the Settlement Class Representatives, Settlement Class Members, and the Releasing Parties expressly understand and acknowledge that they may hereafter discover claims presently unknown or unsuspected, or facts in addition to or different from those that they now know or believe to be true, related to the Lawsuits and/or the Release herein.  Nevertheless, it is the intention of the Settlement Class Representatives in executing this Agreement to fully, finally, irrevocably, and forever release, waive, discharge, relinquish, settle, and acquit all such matters, and all Released Claims which exist, hereafter may exist, or might have existed (whether or not previously or currently asserted in any action or proceeding), on behalf of the Settlement Class Members and the Releasing Parties.

3.7.6.   **Waiver of Rights.**   Settlement Class Representatives, on behalf of themselves and Settlement Class Members and the Releasing Parties, understand and expressly acknowledge certain principles of law applicable in some states, including but not limited to Section 1542 of the Civil Code of the State of California, which provides: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."  Settlement Class Representatives, on behalf of themselves and Settlement Class Members and the Releasing Parties, hereby knowingly and voluntarily waive and relinquish the provisions of Section 1542 and all similar federal and state laws, rights, rules, and legal principles as to the Released Claims.  Notwithstanding the provisions of Section 1542 and all similar laws, and for the purpose of implementing a full and complete release and discharge of each and all the Released Parties from the Released Claims, Settlement Class Representatives, on behalf of themselves and Settlement Class Members and the Releasing Parties, expressly acknowledge that this Settlement is intended to include in its effect, without limitation, all Released Claims that any Settlement Class Representative or any Settlement Class Member or Releasing Party knows or suspects to exist in their favor, and all Released Claims that any

33

Settlement Class Representative or any Settlement Class Member or Releasing Party does not know or suspect to exist in their favor at the time this Agreement is executed, whether or not concealed or hidden, as this Agreement contemplates the extinguishment of any such Released Claims.

3.7.7.  **Total Satisfaction of Released Claims.**  Any benefits pursuant to this Settlement are in full, complete, and total satisfaction of all of the Released Claims against the Released Parties.  Such benefits are sufficient and adequate consideration for each and every term of this Release, and this Release shall be irrevocably binding upon Settlement Class Representatives and Settlement Class Members who do not submit a timely and valid Request for Exclusion from the Settlement.

3.7.8.  **Release Not Conditioned on Claim or Payment.**  The Release is and shall be effective with respect to all Releasing Parties, including all Settlement Class Members who do not submit a timely and valid Request for Exclusion, regardless of whether those Settlement Class Members ultimately submit a Settlement Claim, whether any such Settlement Claim is deemed timely and valid, and whether any payment to the Settlement Class Member that the Settlement Administrator issues or attempts to issue is in fact received or cashed by the Settlement Class Member.

3.7.9.  **Material Term.**  Settlement Class Representatives and Settlement Class Counsel agree and acknowledge that this Section 3.7 in its entirety, including its subsections, was separately bargained for and constitutes a key, material term of the Agreement that shall be reflected in the Final Approval Order.

3.7.10.  **Additional Representations by Settlement Class Counsel.**  Settlement Class Counsel represent that they intend to work towards approval of the Settlement and that, as of the date of the execution of this Agreement, they do not represent any client besides Plaintiffs who intends to assert any Claims against Discover or any of the Released Parties relating to the Lawsuits or any of the Released Claims.  Settlement Class Counsel further represent that they (i) have not encouraged and will not encourage any Settlement Class Member to file a Request for

Exclusion from this Settlement, provided that they may present Settlement Class Members with the fact that they have the option to seek to exclude themselves from the Settlement Class consistent with the provisions of this Agreement; (ii) have not encouraged and will not encourage any Settlement Class Member to object to this Settlement, provided that they may present Settlement Class Members with the fact that they have the option to object to the Settlement; and (iii) shall not offer to represent any person or entity that submits a Request for Exclusion in connection with any Released Claim.

3.7.11. **Additional Representations by Discover and Discover Counsel.** Discover and Discover Counsel represent that they intend to work towards approval of the Settlement. Discover further represents that Discover (i) will not encourage any Settlement Class Member to file a Request for Exclusion from this Settlement; and (ii) will not encourage any Settlement Class Member to object to this Settlement.

## 4. SETTLEMENT ADMINISTRATION

4.1. **Settlement Administrator.** The Settlement Administrator shall be responsible for overseeing the implementation and administration of the Settlement, including but not limited to provision of Notice to the Settlement Class, administration of any Requests for Exclusion, and validation of eligibility and approval of payments to Settlement Class Members. The Parties, Discover Counsel, and Settlement Class Counsel are entitled to observe and monitor the performance of the Settlement Administrator to assure compliance with this Settlement Agreement.

4.2. **Duties of Settlement Administrator.** In addition to the responsibilities assigned to the Settlement Administrator elsewhere in this Agreement, the duties of the Settlement Administrator include:

4.2.1. Making all reasonable efforts to administer the Settlement efficiently and to avoid unnecessary administration expenses. As soon as work commences, the Settlement Administrator shall on a regular basis provide Settlement Class Counsel and Discover Counsel with a detailed written accounting of all administration expenses, and shall

respond promptly to any inquiries by Settlement Class Counsel and Discover Counsel concerning the Notice, administration of the Settlement, and all related costs and fees;

4.2.2.   Providing all information to Discover and Settlement Class Counsel that Discover or Settlement Class Counsel deems necessary (including as directed by the Court in the Preliminary Approval Order or in another order information that Discover provides to the Settlement Administrator about Non-Claimant Payments) before Settlement Class Counsel or Discover can perform any of its obligations under this Agreement, including any obligations by Discover to transfer funds to the Settlement Administrator;

4.2.3.   Cooperating with Discover and Settlement Class Counsel to determine the validity of all Settlement Claims, the proper allocation of all MID Amounts, and the amount of all Settlement Payments payable to Settlement Class Members under this Settlement;

4.2.4.   Promptly responding to any inquiries from Settlement Class Counsel and Settlement Class Members;

4.2.5.   Keeping a clear and careful record of all communications with Settlement Class Members;

4.2.6.   Providing to Settlement Class Counsel and Discover Counsel interim reports upon request and, within three two hundred seventy (300270) days of entry of the Preliminary Approval Order, which is thirty (30) days after the Opt-Out Deadline and Objection Deadline, a final report summarizing the number of timely Requests for Exclusion received, the names and addresses of persons or entities in the Settlement Class who submitted a Request for Exclusion, and any other pertinent information requested by Settlement Class Counsel or Discover Counsel;

4.2.7.   Subject to reimbursement by Discover, paying any invoices, expenses, taxes, fees, and other costs associated with the administration of the Settlement as contemplated in this Agreement or required by law;

4.2.8.  Filing tax returns for the Settlement Escrow Account and paying from the Settlement Escrow Account any Taxes owed with respect to the Settlement Escrow Account; and

4.2.9.  Performing any other administrative functions reasonably necessary to effectuate this Settlement, with the consent of both Settlement Class Counsel and Discover Counsel or as approved by the Court.

4.3.  **Confidentiality.**  The Settlement Administrator shall administer the Settlement in accordance with the terms of this Agreement and, without limiting the foregoing, shall treat any and all documents, communications, and other information and materials received in connection with administration of the Settlement as confidential and shall not disclose any such documents, communications, or other information to any person or entity except as provided for in this Settlement Agreement, as agreed to by Settlement Class Counsel and Discover Counsel, or by order of the Court.  The Settlement Administrator may communicate and share documents and information with Discover, Discover Counsel, and Settlement Class Counsel as is reasonably necessary to carry out the Settlement Administrator's duties under the Settlement.

4.4.  **Payment of Notice and Settlement Administration Costs.**  Notice and Settlement Administration Costs shall be paid by Discover as they are accrued and invoiced.  The Settlement Administrator shall provide updated estimate(s) to the extent its estimate of the total Notice and Settlement Administration Costs materially changes.

4.5.  **Effect of Failure of Settlement on Notice and Administration Costs.**  In the event this Settlement is not approved or is terminated, or the Effective Date otherwise fails to occur for any reason, including without limitation if the Final Approval Order or Judgment is reversed, vacated, or materially modified following any appeal, Discover shall have no obligation to pay any further Notice and Settlement Administration Costs, other than notice and settlement administration costs actually incurred.

**5.    SETTLEMENT PROCEDURES**

5.1.    **Preliminary Approval.**  Plaintiffs shall use best reasonable efforts to file a Motion for Preliminary Approval of the Settlement set forth in this Agreement pursuant to Federal Rule of Civil Procedure 23(e)(1)(b) ~~within sixty (60) days of the execution of this Agreement~~no later than January 21, 2025.   The Motion for Preliminary Approval shall seek entry of the Preliminary Approval Order substantially in the form that will be agreed to by Settlement Class Counsel and Discover Counsel and attached to the Motion for Preliminary Approval, and shall, among other things, ask the Court to (a) vacate its October 22, 2024 order granting preliminary approval of the proposed settlement dated June 28, 2024; and, (b) as set forth in this Agreement, (i) provisionally certify the Settlement Class for Settlement purposes only; (~~b~~ii) direct the provision of Notice to the Settlement Class through the Notice Program; (~~c~~iii) appoint the Settlement Class Representatives as representatives of the provisionally-certified Settlement Class; (~~d~~iv) appoint Settlement Class Counsel as counsel for the provisionally-certified Settlement Class; (~~e~~v) appoint the Settlement Administrator; (~~f~~vi) approve the Parties' selection of Escrow Agent; (~~g~~vii) direct Discover to share information regarding Non-Claimant Payments with Settlement Class Counsel as necessary to effectuate the terms of this Settlement; and (~~h~~viii) set a date for the Final Approval Hearing.  Discover has no obligation to prepare the Motion for Preliminary Approval or any papers filed in support, but may, at Discover's sole discretion, submit a memorandum in support of the Motion for Preliminary Approval.  The Parties agree to take all actions and steps reasonably necessary to obtain a Preliminary Approval Order from the Court in substantially the form that will be agreed to by Settlement Class Counsel and Discover Counsel and attached to the Motion for Preliminary Approval and to fully implement and effectuate the terms of this Agreement.

5.2.    **CAFA Notice.**  Discover, or the Settlement Administrator on Discover's behalf, shall serve the CAFA notice required under 28 U.S.C. § 1715 within ten (10) days of Plaintiffs' filing of the Motion for Preliminary Approval.

5.3.    **Compilation of Settlement Class Member Information.**

5.3.1.   The Settlement Administrator—using information provided by Discover, information provided by Settlement Class Members, and industry-standard methodologies for updating contact information—including proprietary databases beyond the National Change of Address database that are reasonably available to the Settlement Administrator—shall use its best efforts to determine for each MID the identities and contact information (including the most current mailing address and, if available, email addresses) for the corresponding End Merchant(s), Merchant Acquirer(s) (if applicable), and Payment Intermediary(ies) (if applicable).

5.3.2.   The Settlement Administrator, in consultation with Discover and Settlement Class Counsel, shall be responsible for determining which Direct End Merchants are still in operation as of the date of entry of the Preliminary Approval Order (so as to qualify as Active Direct End Merchants, under subsection (b) of Section 2.1 of this Agreement) and will use its best efforts to determine for each Direct End Merchant and Indirect End Merchant current contact information as of that time.

5.3.3.   Within ~~fifteen(15~~seven (7) days after entry of the Preliminary Approval Order, Discover will provide to the Settlement Administrator (a) a list of the MIDs from Discover's records associated with each Merchant Acquirer, Payment Intermediary, and Direct End Merchant known to Discover, (b) for each MID, any related legal entity name, DBA name(s), TIN, and contact information that can reasonably be retrieved from Discover's records (including regarding Indirect End Merchants), and (c) an accounting of the aggregate of the MID Amounts applicable to each such MID.  Such accounting shall provide (a) for each MID ~~and for each of the years 2016-2023 (inclusive),~~ (i) the net charge volume of Discover Credit Card Transactions, and (ii) the MID Amount for that year~~; and (b) for each MID and for each of the years 2007-2015 (inclusive), (i) estimated net charge volume of Discover Credit Card Transactions, and (ii) the MID Amount for that year~~.

5.3.4.   On the Notice Date, which shall be no later than ~~ninety (90~~forty five (45) days after entry of the Preliminary Approval Order and ~~seventy five (75~~thirty eight (38) days after

Discover must provide information to the Settlement Administrator under Section 5.3.3, the Settlement Administrator shall provide to each Merchant Acquirer the information provided by Discover in Section 5.3.3(a)–(b) relating to such Merchant Acquirer for the purpose of enabling the Merchant Acquirer to provide the Merchant Acquirer Information. Discover and the Settlement Administrator shall use commercially reasonable efforts to obtain the Merchant Acquirer Information from each Merchant Acquirer no later than one hundred ~~fifty (150~~ five (105) days after entry of the Preliminary Approval Order, which is sixty (60) days after the Settlement Administrator provides the information to each Merchant Acquirer.

      5.3.5.  No later than ~~two~~ one hundred ~~ten~~ fifty (~~210~~150) days after entry of the Preliminary Approval if the information provided by Discover under Section 5.3.3 does not include information sufficient to identify a Payment Intermediary, or on a rolling basis within forty five (45) days of processing data indicating that an entity is a Payment Intermediary, the Settlement Administrator shall provide information to each identified Payment Intermediary for the purpose of enabling the Payment Intermediary to provide the Payment Intermediary Information. Discover and the Settlement Administrator shall use commercially reasonable efforts to obtain the Payment Intermediary Information from each Payment Intermediary no later than two hundred ~~seventy~~ ten (~~270~~210) days after entry of the Preliminary Approval Order, which is sixty (60) days after last date by which the Settlement Administrator may provide the information to each Payment Intermediary.

      5.4.  **Notice to the Settlement Class.** Subject to Court approval, notice will be provided to Settlement Class Members pursuant to the Notice Program, including the provisions therein regarding efforts to locate updated contact information and to re-send notices. The Settlement Administrator will no later than ~~ninety (90~~forty five (45) days after entry of the Preliminary Approval Order ~~attempt~~ commence to provide direct notice to all Settlement Class Members whose identities and contact information are known to Discover as of the date of the Preliminary Approval Order, and the Settlement Administrator will further attempt to provide direct notice to all other Settlement Class Members on the timeline set forth in the Notice Program as the Settlement

Administrator obtains any additional sufficient information by Settlement Class Members. Direct notices of the Settlement shall include unique IDs and PIN numbers to facilitate pre-population of information and claim submission and, unless not feasible for a particular direct notice at the time that direct notice is sent (e.g., for notices where there is insufficient time or information to practically include such information), shall prominently identify the MID(s) associated with the direct notice recipient. The Settlement Administrator shall have no obligation to attempt to provide direct notice to Settlement Class Members whose identities and contact information are obtained by the Settlement Administrator ~~more than three~~ on or after two hundred ~~forty~~ seventy four (~~344~~274) days after entry of the Preliminary Approval Order.

5.5. **Non-Substantive Modification of Notice Documents.** Subject to Court approval, the Parties may by mutual consent make non-substantive revisions to the Notice Program and associated documents without further individual approval by the Court.

5.6. **Contact Between Discover and Settlement Class Members.** The Settlement Class Representatives and Settlement Class Counsel specifically acknowledge that Discover has ongoing business relationships with some Settlement Class Members, including but not limited to Direct End Merchants, Indirect End Merchants, Payment Intermediaries, and Merchant Acquirers. The Settlement Class Representatives and Settlement Class Counsel do not object to Discover's communications not about this Settlement or the Lawsuits with any business, person, or entity. The Settlement Class Representatives and Settlement Class Counsel further do not object to communications about this Settlement or the Lawsuits between Managed Active Direct End Merchants, Managed Indirect End Merchants, Managed Payment Intermediaries, and Merchant Acquirers or those Settlement Class Members' counsel and Discover ~~before entry of the Preliminary Approval Order or, after entry of the Preliminary Approval Order,~~ only in the event such entities or their counsel contacts Discover regarding such topic(s). To the extent that any other Settlement Class Members that have not submitted timely and valid Requests for Exclusion contact Discover about this Settlement or the Lawsuits, Discover shall inform such Settlement

Class Member only about the existence of the Settlement and direct the Settlement Class Member to the Settlement Website, the Settlement Administrator, and/or Settlement Class Counsel.

    5.7.    **Requests for Exclusion.** Settlement Class Members may exclude themselves from the Settlement Class by mailing to the Settlement Administrator a written request for exclusion that is postmarked no later than the Opt-Out Deadline. To be effective, the Request for Exclusion must include (a) the Settlement Class Member's (i) full legal name, (ii) any aliases, (iii) telephone number, (iv) mailing address, (v) email address, (vi) TIN, and, (vii) if known to the Settlement Class Member, its MID(s); (b) a clear and unequivocal statement that the Settlement Class Member wishes to be excluded from the Settlement Class; (c) a clear and unequivocal reference to the name and the case number of the lead case in the Lawsuits, e.g. "*CAPP, Inc. et al. v. Discover Bank, et al.*, Case No. 23-cv-4676"; and (d) the signature of the individual(s) authorized to act on behalf of the Settlement Class Member. Requests for Exclusion must be specific to an individual Settlement Class Member, and Settlement Class Members cannot request exclusion on behalf of any other Settlement Class Member or as a class or group. Upon the Settlement Administrator's receipt of a timely and valid Request for Exclusion, the Settlement Class Member shall be deemed excluded from the Settlement Class, shall not be considered a Settlement Class Member, and shall not be entitled to any benefits from this Settlement. Any person in the Settlement Class who submits a timely and valid Request for Exclusion is foreclosed from objecting to the Settlement or to any motions for the award of Attorneys' Fees and Expenses or Service Awards. If a Settlement Class Member has submitted a Request for Exclusion from the Class Action Settlement Agreement and Release dated June 28, 2024, that Request for Exclusion shall be deemed a Request for Exclusion from this Settlement unless the Settlement Class Member submits a written rescission of that Request for Exclusion by the Opt-Out Deadline. If a Settlement Class Member submits both a timely and valid Request for Exclusion and an Objection, the Settlement Class Member shall be treated as if they had only submitted a Request for Exclusion and not an Objection. If a Settlement Class Member submits both a timely and valid Request for Exclusion and attempts to submit a Settlement Claim, the Settlement Class Member shall be treated as if they had only submitted a

Settlement Claim and not a Request for Exclusion. The Settlement Administrator shall promptly provide copies of all timely and valid Requests for Exclusion to Settlement Class Counsel and Discover Counsel. A list of the persons in the Settlement Class who have submitted timely and valid Requests for Exclusion pursuant to this section shall be submitted in connection with the Final Approval Motion and shall be attached to the Final Approval Order or otherwise recorded by the Court.

5.8. **Challenging Requests for Exclusion.** Discover or Settlement Class Counsel may dispute the validity of any Request for Exclusion, including any attempt to request exclusion for a group or class, no later than the date of the Final Approval Hearing. Unless and until the dispute is overruled by the Court or withdrawn, disputed Requests for Exclusion shall not be considered validly executed.

5.9. **Objections.** Any Settlement Class Member who does not submit a timely and valid Request for Exclusion shall have the right to object to the Settlement or any term of the Settlement, including to any motion for Attorneys' Fees and Expenses or Service Awards, by complying with the provisions of this Section. Settlement Class Members who submit a timely and valid Objection shall remain Settlement Class Members, shall be eligible to receive Settlement Payments consistent with the terms of this Agreement, and shall be subject to the Releases in this Settlement if the Settlement is approved by the Court and becomes effective. To be considered valid, an Objection must: (a) be in writing; (b) be filed with or mailed to the Court; (c) be mailed in duplicate to the Settlement Administrator at the addresses listed in the Notice; (d) be postmarked and/or filed no later than the Objection Deadline; and (d) include: (1) the name and case number of the lead case in the Lawsuits, e.g. "*CAPP, Inc. et al. v. Discover Bank, et al.*, Case No. 23-cv-4676"; (2) the Settlement Class Member's full legal name and any aliases; telephone number; mailing address; email address; TIN; and if known to the Settlement Class Member, its MID(s); (3) the signature of the individual(s) authorized to act on behalf of the objector; (4) a description of the specific reasons for the Objection; (5) if the objector is represented by an attorney, the name, address, bar number and telephone number of counsel for the objector; and (6)

a statement of whether the objector intends to appear at the Final Approval Hearing, either in person or through counsel. Any Settlement Class Member who does not timely submit an Objection in accordance with this Section shall waive the right to object or be heard at the Final Approval Hearing and shall be forever barred from making any objection to the proposed Settlement or to any motion for Attorneys' Fees and Expenses or Service Awards.

5.10. **Motion for Final Approval Order.** By no later than ~~two~~ one hundred ~~(200~~and twenty five (125) days after entry of the Preliminary Approval Order, Settlement Class Representatives and Settlement Class Counsel shall file a motion seeking entry of the Final Approval Order and Judgment substantially in the form that will be agreed to by Settlement Class Counsel and Discover Counsel and attached to the Motion for Preliminary Approval, which shall specifically include provisions: (a) stating that the Court has personal jurisdiction over all Settlement Class Members, has subject matter jurisdiction over the claims asserted in the Lawsuits, and that venue is proper; (b) finally approving the Settlement pursuant to Federal Rule of Civil Procedure 23 and directing the Parties and Settlement Administrator to implement the Settlement pursuant to the terms of this Agreement, including distributing Settlement Payments to Settlement Class Members and making such other disbursements from the Settlement Escrow Account as provided by this Agreement; (c) finding that the Notice Program and Notice as distributed was the best notice practicable and fully satisfied the requirements of due process and Federal Rule of Civil Procedure 23; (d) finding that the CAFA notice provided to government entities complied with 28 U.S.C. § 1715; (e) finally certifying the Settlement Class pursuant to Federal Rule of Civil Procedure 23; (f) confirming that the Settlement Class Representatives and all Settlement Class Members who have not submitted valid Requests for Exclusion have released all Released Claims and are permanently barred and enjoined from asserting, commencing, prosecuting, or continuing any of the Released Claims against the Released Parties; (g) retaining jurisdiction relating to the administration, consummation, validity, enforcement, and interpretation of this Agreement, the Final Approval Order, and any award of Attorneys' Fees and Expenses and Service Awards; and (h) entering a judgment that dismisses the Lawsuits with prejudice, without costs to any Party,

except as provided in this Agreement, and subject to the Court's continuing jurisdiction over the Parties and settlement consideration for the purpose of enforcement of the terms of the Settlement. Discover has no obligation to prepare the Motion for Final Approval or any papers filed in support, but may, at Discover's sole discretion, submit a memorandum in support of the Motion for Final Approval. Entry by the Court of the material terms of the proposed Final Approval Order and Judgment set forth in that will be agreed to by Settlement Class Counsel and Discover Counsel and attached to the Motion for Preliminary Approval is a material term of this Settlement Agreement.

5.11. **Establishment of the Settlement Escrow Account.** The Settlement Administrator shall establish a Qualified Settlement Fund ("QSF"), to be held by the Escrow Agent, which shall be called the Settlement Escrow Account. Unless directed otherwise by Settlement Class Counsel and Discover Counsel, the Escrow Agent shall invest any funds in the Settlement Escrow Account in money market funds that invest solely in instruments issued by the US Government, for the benefit of the Settlement Class. No later than ~~thirty (30~~twenty three (23) days after entry of the Final Approval order, Discover shall pay the sum of One Hundred Million Dollars ($100,000,000.00) (the "First Funding Amount") into the Settlement Escrow Account. No later than ten (10) days after the Effective Date, Discover shall pay into the Settlement Escrow Account the difference between the First Funding Amount and a reasonable estimate of the aggregate total of all of Settlement Payments for all Payment Eligible Settlement Class Members, as calculated pursuant to Section 3.5 of this Agreement, as determined by the Settlement Administrator with input from the Parties (the "Second Funding Amount"). If: (a) the aggregate total of all of Settlement Payments for all Payment Eligible Settlement Class Members, as calculated pursuant to Section 3.5 of this Agreement, exceeds (b) the sum of the First Funding Amount plus the Second Funding Amount, Discover shall pay the difference into the Settlement Escrow Account no later than ~~one~~ two hundred ~~ninety~~ thirty five (~~190~~235) days after the Effective Date (the "Escrow Final Funding Date"). If: (a) the aggregate total of all of Settlement Payments for all Payment Eligible Settlement Class Members, as calculated pursuant to Section 3.5 of this Agreement, is less than

45

(b) the sum of the First Funding Amount plus the Second Funding Amount, no later than ~~one~~ two hundred ~~ninety (190~~thirty five (235) days after the Effective Date, the Settlement Administrator shall cause to be refunded to Discover, from the Settlement Escrow Account, the difference together with any interest that has accrued in the Settlement Escrow Account as of that time on such refunded portion only. The Settlement Escrow Account shall collect and reinvest any and all interest accrued thereon, if applicable. The Settlement Administrator, with the assistance of the Escrow Agent, shall (a) timely file tax returns for the Settlement Escrow Account; and (b) timely pay (i) all taxes on the income of the Settlement Escrow Account and (ii) expenses and costs incurred with taxes paid (including, without limitation, expenses of tax attorneys and accountants), subject to reimbursement by Discover. The Parties agree that the Settlement Escrow Account shall be treated as a QSF from the earliest date possible and agree to any relation-back election required to treat the Account as a QSF from the earliest date possible.

5.12.  **Notice Regarding MID Allocations.**  Before distributing Settlement Payments calculated pursuant to this Agreement, no later than one hundred ~~thirty five (135~~eighty (180) days after the Effective Date, the Settlement Administrator shall provide notice to the corresponding Payment Eligible Settlement Class Members of their Total Allocated MID Amount, and, if the provisions of Section 3.5.4 apply, the estimated Base Payment Amount. The Settlement Class Member shall be provided thirty five (35) days to provide additional information for the Settlement Administrator's further consideration regarding allocations. The notice provided under this Section shall also include (a) the then-current address on file with Discover where the Settlement Payment will be sent or the Settlement Class Member's payment preference as indicated on the Settlement Class Member's Settlement Claim, Managed Active Direct End Merchant Payment Details, or updated payment instructions, as applicable, (b) the associated mailing address or Payment Account Information, as applicable, and (c) instructions for and a deadline by which the Settlement Class Member may update its payment preference, mailing address, or Payment Account Information.

5.13.   **Distribution of Settlement Payments.**  Within ~~one~~ two hundred ~~ninety five (195~~forty (240) days after the Effective Date the (the "Payment Date"), unless the Parties mutually agree to another date when this payment may be made for a particular Payment Eligible Settlement Class Member, the Settlement Administrator shall issue the Settlement Payment due to Payment Eligible Settlement Class Members, as calculated pursuant to Section 3.5 of this Agreement (as may be updated through the process described in Section 5.12 of this Agreement) and including each Payment Eligible Settlement Class Member's pro rata share of any interest accruing on the Settlement Escrow Account funds pursuant to Section 5.11.  The Settlement Administrator shall make all reasonable efforts to make Settlement Payments by the payment method elected by the Settlement Class Member or, if no alternative payment preference has been requested or if insufficient Payment Account Information has been provided, then by mailed check, sent via first class U.S. Mail (postage pre-paid).  Settlement Payment checks (other than re-issued or re-mailed checks) shall be valid for 120 days.  If a Settlement Payment check sent to a Payment Eligible Settlement Class Member is returned as undeliverable, the Settlement Administrator shall attempt to obtain a new mailing address and effect a second mailing.  If, after a second mailing, the check is again returned as undeliverable, or if the Settlement Administrator, after reasonable efforts, is unable to determine a new mailing address, there is no obligation to take further efforts to distribute the check to that Settlement Class Member.

5.14.   **Residual Settlement Payment Funds**.  If there are any Settlement Payment amounts that remain in the Escrow Account 210 days after the Payment Date—consisting of Settlement Payment checks that were successfully delivered but not timely negotiated and Settlement Payments that the Settlement Administrator determines are undeliverable or that otherwise cannot be effectuated following reasonable efforts by the Settlement Administrator to contact and obtain from the Payment Eligible Settlement Class Member alternative payment information (collectively, "Residual Funds")—such Residual Funds shall be distributed to a *cy pres* recipient to be proposed by Settlement Class Counsel with input from Discover, subject to Court approval.

6.    **ADDITIONAL PROVISIONS AND RESERVATIONS**

6.1.    **No Admission of Liability or Wrongdoing.**    Discover expressly disclaims and denies any wrongdoing or liability whatsoever in connection with the Lawsuits or this Agreement. This Agreement, the Settlement contemplated herein, and all statements made, acts performed, and documents executed pursuant to or in furtherance of this Agreement are not, and shall not be deemed to be, and shall not be used or construed as an admission, concession, or evidence by Discover or the Released Parties (i) of the validity of any of the Released Claims; (ii) that any person suffered compensable harm or is entitled to relief with respect to Discover's classification of credit cards or the fees Discover charged on Discover Credit Card Transactions; (iii) of any fault or omission in any civil, criminal, regulatory, or administrative proceeding in any court, administrative agency, or other tribunal; or (iv) that the case was properly brought as a class action.

6.2.    **Basis for Entering Agreement and Release.**    Settlement Class Counsel acknowledge that they have conducted sufficient independent investigation, discovery, and research to enter into this Agreement, including informal discovery in connection with the Parties' mediation efforts and the negotiation of this Agreement, and confirmatory discovery~~, and will be conducting further confirmatory discovery as set forth herein~~.

6.3.    **Filing in Support of Claim or Issue Preclusion.**    Any of the Released Parties may file this Agreement, the Final Approval Order, or the Judgment in any action or proceeding that may be brought in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

6.4.    **Fair, Adequate, and Reasonable Settlement.**    The Parties believe this Settlement is a fair, adequate, and reasonable settlement of the Lawsuits and have arrived at this Settlement through arm's-length negotiations, taking into account all relevant factors, present and potential. This Settlement was reached after hard-fought, arm's-length negotiations that included three mediation sessions conducted by Hon. Jay C. Gandhi (Ret.).

6.5.    **Cooperation.**    Settlement Class Representatives, Settlement Class Counsel, Discover, and Discover Counsel agree to use their reasonable best efforts to obtain approval of the Settlement and entry of the orders contemplated herein, and shall do nothing inconsistent therewith.  The Parties and their respective counsel agree to cooperate with each other, act in good faith, and use their best efforts to effectuate the implementation of the Settlement on the terms set forth in this Agreement.  In the event the Parties are not able to reach agreement on the procedure or the form or content of any document necessary to effectuate the terms of this Agreement, the Parties will attempt to resolve such dispute first through mediation, and then if mediation is unsuccessful through the Court.  The Parties further agree to make all reasonable efforts to ensure the timely and expeditious administration and implementation of the Settlement and to minimize the costs and expenses occurred therein.

6.6.    **Extensions of Time.**    The Parties and their respective counsel reserve the right, subject to approval by the Court, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

6.7.    **Modification.**    The terms and provisions of this Agreement may not be amended, modified, or expanded except by written agreement of the Parties and, if preliminary approval of the Settlement has been entered by the Court, approval by the Court; provided, however, that after entry of the Final Approval Order, the Parties may by written agreement effect such amendments, modifications, or expansions of the Agreement and its implementing documents (including all exhibits hereto) without further notice to the Settlement Class or approval by the Court, if such changes are consistent with the Court's Final Approval Order and do not limit the rights of Settlement Class Members under the Settlement.

6.8.    **Termination.**    This Settlement may be terminated by Discover by serving on Settlement Class Counsel and filing with the Court a written notice of termination within ten (10) days (or such longer time as may be agreed between Settlement Class Counsel and Discover Counsel) after any of the following occurrences: (a) the Court rejects, materially modifies, or materially amends or changes the Settlement (with the exception of any provision of the Settlement

49

relating to Settlement Class Counsel Attorneys' Fees and Expenses award or any Service Award); (b) the Court declines to enter without material change the material terms in the proposed Preliminary Approval Order or the Final Approval Order and Judgment; (c) an appellate court reverses the Final Approval Order or Judgment, and the Settlement is not reinstated and finally approved without material change by the Court on remand; (d) the Effective Date does not occur; or (e) Discover does not receive the appropriate approvals authorizing Discover to perform its obligations under this Agreement by ~~August 14~~the earlier of February 28, ~~2024~~ 2025, or the date of entry of the Preliminary Approval Order.  Discover is not required for any reason or under any circumstance to exercise its option to terminate the Settlement.

6.9.   **Effect of Agreement if Settlement is Not Approved or Terminated.**   This Agreement is entered into only for the purpose of the Settlement.  If the Settlement is terminated under any of the provisions of Section 6.8, including if appropriate approvals are not obtained or if the Effective Date does not occur, then the Settlement shall be void *ab initio*, shall have no force or effect, and shall impose no obligations on the Parties except as stated herein regarding Discover's obligations under this Agreement with respect to Notice and Settlement Administration Costs.  The intent of the previous sentence is that, in the event that a necessary approval is denied or the Settlement otherwise does not before effective, the Parties will revert to their *status quo ante* rights, positions, and privileges immediately prior to the date the Lawsuits were stayed on February 5, 2024, and (a) the Lawsuits will resume without prejudice to any party, (b) the Parties will bear their own costs and fees with regard to their efforts to implement the Settlement except as may be agreed to by the Parties in any subsequent agreement; (c) the proposed or actual certification of the Settlement Class will be deemed void will not be urged or considered as a factor in any further proceeding; (d) the Parties will be prohibited from using this Agreement and any settlement or mediation communications as evidence in the Lawsuits; and (e) any funds in the Settlement Escrow Account, including all interest accrued, shall be returned to Discover within seven (7) days of the termination.  The Parties further agree to cooperate in asking the Court to set a reasonable schedule for the resumption of the Lawsuits.

6.10.   **Finality.**  The Settlement shall become final and effective on the Effective Date.

6.11.   **Dismissal.**  On the Effective Date, all Claims in the operative complaints in each of the Lawsuits shall be dismissed with prejudice.  Dismissal of the Lawsuits with prejudice is a material term of this Agreement.

6.12.   **Waiver.**  There shall be no waiver of any term or condition in this Agreement absent an express writing to that effect by the Party charged with the waiver.  No waiver of any term or condition in this Agreement by any Party shall be construed as a waiver of a subsequent breach or failure of the same term or condition, or as a waiver of any other term or condition of the Agreement.

6.13.   **Breach and Opportunity to Cure.**  If one Party considers another Party to be in breach of its obligations under this Agreement, the Party who considers the other Party to be in breach must provide that Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking action to enforce any rights under this Agreement.

6.14.   **Non-Disparagement.**  No press release or press communication concerning the Settlement shall be initiated by Discover, Discover Counsel, Settlement Class Representatives, or Settlement Class Counsel.  The Parties and their counsel may respond as appropriate to any Settlement Class Member inquiries that they receive regarding the Settlement.  Neither Party nor its counsel shall disparage the other Party or their counsel, or their business or reputation, based on the subject matter or conduct of the Lawsuits in any published communications or public statements.  For the avoidance of doubt, nothing in this provision or Settlement prohibits Discover from making public statements necessary to comply with legal or regulatory obligations (including without limitation disclosures that may be required under applicable stock exchange rules and securities laws), and nothing in this provision or Settlement prohibits Settlement Class Counsel from discharging their duties to Settlement Class Members; discussing this Agreement with Plaintiffs, Settlement Class Members, or the Court; disclosing public information about the Lawsuits on a resume, curriculum vitae, firm website, in other promotional materials, or in future legal filings; or responding to governmental inquiries.

6.15. **Confidentiality.** It is agreed that, until the filing of the Preliminary Approval Motion, this Agreement and its terms shall be confidential and shall not be disclosed to any person unless required by applicable disclosure or securities laws, disclosure to a Party's auditors or attorneys is required, or as agreed to by the Parties. However, this Section shall not prevent Discover, at Discover's sole discretion and without approval from Plaintiffs or Settlement Class Counsel, from disclosing such information prior to the filing of the Preliminary Approval Motion to state and federal agencies, other relevant government authorities, stock exchanges, independent accountants, actuaries, advisors, financial analysts, insurers, lawyers, or business affiliates, or from making a public statement referring to the Settlement in order to comply with legal or regulatory obligations, or to Managed Active Direct End Merchants, Managed Indirect End Merchants, Managed Payment Intermediaries, and Merchant Acquirers or those Settlement Class Members' counsel. The Parties and their counsel may also disclose the contents of this Agreement to persons or entities (such as experts, courts, co-counsel, and/or administrators) to whom the Parties agree disclosure must be made in order to effectuate the terms and conditions of the Settlement.

6.16. **Continued Confidentiality of Settlement Information.** Settlement Class Representatives and Settlement Class Counsel agree that confidential information that was made available to them solely through the settlement process, including information provided in connection with mediation, is protected by Federal Rule of Evidence 408 and any equivalent rule in other states and territories, and was made available on the condition that it not be disclosed to third parties or used for any purpose other than settlement of the Lawsuits. The Parties and their counsel agree that all such confidential information shall not be disclosed without a court order, including but not limited to any third parties (or their counsel) who have filed or are considering filing claims against Discover in other jurisdictions. The Parties and their counsel further agree to destroy all confidential material received in connection with the Lawsuits no later than seven (7) days after the Effective Date.

6.17. **Stay and Bar to Other Proceedings.** Pending determination of whether the Settlement should be granted final approval, the Parties agree not to pursue any claims or defenses

otherwise available to them in any of the Lawsuits, and no Settlement Class Member, either directly, on a representative basis, or in any other capacity, will commence or prosecute any action or proceeding against any of the Released Parties asserting any of the Released Claims, pending final approval of the Settlement.

6.18.  **Voluntary Agreement.**  This Agreement is executed freely, voluntarily, and without duress, pressure, or influence by, or reliance on any statements, representations, promises, or inducements made by or on behalf of the Parties or the Released Parties, or of any other person, firm, or entity, other than as set forth in this Agreement.

6.19.  **Binding on Successors.**  This Agreement shall bind and inure to the benefit of the respective successors, assigns, legatees, heirs, and personal representatives of each of the Parties.

6.20.  **Governmental Entities.**  The Parties agree and acknowledge that (a) no government or governmental entity is a party to the Lawsuits or to this Agreement, but such entities are not excluded from the Settlement Class; (b) each Party is entering into this Agreement of its own volition, and no Party is entering into this Agreement at the direction of a government or governmental entity, or was otherwise compelled by a government or governmental entity to do so; and (c) the payments made to Settlement Class Members under the Settlement are for the purpose of settling claims for restitution, compensation or/and remediation for harm or damage alleged in the Lawsuits.

6.21.  **Parties Represented by Counsel.**  The Parties acknowledge that they have been represented in negotiations for and in the preparation of this Agreement by independent counsel of their own choosing, that they have read this Agreement and have had it fully explained to them by such counsel, and that they are fully aware of the contents of this Agreement and of its legal effect.  Settlement Class Representatives specifically acknowledge, agree, represent, and warrant that they have discussed with Settlement Class Counsel the terms of this Agreement and have received legal advice with respect to the advisability and legal effect of entering into this Agreement and the Release.

6.22.   **Authorization.**   Counsel for each Party warrants and represents that they are expressly authorized by the Parties whom they represent to negotiate this Agreement.  The persons signing this Agreement on behalf of each Party or entity below warrant that he or she is authorized to sign this Agreement on behalf of that Party or entity.  Settlement Class Counsel further represents that they are seeking to protect the interests of the Settlement Class by entering this Agreement.

6.23.   **Governing Law.**  This Agreement is entered into in accordance with the laws of the State of Delaware and shall be governed by and interpreted in accordance with the laws of the State of Delaware without regard to its conflict of law principles.

6.24.   **Construction and Interpretation.**   Neither the Parties nor any of the Parties' respective attorneys shall be deemed the drafter of this Agreement or of any particular provision herein, nor shall they argue that any particular provision should be construed against its drafter. All Parties agree that this Agreement was drafted by counsel for the Parties during extensive, arms-length negotiations.

6.25.   **Severance.**  If any one or more of the provisions of this Agreement shall for any reason be held invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision if Discover's counsel (on behalf of Discover) and Settlement Class Counsel (on behalf of Settlement Class Representatives and the Settlement Class) mutually agree in writing to proceed as if such invalid, illegal, or unenforceable provision had never been included in the Agreement.  Any such agreement shall be reviewed and approved by the Court before it becomes effective.

6.26.   **Headings.**   The various headings used in this Agreement are solely for the convenience of the Parties and shall not be used to interpret this Agreement.

6.27.   **Exhibits.**   The exhibits to this Agreement constitute material parts of this Agreement and are incorporated by reference herein.

6.28.   **Timing of Deadlines and Dates.**  All dates and deadlines in this Agreement shall be computed in calendar days unless otherwise expressly provided, and in computing any period

of time herein, the day of the act or event triggering the time period shall not be included. The last day of the period shall be included, except that, if any date or deadline set by this Agreement or any Court order falls on a Saturday, Sunday, or federal holiday (as designated in Federal Rule of Civil Procedure 6(a) or by the Clerk of the Court), the next business day following the date or deadline shall be the operative date.

6.29. **Merger and Integration.** This Agreement—including the Recitals, which are contractual in nature and form a material part of this Agreement—contains the entire, complete, and integrated statement of each and every term and condition agreed to by and among the Parties, is not subject to any term or condition not provided for herein, and supersedes, extinguishes, and replaces ~~any agreement in principle~~ all agreements previously reached by and among the Parties, including the Class Action Settlement Agreement and Release dated June 28, 2024. In entering into this Agreement, no Party has made or relied on any warranty or representation not specifically set forth herein.

6.30. **Further Assurances.** Each of the Parties shall execute and deliver any and all additional papers, documents, and other assurances and do any and all acts or things reasonably necessary in connection with the performance of that Party's obligations hereunder to carry out the express intent of the Parties.

6.31. **Execution Date.** This Agreement shall be deemed executed on ~~June 28~~January 21, ~~2024~~ 2025 (the "Execution Date").

6.32. **Execution and Counterparts.** This Agreement may be executed physically or electronically, and may be executed in counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same instrument. The several signature pages may be collected and annexed to one or more documents to form a complete counterpart. Photocopies of executed copies of this Agreement may be treated as originals.

6.33. **Notices to the Parties and their Counsel.** Notices to the Parties or their counsel required under this Settlement Agreement shall be sent by email and first-class mail to:

For Plaintiffs and Settlement Class Representatives:

        Roger N. Heller
        Lieff Cabraser Heimann & Bernstein, LLP
        275 Battery Street, 29th Floor
        San Francisco, CA 94111
        Email: rheller@lchb.com

        Taras Kick
        Kick Law Firm, APC
        815 Moraga Drive
        Los Angeles, CA 90049
        Email: taras@kicklawfirm.com

        Catherine Pratsinakis
        Dilworth Paxson LLP
        1500 Market Street, Ste. 3500E
        Philadelphia PA 19102
        Email: cpratsinakis@dilworthlaw.com

For Discover:   Andrew Soukup
        Covington & Burling LLP
        One CityCenter, 850 Tenth Street NW
        Washington DC 20001
        Email: asoukup@cov.com

Agreed to by:

**For Plaintiffs / Settlement Class Representatives:**

_____     _____
Monte Caplan, on behalf of CAPP, Inc.                     Date

_____     _____
Keith Glauber, on behalf of Young Peoples Day Camps, Inc.     Date

_____     _____
Katan Patel, on behalf of Prayus Group LLC               Date

_____     _____
Jake Lemmo, on behalf of Lemmo's Pizzeria, LLC           Date

_____     _____
Lenny Nourafchan, on behalf of Lennys Casita, LLC        Date

**For Settlement Class Counsel and Plaintiffs' counsel:**

_____     _____
Catherine Pratsinakis, on behalf of DILWORTH            Date
PAXSON LLP

_____     _____
Roger N. Heller, on behalf of LIEFF CABRASER            Date
HEIMANN & BERNSTEIN LLP

_____     _____
Taras Kick, on behalf of THE KICK LAW FIRM, APC         Date

**For Discover:**

_____     _____
John Greene, on behalf of Discover Bank          Date


_____     _____
Jason Hanson, on behalf of DFS Services LLC      Date


_____     _____
John Greene, on behalf of Discover Financial Services     Date


**For Discover Counsel:**

_____     _____
Andrew Soukup, on behalf of COVINGTON & BURLING     Date
LLP

# EXHIBIT A

# EXHIBIT A

- AERO OPCO LLC
- ALBERTSONS COMPANIES, INC.
- AT&T SERVICES, INC.
- BEST BUY STORES, LP
- BIG LOTS STORES LLC
- BROOKSHIRE GROCERY COMPANY
- CASEY'S GENERAL STORES, INC.
- CHARTER COMMUNICATIONS, INC.
- COMCAST CABLE COMMUNICATIONS, LLC / FANDANGO MEDIA, LLC
- DELL USA, L.P.
- DILLARDS, INC.
- DISH NETWORK, LLC
- FIRST DATA MERCHANT SERVICES LLC / FIRST DATA CANADA LTD.
- FLOOR & DECOR OUTLETS OF AMERICA, INC.
- HOBBY LOBBY STORES, INC.
- HY-VEE, INC.
- KOHL'S DEPARTMENT STORES, INC.
- K-VA-T FOOD STORES, INC.
- MARDEL, INC.
- MEIJER, INC.
- MURPHY OIL USA, INC.
- NORWEGIAN CRUISE LINE HOLDINGS LTD.
- PUBLIX
- QUIKTRIP CORPORATION
- RAYMOUR'S FURNITURE COMPANY, INC.
- RETAIL SERVICES & SYSTEMS, INC.
- ROSS STORES, INC.
- SCHNUCK'S MARKETS, INC.
- SIRIUS XM RADIO, INC.
- STARBUCKS CORPORATION
- SUPERVALU CORPORATE
- VERIZON SERVICES CORP / CELLCO PARTNERSHIP / VERIZON SOURCING LLC
- WAWA, INC.
- WEIS MARKETS, INC.
- ~~All other entities with whom Discover has settled Claims regarding the Misclassified Card Transactions during the Relevant Time Period as of the date of entry of the Preliminary Approval Order~~
- WENDY'S INTERNATIONAL, LLC*

*Corporate-owned locations only.

# EXHIBIT B

## EXHIBIT B

The MID Amount associated with a particular MID shall be calculated using the following methodology.

**1. Definitions**

1.1. **Annual Gross Misclassified Card Transaction Volume:** the total gross number of Misclassified Card Transactions for a given ~~year~~ period associated with a given MID, which shall be based on the information provided by Discover to the Settlement Administrator.

1.2. **Annual Net Misclassified Card Transaction Sales Volume:** the total net (sales plus adjustments minus returns) Misclassified Card Transactions in U.S. Dollars for a given ~~year~~ period associated with a given MID, which shall be based on the information provided by Discover to the Settlement Administrator.

1.3. **Annual MID Amount:** the amount associated with a given MID for a given ~~year~~period, as determined by following the formula set forth in Exhibit B Section ~~2.1–2.3~~2.1–2.2.

1.4. **Annual MID Interest Amount:** the amount associated with a given Annual MID Amount, as determined by following the formula set forth in Exhibit B Section ~~2.4~~2.3.

1.5. **Escrow Final Funding Date:** the date of the additional payment to or refund from the Settlement Escrow Account contemplated to be made 235 days after the Effective Date pursuant to the Settlement Agreement Section 5.11.

1.6. ~~1.5.~~**Expected Per Transaction Rewards MID Discount:** the blended fee rate that Discover has estimated would have been charged for sales associated with a given MID on a per sale transaction basis for Rewards card transactions for a given year if Misclassified Card Transactions were correctly classified, which shall be based on the information provided by Discover to the Settlement Administrator.

1.7. ~~1.6.~~**Expected Per Transaction Premium MID Discount:** the blended fee rate that Discover has estimated would have been charged for sales associated with a given MID on a per sale transaction basis for Premium card transactions for a given year if Misclassified Card Transactions were correctly classified, which shall be based on the information provided by Discover to the Settlement Administrator.

1.8. ~~1.7.~~**Expected Per Transaction Premium Plus MID Discount:** the blended fee rate that Discover has estimated would have been charged for sales associated with a given MID on a per sale transaction basis for Premium Plus card transactions for a given year if Misclassified Card Transactions were correctly classified, which shall be based on the information provided by Discover to the Settlement Administrator.

1.9. ~~1.8.~~**Expected Variable Rewards MID Discount:**  the blended fee rate that Discover has estimated would have been charged for sales associated with a given MID on a variable percentage basis for Rewards card transactions for a given year if Misclassified Card Transactions were correctly classified, which shall be based on the information provided by Discover to the Settlement Administrator.

1.10. ~~1.9.~~**Expected Variable Premium MID Discount:**  the blended fee rate that Discover has estimated would have been charged for sales associated with a given MID on a variable percentage basis for Premium card transactions for a given year if Misclassified Card Transactions were correctly classified, which shall be based on the information provided by Discover to the Settlement Administrator.

1.11. ~~1.10.~~**Expected Variable Premium Plus MID Discount:**  the blended fee rate that Discover has estimated would have been charged for sales associated with a given MID on a variable percentage basis for Premium Plus card transactions for a given year if Misclassified Card Transactions were correctly classified, which shall be based on the information provided by Discover to the Settlement Administrator.

1.12. ~~1.11.~~**Historic Per Transaction MID Discount:**  the blended fee rate that was charged for sales associated with a given MID on a per sale transaction basis for Misclassified Card Transactions for a given year, which shall be based on the information provided by Discover to the Settlement Administrator.

1.13. ~~1.12.~~**Historic Variable MID Discount:**  the blended fee rate that was charged for sales associated with a given MID on a variable percentage basis for Misclassified Card Transactions for a given year, which shall be based on the information provided by Discover to the Settlement Administrator.

~~1.13.        **Interest Rate:**  the average Generic United States 1 Year Government Bill rate for a given year, which has the following value for the following years (Source: Bloomberg):~~

1.14. **Interest Rate:**  the interest rate payable for a given year under this Methodology, as listed below, which is based on (a) for 2007 and 2008, the average 1-year rate from the Treasury Yield Curve; (b) for 2009 through 2024, the average 1-year Treasury Bill Rate; and (c) for 2025 as set forth below (rounded to the nearest tenth of a percent):

| Year | Interest Rate |
|------|---------------|
| 2007 | ~~n/a~~4.5% |
| 2008 | ~~3.18~~1.8% |
| 2009 | ~~0.45~~0.4% |
| 2010 | ~~0.30~~0.3% |

| | |
|---|---|
| 2011 | ~~0.17~~0.2% |
| 2012 | ~~0.17~~0.2% |
| 2013 | ~~0.12~~0.1% |
| 2014 | ~~0.11~~0.1% |
| 2015 | ~~0.30~~0.3% |
| 2016 | ~~0.60~~0.6% |
| 2017 | ~~1.19~~1.2% |
| 2018 | ~~2.31~~2.3% |
| 2019 | ~~2.05~~2.0% |
| 2020 | ~~0.37~~0.4% |
| 2021 | ~~0.10~~0.1% |
| 2022 | ~~2.77~~2.8% |
| 2023 | ~~5.08~~5.1% |
| 2024 | ~~(Average Generic United States 1-Year Government Bill rate for 2024 as of date of entry of Preliminary Approval Order) *multiplied by* (# of days in 2024 through the date of entry of the Preliminary Approval Order *divided by* 366)~~<br><br>4.7% |
| 2025 and later | The average 1-Year Treasury Bill Rate for such year (or, for the year during which the Escrow Final Funding Date occurs, as of the Escrow Final Funding Date), multiplied by a fraction, the numerator of which is the number of calendar days elapsed during such year prior to the Escrow Final Funding Date, and the denominator of which is 365. |

1.15. ~~1.14.~~**MID:** the definition assigned to this term in the Settlement Agreement.

1.16. ~~1.15.~~**MID Amount:**  sum of all Annual MID Amounts and all Annual MID Interest Amounts for a given MID, except as otherwise set forth in Section 2.4.[1]

1.17. ~~1.16.~~**Misclassified Card Transaction:**  the definition assigned to this term in the Settlement Agreement.

~~1.17.        Ratio to 2016:  the ratio, expressed as a percentage, between total Discover Card sales volume in 2016 and total Discover Card sales volume in each prior year.  The values are as follows; provided, that in the case of each MID where the acquirer or merchant has indicated that its first Discover sale occurred after 2007, for such MID the percentage below for each year prior to such first sale shall be deemed to be zero:~~

| ~~Year~~ | ~~2007~~ | ~~2008~~ | ~~2009~~ | ~~2010~~ | ~~2011~~ | ~~2012~~ | ~~2013~~ | ~~2014~~ | ~~2015~~ | ~~2016~~ |
|------|------|------|------|------|------|------|------|------|------|------|
| ~~Ratio to 2016~~ | ~~74%~~ | ~~76%~~ | ~~72%~~ | ~~77%~~ | ~~83%~~ | ~~87%~~ | ~~91%~~ | ~~95%~~ | ~~98%~~ | ~~100%~~ |

1.18. **Rebalanced Rewards Sales Percentage:**  18.717%.

1.19. **Rebalanced Premium Sales Percentage:**  43.437%.

1.20. **Rebalanced Premium Plus Sales Percentage:**  37.846%.

2. *The following methodology shall be followed to determine the MID Amount associated with a particular MID.*

   **2.1. Calculating the Annual MID Amounts for ~~2016~~ 2011 – 2023:**

   - Step 1: multiply the Annual Gross Misclassified Card Transaction Volume for ~~2016~~ 2011 by the Historic Per Transaction MID Discount for ~~2016~~2011; then multiply the Annual  Net Misclassified Card Transaction Sales Volume for ~~2016~~ 2011 by the Historic Variable MID Discount for ~~2016~~2011.  Then add those two resulting values together.

   - Step 2:  multiply the Annual Gross Misclassified Card Transaction Volume for ~~2016~~ 2011 by the Rebalanced Rewards Sales Percentage; then multiply that value by the Expected Per Transaction Rewards MID Discount for ~~2016~~2011.

   - Step 3:  multiply the Annual Net Misclassified Card Transaction Sales Volume for ~~2016~~ 2011 by the Rebalanced Rewards Sales Percentage; then multiply that value by the Expected Variable Rewards MID Discount for ~~2016~~2011.

   - Step 4:  add the values from Steps 2 and 3.

---

[1] There are rare instances where the sum of all Annual MID Amounts is less than or equal to zero, which occurs because consumer pricing for a given MID exceeds commercial pricing. In those rare instances, the MID Amount will be zero.

- Step 5: repeat Steps 2 through 4, except use the Rebalanced Premium Sales Percentage, the Expected Per Transaction Premium MID Discount for ~~2016~~2011, and the Expected Variable Premium MID Discount for ~~2016~~2011.

- Step 6: repeat Steps 2 through 4, except use the Rebalanced Premium Plus Sales Percentage, the Expected Per Transaction Premium Plus MID Discount for ~~2016~~2011, and the Expected Variable Premium Plus MID Discount for ~~2016~~2011.

- Step 7: add the values from Steps 4 through 6.

- Step 8: subtract the value from Step 7 from the value from Step 1; this is the Annual MID Amount for ~~2016~~2011.

- Step 9: repeat Steps 1 through 8 for each year from ~~2017~~ 2012 through 2023 to get the Annual MID Amounts for those years, replacing the ~~2016~~ 2011 values in those Steps for the applicable values from the applicable year.

- ~~Step 10: review the sum of the values from Steps 8 and 9. If the sum of Steps 8 and 9 is greater than zero U.S. dollars, move to Section 2.2 below. Otherwise, do not proceed any further in the Methodology, and the MID Amount for the years 2007 – 2023 will be zero U.S. dollars.~~

~~2.2.~~ **~~Calculating the Annual MID Amounts for 2011 – 2015:~~**

- ~~Step 1: multiply both the MID's Annual Gross Misclassified Card Transaction Volume for 2016 and Annual Net Misclassified Card Transaction Sales Volume for 2016 by the Ratio to 2016 value for 2015 (98%).~~

- ~~Step 2: repeat Section 2.1 Step 1, except use the revised Annual Gross Misclassified Card Transaction Volume and the revised Annual Net Misclassified Card Transaction Sales Volume from Section 2.2 Step 1.~~

- ~~Step 3: repeat Section 2.1 Step 2, except use the revised Annual Gross Misclassified Card Transaction Volume from Section 2.2 Step 1.~~

- ~~Step 4: repeat Section 2.1 Step 3, except use the revised Annual Net Misclassified Card Transaction Sales Volume from Section 2.2. Step 1.~~

- ~~Step 5: add the values from Steps 3 and 4.~~

- ~~Step 6: repeat Steps 3 through 5, except use the Rebalanced Premium Sales Percentage, the Expected Per Transaction Premium MID Discount for 2016, and the Expected Variable Premium MID Discount for 2016.~~

- ~~Step 7: repeat Steps 3 through 5, except use the Rebalanced Premium Plus Sales Percentage, the Expected Per Transaction Premium Plus MID Discount for 2016, and the Expected Variable Premium Plus MID Discount for 2016.~~

- ~~Step 8:  add the values from Steps 5 through 7.~~

- ~~Step 9:  subtract the value from Step 8 from the value from Step 2; this is the Annual MID Amount for 2015.~~

- ~~Step 10:  repeat Steps 1 through 9 for each year from 2011 through 2014, replacing the Ratio to 2016 percentages in Step 1 with the value for the applicable year (2014 = 95%; 2013 = 91%; 2012 = 87%; 2011 = 83%).~~

**2.2. ~~2.3.~~Calculating the Annual MID Amounts for 2007 –2010:**

- ~~Step 1:  repeat~~ Repeat Section ~~2.2~~2.1 Steps 1 through 9 for each year from 2007 through 2010, ~~replacing the Ratio to 2016 percentages in Section 2.2 Step 2 with the value for the applicable year (2010 = 77%; 2009 = 72%; 2008 = 76%; 2007 = 74%),~~ except (1) for Section ~~2.2~~2.1 Step ~~6~~5 use a Rebalanced Premium Sales Percentage of 81.28%, and (2) skip Section ~~2.2 Step 7~~2.1 Step 6; except appropriate adjustments will be made to account for the fact that Premium cards started circulating on October 11, 2007 and Premium Plus cards started circulating on October 14, 2010.

**2.3. ~~2.4.~~Calculating the Annual MID Interest Amount:**

- Step 1:  for a given Annual MID Amount for a given year, multiply the Annual MID Amount by the Interest Rate for ~~the subsequent~~ that year, assuming interest starts to accrue as of July 1 of that calendar year ~~(e.g. if starting with the Annual MID Amount for 2007, multiply by the Interest Rate for 2008)~~.

- Step 2:  multiply the sum of the Annual MID Amount and the value from Step 1 by the Interest Rate for the next-in-time calendar year (e.g. if starting with the Annual MID Amount for 2007, multiply the sum of the Annual MID Amount and the value from Step 1 by the Interest Rate for ~~2009~~2008).

- Step 3:  continue the process, multiplying the sum of the Annual MID Amount and the values from all preceding steps by the Interest Rate for the next-in-time calendar year~~, through 2024 up to date of entry of the Preliminary Approval Order.~~ up through the Escrow Final Funding Date.

**2.4  Calculating the MID Amount:**

The MID Amount associated with a particular MID shall be the sum of all Annual MID Amounts and all the Annual MID Interest Amounts to determine the MID Amount associated with a particular MID as set forth in Sections 2.1–2.3 of this Methodology; except, in the event that the MID Amount so calculated for a particular MID under Sections 2.1–2.3 of this Methodology is less than the MID Amount calculated for that MID pursuant to the previously filed Methodology (*CAPP*, ECF No. 59-1, Ex. B) (the "Original Methodology") beginning with the first month that the MID processed a Discover Credit Card Transaction according to Discover's records (including records discovered and validated only after the Original Methodology was developed

and submitted to the Court) (the "Original Methodology MID Amount"), then the MID Amount for that MID will be equal to the Original Methodology MID Amount.

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **CAPP, INC., YOUNG PEOPLES DAY CAMPS INC., KMJA DAY CAMPS, INC., AND PRAYUS GROUP LLC,** on behalf of themselves and all others similarly situated, | Case No. 1:23-cv-04676 |
| Plaintiffs, | |
| v. | |
| **DISCOVER FINANCIAL SERVICES, DFS SERVICES, LLC, AND DISCOVER BANK**, | |
| Defendants. | |
| **LEMMO'S PIZZERIA, LLC**, individually and on behalf of all others similarly situated, | Case No. 1:23-cv-14250 |
| Plaintiff, | |
| v. | |
| **DISCOVER FINANCIAL SERVICES, DFS SERVICES, LLC, DISCOVER BANK, AND DOES 1–100**, | |
| Defendants. | |
| **SUPPORT ANIMAL HOLDINGS, LLC, and LENNYS CASITA, LLC**, individually, and on behalf of all other similarly situated, | Case No. 1:23-cv-15297 |
| Plaintiffs, | |
| v. | |
| **DISCOVER FINANCIAL SERVICES, DFS SERVICES, LLC, DISCOVER BANK, AND DOES 1–100**, | |
| Defendants. | |

## [PROPOSED] ORDER GRANTING
## FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Before the Court is Plaintiffs' Motion for Final Approval (the "Motion") of the Class

Action Settlement Agreement and Release (the "Agreement" or "Settlement") entered January 21,

2025 by Plaintiffs CAPP, Inc.; Young Peoples Day Camps Inc.; Prayus Group LLC; Lemmo's

Pizzeria, LLC; and Lennys Casita, LLC (collectively, the "Settlement Class Representatives") and

Defendants Discover Financial Services; DFS Services, LLC; and Discover Bank (collectively

"Discover" and together with the Settlement Class Representatives, the "Parties").

Having considered the Motion, the exhibits and declarations attached thereto, and all other

filings and argument related to the Motion, it is hereby **ORDERED, ADJUDGED, AND**

**DECREED** that the Motion is **GRANTED** under Rule 23(e)(2) of the Federal Rules of Civil

Procedure.

The Court makes the following findings and rulings:

1.       Capitalized terms not otherwise defined in this Order have the meanings provided

in the Agreement.

2.       The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C.

§ 1332(d), has personal jurisdiction over the parties and Members of the Settlement Class, and

venue is proper in this District.

3.       The Court hereby affirms its preliminary findings and determinations in the

Preliminary Approval Order that the Settlement Class meets the requirements for certification

under Federal Rule of Civil Procedure 23(a) and (b)(3), and finally certifies, for purposes of the

Settlement only, the Settlement Class as defined in the Agreement:

> All End Merchants, Merchant Acquirers, and Payment Intermediaries involved in
> processing or accepting a Misclassified Card Transaction during the Relevant
> Period, except the entities and individuals listed on Exhibit A to the Agreement.

2

4.      The Settlement Class meets the requirements for classification as a settlement class under Federal Rules of Civil Procedure 23(a) and 23(b)(3).  Specifically, the Court finds, for settlement purposes only, that (1) the Settlement Class Members are sufficiently numerous that joinder is impracticable; (2) there are questions of law and fact common to Settlement Class Members; (3) proposed Settlement Class Representatives' claims are typical of those of all Members of the Settlement Class; (4) proposed Settlement Class Representatives and Settlement Class Counsel have fairly and adequately represented, and will continue to fairly and adequately represent, the interests of the Settlement Class Members; and (5) the Settlement Class meets the predominance and superiority requirements of Rule 23(b)(3).

5.      For purposes of the Settlement only, the Court hereby re-affirms its determinations in the Preliminary Approval Order; appoints Plaintiffs CAPP, Inc.; Young Peoples Day Camps Inc.; Prayus Group LLC; Lemmo's Pizzeria, LLC; and Lennys Casita, LLC as Settlement Class Representatives; and appoints Roger N. Heller of Lieff Cabraser Heimann & Bernstein LLP, Catherine Pratsinakis of Dilworth Paxson LLP, and Taras Kick of The Kick Law Firm, APC as Settlement Class Counsel for the Settlement Classes.

6.      The Court finds that the notice provisions of the Class Action Fairness Act, 28 U.S.C. § 1715, were complied with in this matter.

7.      The Court finds that the method for disseminating notice to the Settlement Class, as provided for in the Settlement, as described in Plaintiffs' motions for preliminary and final approval of the Settlement, and as previously approved and directed by this Court's Preliminary Approval Order, has been effectively implemented by the Settlement Administrator and the Parties.  The Court finds that the method for disseminating notice (a) constituted the best notice that is practicable under the circumstances; (b) constituted notice that was reasonably calculated,

under the circumstances, to apprise Settlement Class Members of (i) the nature of this litigation; (ii) the definition of the Settlement Class; (iii) the class claims and issues; (iv) that a Settlement Class Member could enter an appearance through an attorney if the Member so desired; (v) that all Settlement Class Members were required to submit a timely and valid Settlement Claim to be eligible to receive a Settlement Payment; (vi) the time and manner by which Members could submit a Settlement Claim; (vii) that the Court would exclude from the Settlement Class any member who timely and validly requested exclusion; (viii) the time and manner for requesting exclusion; and (ix) the binding effect of a class judgment on Settlement Class Members who did not timely and validly exclude themselves from the Settlement under Federal Rule of Civil Procedure 23(c)(3); (c) constituted due, adequate, and sufficient notice to all persons and entities entitled to notice; and (d) met the applicable requirements of Federal Rule of Civil Procedure 23, the due process guarantees of the U.S. Constitution, and all other applicable laws.

8.     The Court finds that all Settlement Class Members and all persons and entities who fall within the definition of the Settlement Class have been adequately provided with an opportunity to exclude themselves from the Settlement by submitting a request for exclusion in conformity with the Agreement and this Court's Preliminary Approval Order.  A list of those persons and entities who timely and validly excluded themselves from the Settlement is attached hereto as **Exhibit 1**.  Persons and entities listed on **Exhibit 1** are not bound by the Settlement, this Final Approval Order, or the accompanying Judgment, and are entitled to no relief under the Settlement.  All other persons or entities who fall within the definition of the Settlement Class, excluding the entities listed on **Exhibit 1**, are Settlement Class Members and part of this Settlement, and are and shall be bound by this Final Approval Order, the accompanying Judgment, and the Settlement.

9.      [PLACEHOLDER FOR DETAILS ON ANY OBJECTIONS]

10.     [PLACEHOLDER FOR DETAILS ON SETTLEMENT ADMINISTRATOR REPRESENTATIONS ABOUT NOTICE AND CLAIMS PROCESS AND RESPONSE RATE]

11.     The Court hereby finally approves the Settlement and finds that the Settlement is, in all respects, fair, reasonable, and adequate and in the best interests of the Settlement Class Representatives and the Settlement Class, having considered that (a) the Settlement Class Representatives and Settlement Class Counsel have adequately represented the Settlement Class; (b) the Agreement is the result of arm's-length negotiations between experienced counsel representing the interests of the Settlement Class Representatives, the Settlement Class, and Discover; (c) the relief provided for the Settlement Class is adequate, taking into account the costs, risks, and delay of further litigation, trial, and appeal, and the effectiveness of the method set forth in the Agreement for distributing relief to the Settlement Class, including the method of processing Settlement Claims and calculating Settlement Payments; and (d) Settlement Class Members are treated equitably relative to each other.

12.     Based upon a review of all of the factors to be considered when determining whether to grant final approval, the Motion is hereby **GRANTED**, and the Settlement Agreement and its terms are hereby found to be and **APPROVED** as fair, reasonable, and adequate and in the best interest of the Settlement Class.  The Parties and Settlement Administrator are directed to consummate and implement the Settlement in accordance with its terms, including distributing Settlement Payments to Settlement Class Members and making such other disbursements from the Settlement Escrow Account as provided by this Agreement within the time set forth in the Agreement.  Upon the occurrence of the Effective Date, Discover is directed to, within one hundred thirty five ( (135) days after the Effective Date, provide to the Settlement Administrator and

Settlement Class Counsel an affidavit verifying the Non-Claimant Payments Discover has made on or before the Claim Deadline, including the Total Non-Claimant Payments and a breakdown of the individual payments (by recipient and associated MID(s)) comprising the Total Non-Claimant Payments. Within that same time period, information obtained by Discover in connection with negotiation of Non-Claimant Payments shall be disclosed to the Settlement Administrator and Settlement Class Counsel as necessary and appropriate to effectuate the Settlement, and to accomplish the purposes of Section 3.4.2 and Section 3.5.1 of the Settlement. This information is and shall be considered highly confidential, and it shall not be further distributed except as directed by this Court or with Discover's written agreement.

13.     The Claims and complaints filed against Discover in these cases are dismissed in their entirety, with prejudice, and each side is to bear its own costs except as specified in the Agreement and the Court's separate order regarding attorneys' fees.

14.     Upon entry of this Order and the accompanying Judgment, and in addition to the preclusive effect of the dismissal with prejudice of the claims asserted against Discover in the litigation pursuant to the Settlement, the Releasing Parties shall be deemed to have released and forever discharged the Released Parties from any and all Released Claims and are permanently barred and enjoined from asserting, commencing, prosecuting, or continuing any of the Released Claims against the Released Parties.

15.     In consideration of the benefits provided under the Agreement, and for other good and valuable consideration set forth in the Agreement, each of the Settlement Class Members and Releasing Parties shall, by operation of this Approval Order and Final Judgment, have fully, finally, and forever released, relinquished, acquitted, and discharged all Released Claims against each of the Released Parties in accordance with Section 3.7 of the Agreement, the terms of which

section are incorporated herein by reference. The terms of the Agreement, which are incorporated by reference into this Order, shall have res judicata and other preclusive effects as to the Released Claims as against the Released Parties. The Released Parties may file the Agreement and/or this Order in any other litigation to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any similar defense or counterclaim.

16.     All Settlement Class Members and Releasing Parties (including any persons purporting to act on their behalf) have covenanted not to sue any Released Party with respect to any Released Claim and shall be permanently barred and enjoined from instituting, commencing, prosecuting, continuing, or asserting any Released Claim against any Released Party, directly or indirectly (including in any action purportedly brought on behalf of the general public of the United States or of a particular state, district, or territory therein). This permanent bar and injunction is necessary to protect and effectuate the Agreement and this Order, and this Court's authority to effectuate the Settlement, and is ordered in aid of this Court's jurisdiction and to protect its judgments. Notwithstanding the foregoing, nothing in this Order and judgment shall preclude an action to enforce the terms of the Agreement.

17.     A separate order shall be entered regarding Class Counsel's motion for attorneys' fees and costs as allowed by the Court.

18.     Pursuant to the terms of the Agreement, Settlement Class Representatives, Settlement Class Counsel, Discover, and Discover Counsel have, and shall be deemed to have, released each other from any and all Claims relating in any way to any Party or counsel's conduct in the Actions, including but not limited to any Claims of abuse of process, malicious prosecution, or any other claims arising out of the institution, prosecution, assertion, or resolution of the

Actions, including Claims for attorneys' fees, costs of suit, or sanctions of any kind except as otherwise expressly set forth in Section 3.6 of the Agreement.

19.     Without affecting the finality of this Final Approval Order and the accompanying Judgment in any way, the Court expressly retains continuing and exclusive jurisdiction over the Parties to this Agreement for the purpose of administration, consummation, validity, enforcement, and interpretation of this Agreement, the Final Approval Order, and any award of Attorneys' Fees and Expenses and Service Awards for a period of three years from the date of the signing of this order. Any dispute, challenge, question, or the like relating to the Settlement or Agreement may be heard by this Court.

20.     In the event that the Effective Date does not come to pass, this Final Approval Order and the accompanying Judgment shall be rendered null and void and shall be vacated, *nunc pro tunc*, except insofar as expressly provided to the contrary in the Agreement, and without prejudice to the status quo ante rights of Settlement Class Representatives, Settlement Class Members, and Discover.

21.     This Final Approval Order, the accompanying Judgment, the Preliminary Approval Order, the Agreement, all negotiations, statements, agreements, and proceedings relating to the Agreement, and any matters arising in connection with settlement negotiations, proceedings, or agreements shall not constitute or be described as, construed as, offered as or received against Discover or the other Released Parties as evidence or an admission of: (a) the truth of any fact alleged by Settlement Class Representatives in the litigation; (b) any liability or wrongdoing of or by Discover or the Released Parties; or (c) that this litigation or any other action may be properly certified as a class action for litigation, non-settlement purposes.

22.     Pursuant to Federal Rules of Civil Procedure 54 and 58, the Court finds that there

is no just reason for delay and expressly directs this Final Approval Order and the accompanying

Judgment for immediate entry by the Clerk of the Court.

**SO ORDERED.**

Dated:                                    BY THE COURT:

                                                          _____

                                                          HONORABLE STEVEN C. SEEGER
                                                          UNITED STATES DISTRICT JUDGE

# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **CAPP, INC., YOUNG PEOPLES DAY CAMPS INC., KMJA DAY CAMPS, INC., AND PRAYUS GROUP LLC,** on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>**DISCOVER FINANCIAL SERVICES, DFS SERVICES, LLC, AND DISCOVER BANK**,<br><br>        Defendants. | Case No. 1:23-cv-04676 |
| **LEMMO'S PIZZERIA, LLC**, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>**DISCOVER FINANCIAL SERVICES, DFS SERVICES, LLC, DISCOVER BANK, AND DOES 1–100**,<br><br>        Defendants. | Case No. 1:23-cv-14250 |
| **SUPPORT ANIMAL HOLDINGS, LLC, and LENNYS CASITA, LLC**, individually, and on behalf of all other similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>**DISCOVER FINANCIAL SERVICES, DFS SERVICES, LLC, DISCOVER BANK, AND DOES 1–100**,<br><br>        Defendants. | Case No. 1:23-cv-15297 |

**[PROPOSED] JUDGMENT**

This matter came before the Court for hearing on [DATE] regarding Plaintiffs' Motion for Final Approval of the Class Action Settlement Agreement and Release (the "Agreement" or "Settlement") between Plaintiffs CAPP, Inc.; Young Peoples Day Camps Inc.; Prayus Group LLC; Lemmo's Pizzeria, LLC; and Lennys Casita, LLC (collectively, the "Settlement Class Representatives") and Defendants Discover Financial Services; DFS Services, LLC; and Discover Bank (collectively "Discover"). Having considered the Motion, the exhibits and declarations attached thereto, and all other filings and argument related to the motion, and for the reasons set forth in the accompanying Order finally approving the Settlement, it is hereby **ORDERED, ADJUDGED, and DECREED**:

1.      Plaintiffs' Motion for Final Approval of the Settlement is hereby GRANTED and the Settlement is APPROVED.

2.      The claims against Discover in this matter by Plaintiffs and the members of the Settlement Class that did not timely and properly exclude themselves from the Settlement are hereby dismissed, and the complaints filed by Plaintiffs in the above-captioned matters are DISMISSED WITH PREJUDICE.

3.      This is a final judgment as defined by Federal Rule of Civil Procedure 54(a).


Dated:                                      BY THE COURT:

                                            _____ ____
                                            HONORABLE STEVEN C. SEEGER
                                            UNITED STATES DISTRICT JUDGE