**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CAPP, INC., YOUNG PEOPLES DAY CAMPS INC., KMJA DAY CAMPS, INC., AND PRAYUS GROUP LLC, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br> v. <br><br> DISCOVER FINANCIAL SERVICES, DFS SERVICES, LLC, AND DISCOVER BANK, <br><br> Defendants. | Case No. 1:23-cv-04676 |
| LEMMO'S PIZZERIA, LLC, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br> v. <br><br> DISCOVER FINANCIAL SERVICES, DFS SERVICES, LLC, DISCOVER BANK, AND DOES 1–100, <br><br> Defendants. | Case No. 1:23-cv-14250 |
| SUPPORT ANIMAL HOLDINGS, LLC, and LENNYS CASITA, LLC, individually, and on behalf of all other similarly situated, <br><br> Plaintiffs, <br> v. <br><br> DISCOVER FINANCIAL SERVICES, DFS SERVICES, LLC, DISCOVER BANK, AND DOES 1–100, <br><br> Defendants. | Case No. 1:23-cv-15297 |

**JOINT DECLARATION IN SUPPORT OF (I) PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT, AND (II) PLAINTIFFS' MOTION
FOR AN AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**

Catherine Pratsinakis, Roger Heller, and Taras Kick hereby declare and state as follows:

1.     I, Catherine Pratsinakis, am an attorney licensed to practice law in the States of Delaware, Pennsylvania, and New Jersey, and a member in good standing with the Delaware, Pennsylvania, and New Jersey State Bars.  I am also a member in good standing of the general bar of Illinois.  *See CAPP Inc. v. Discover Fin. Servs*, No. 1:23-cv-04676 ("*CAPP*"), ECF No. 25.  I am a partner at the law firm Dilworth Paxson LLP ("Dilworth Paxson"), co-chair of the Plaintiffs' Rights Practice Group, counsel for plaintiffs in the *CAPP* action, and one of the Court-appointed Settlement Class Counsel.[1]

2.     I, Roger Heller, am an attorney licensed to practice law in the State of California, and a member in good standing of the California State Bar.  I am admitted *pro hac vice* to practice before this Court.  *See Lemmo's Pizzeria, LLC v. Discover Fin. Servs.*, No. 1:23-cv-14250 ("*Lemmo's*"), ECF No. 27.  I am a partner at Lieff Cabraser Heimann & Bernstein, LLP ("LCHB"), one of the plaintiff's counsel in the *Lemmo's* action, and one of the Court-appointed Settlement Class Counsel.

3.     I, Taras Kick, am an attorney licensed to practice law in the State of California, and a member in good standing of the California State Bar.  I am admitted *pro hac vice* to practice before this Court.  *See Lemmo's*, ECF No. 43.  I am a shareholder of The Kick Law Firm, APC ("Kick Law Firm"), one of the plaintiff's counsel in the *Lemmo's* action, and one of the Court-appointed Settlement Class Counsel.

4.     We are each over the age of eighteen, competent to make this declaration, and have personal knowledge of the following based on our active supervision of and participation in the

---

[1] Unless otherwise defined, capitalized terms appearing in this motion are defined as provided for in the Class Action Settlement Agreement and Release, *see CAPP*, ECF No. 65-1 (the "Settlement Agreement" or "Settlement").

prosecution and settlement of this litigation as further described below, and could and would testify to them if called upon to do so.

5.     We respectfully submit this declaration in support of (i) Plaintiffs' Motion for Final Approval of Class Action Settlement, and (ii) Plaintiffs' Motion for an Award of Attorneys' Fees, Costs, and Service Awards, both of which are filed contemporaneously herewith.

### Settlement Class Counsel's Pre-Filing Investigation and Initiation of this Litigation

6.     Beginning in or around April 2023, Settlement Class Counsel separately commenced investigating Discover's possible misclassification of credit card transactions and related overcharging of interchange fees.  The investigation was extensive and, collectively, included the review of Discover's merchant operating regulations, interchange fee price lists, financial statements, federal securities filings, and other publicly available information; interviews with potentially impacted entities; the gathering and analysis of documents from several such entities, including agreements between those entities and Discover or other intermediaries; and legal research into potential claims and theories of liability.

7.     In addition, Settlement Class Counsel located documents reflecting Discover's non-publicized card categories and pricing tiers to confirm, *inter alia*, the different interchange fee rates applicable to the various card types.  Settlement Class Counsel also determined that, for a least a decade, Discover had been charging interchange fees for "consumer" credit card accounts at the higher "commercial" rates.

8.     On July 19, 2023, following a multi-month investigation, Plaintiffs CAPP, Inc., Young Peoples Day Camps Inc., and KMJA Day Camps, Inc. initiated an action in this Court, asserting claims on behalf of a nationwide class and three state subclasses based on Discover's misclassification of card transactions.  *CAPP*, ECF No. 1

9.      That same day, after U.S. markets closed, Discover disclosed that it had in fact misclassified credit card transactions beginning in 2007:

> Beginning around mid-2007, Discover incorrectly classified certain credit card accounts into our highest merchant and merchant acquirer pricing tier. Incremental revenue resulting from this card product misclassification amounted to less than 1% of our cumulative discount and interchange revenue, gross, since that time, or less than two basis points as a percentage of sales over this timeframe. The misclassification affected pricing for certain merchants and merchant acquirers, but not for cardholders.

Discover Form 8-K, Press Release entitled *Discover Financial Services Reports Second Quarter 2023 Net Income of $901 Million or $3.54 Per Diluted Share*, filed July 19, 2023, *available at* https://www.sec.gov/ix?doc=/Archives/edgar/data/0001393612/000139361223000037/dfs-20230719.htm ("July 19 Press Release").

10.      Discover further stated in the July 19 Press Release that the impact of the misclassifications on its revenues "was not material" and reported "a liability of $365 million within accrued expenses and other liabilities to provide refunds to merchants and merchant acquirers as a result of the card product misclassification." *Id*.

11.      On August 11, 2023, the *CAPP* plaintiffs amended their complaint to include information from the July 19 Press Release, add Prayus Group LLC as an additional plaintiff, and add claims on behalf of three additional state subclasses. *CAPP*, ECF No. 13.

12.      On August 14, 2023, Plaintiff Lemmo's Pizzeria, LLC, whose counsel (like *CAPP* counsel) had been investigating this issue for several months, filed a complaint in the Central District of California, asserting claims arising from substantially the same alleged conduct on behalf of a nationwide class and California subclass. *Lemmo's*, ECF No. 1. On September 5, 2023, Lemmo's filed an amended complaint. *Lemmo's*, ECF No. 15.

13.     On August 29, 2023, Plaintiffs Support Animal Holdings, LLC and Lenny's Casita, LLC filed a complaint in the Central District of California, asserting claims arising from substantially the same alleged conduct on behalf of a nationwide class and California subclass. *Support Animal Holdings, LLC v. Discover Fin. Servs.*, No. 1:23-cv-15297, ECF No. 1. The *Support Animal* plaintiffs filed an amended complaint, also on August 29, 2023. *Support Animal*, ECF No. 3.

### <u>Initial Litigation in *CAPP* and Coordination of the Actions</u>

14.     Commencing in early August 2023, the *CAPP* plaintiffs sought to initiate merits discovery, including to hold a Rule 26(f) conference. After Discover refused to hold a Rule 26(f) conference, the *CAPP* plaintiffs filed a motion to compel one. *CAPP*, ECF No. 19. Discover sought to continue its deadline to respond to the pleadings and its deadline to submit a joint status report. *CAPP*, ECF No. 24 at 2.

15.     On September 11, 2023, counsel in the *CAPP* and *Lemmo's* actions entered into a Joint Prosecution Agreement whereby they agreed to partner and coordinate all efforts in the litigation.

16.     On September 12, 2023, the *Lemmo's* action was transferred to this District pursuant to a joint stipulation of the parties. *See Lemmo's*, ECF No. 21.

17.     In September 2023, the parties in the *CAPP* action briefed the *CAPP* plaintiffs' motion to compel a Rule 26(f) conference and Discover's motion to extend case deadlines. *See CAPP*, ECF Nos. 19, 22–24, 26–27.

18.     On September 12, 2023, the *CAPP* parties held a Rule 26(f) conference during which, among other things, Discover discussed certain data limitations and the corresponding need for *CAPP* plaintiffs to obtain data from merchant acquirers in order to identify merchants not reflected in Discover's data. *See, e.g.*, *CAPP*, ECF No. 29.

19.     On September 12, 2023, Discover served the *CAPP* plaintiffs with an initial set of written discovery requests seeking their agreements with Discover and any merchant acquirers and/or credit card processors.  On or around September 26, 2023, Discover served the *CAPP* plaintiffs with its initial disclosures.

20.     On September 28, 2023, the Court entered a Minute Order in the *CAPP* action, directing the parties to cooperate on the exchange of any arbitration-related documents in a prompt manner, which the *CAPP* parties had already commenced doing. The Court also partially denied Discover's request for an extension directing the *CAPP* parties to submit a joint initial status report within five days of its Order.  *CAPP*, ECF No. 28.

21.     On October 3, 2023, the *CAPP* plaintiffs (in coordination with the *Lemmo's* plaintiff) and Discover filed a Joint Initial Status Report Under Rule 26(f), wherein, *inter alia*, Discover reiterated its contention that certain class members may be subject to arbitration based on their merchant acquirer agreements.  *CAPP*, ECF No. 29.  The parties also set forth their respective positions on factual and legal issues, damages, discovery, and proposed competing case schedules.  *Id.*

22.     On October 3, 2023, the *Support Animal* action was transferred to this District pursuant to a joint stipulation of the parties.  *See Support Animal*, ECF No. 14.

23.     On October 26, 2023, *CAPP* plaintiffs responded to Discover's initial set of written discovery requests, producing both written responses and responsive documents.  The *Lemmo's* plaintiff and *Support Animal* plaintiffs thereafter produced similar responsive documents.

24.     On the parties' motions, on January 8, 2024, this Court found the *CAPP*, *Lemmo's*, and *Support Animal* actions related for purposes of Local Rule 40.4, and ordered that

the *Lemmo's* and *Support Animal* actions be reassigned to this Court for all further proceedings. *See CAPP*, ECF No. 36; *Lemmo's*, ECF No. 4; *Support Animal*, ECF No. 21.

25.     On January 23, 2024, the *CAPP* and *Lemmo's* Plaintiffs filed a motion to consolidate the Related Actions and appoint their counsel as interim class counsel pursuant to Rule 23(g) and appoint counsel for the *Support Animal* plaintiffs as liaison counsel. *CAPP*, ECF No. 40.

## The Parties Engage in Extensive Mediation Efforts

26.     In late 2023, the parties began discussing, and ultimately agreed to engage in mediation and to exchange information and documents pertinent to same. On January 23, 2024, the parties informed the Court that they had scheduled a mediation with the Hon. Jay C. Gandhi (Ret.) of JAMS, and at the parties' request the Court stayed the litigation pending the anticipated mediation. *CAPP*, ECF Nos. 41, 42.[2] The Court extended the stay multiple times at the parties' request, in light of the parties' ongoing mediation efforts. *See CAPP*, ECF Nos. 44, 46, 48, 50, 52, 54.

27.     The parties engaged in three full-day mediation sessions with the Honorable Jay Gandhi (Ret.) of JAMS, on February 13, 2024, March 21, 2024, and May 14, 2024, as well as numerous follow-up meetings and discussions through the mediator. In connection with the mediation efforts, Settlement Class Counsel received and reviewed pertinent data, documents, and other information regarding Plaintiffs and putative class members, pricing and fee structures, credit card processing agreements, the misclassified transactions, and damages, as well as certain

---

[2] For the remainder of this Joint Declaration, corollary cites in *Lemmo's* and *Support Animal* are omitted.

data limitations at Discover.  Settlement Class Counsel also conducted extensive legal research into the potential claims and other legal issues in this case.

28.     In connection with the mediation sessions, the parties prepared and exchanged formal mediation statements setting forth their views on the claims, defenses, and damages, and exchanged and analyzed pertinent data and documents.

29.     The negotiations were extremely hard-fought and adversarial, and lasted several months.  Through these efforts, and with the assistance of Judge Gandhi, the parties were able to reach an agreement in principle to resolve this action on a class basis.  In addition to other key deal terms like a payment "floor" amount (i.e., minimum total payout; $500 million in the original settlement agreement and $540 million in the modified Settlement) that substantially exceeded what Discover initially set aside to provide refunds to affected entities, Settlement Class Counsel were able to achieve numerous additional benefits for the Class through their efforts, as reflected in the Settlement and summarized in the approval papers filed herewith.

30.     One hurdle in the negotiations involved Discover's assertion that, as part of a refund program, applicable payment amounts should reflect the "net impact" of misclassifications—i.e., that the fee overcharges (at issue in this litigation) should be offset by any fee undercharges Discover claimed resulted from certain consumer cards being misclassified into a *lower* tier than they otherwise could have been (not at issue in this litigation).  The "net impact" approach, if implemented, would have significantly decreased the potential damages for the class.  Settlement Class Counsel challenged the "net impact" approach.  To Discover's credit, Discover agreed not to pursue the "net impact" approach, and to instead, in the Settlement, calculate the MID Amounts based on the estimated amount of overcharges only.

31.     Thereafter, the parties continued to work diligently to negotiate and prepare the written settlement agreement, which included the methodology for calculating settlement payments, a detailed notice program and claim process, notice and claim forms, and other settlement exhibits.

32.     All of this was very challenging.  Given the complexity of the payment processing ecosystem, data limitations at Discover, and other unique qualities of this litigation, the negotiations required a uniquely substantial effort by the parties and Settlement Class Counsel, including in negotiating and crafting the notice, claims, and allocation processes.  That included extensive negotiations regarding, *inter alia*, the methodology for calculating the MID Amounts for each MID, the details of Discover's payment of interest as part of such amounts, how to identify and reach impacted entities that are not identifiable from Discover's data, the minimum payment provision, settlement funding provisions that provide additional interest benefits to the settlement payment recipients, and various other provisions designed to boost participation and increase the payments to the Settlement Class.

33.     This included extensive efforts over multiple months to negotiate and craft a notice and claims process that is thoughtfully designed to reach the affected entities, maximize participation, calculate settlement payment amounts using the best available data, and ensure that settlement payments go to the entities that incurred the alleged overcharges.

34.     After the parties reached agreement in principle on the material terms of the original settlement, the parties separately negotiated regarding attorneys' fees, expenses, and service awards, through Judge Gandhi.

35.     At all times, the settlement negotiations were adversarial, non-collusive, and conducted at arm's-length.

**Confirmatory Discovery**

36.     In addition to reviewing data, documents and other information in connection with the mediation sessions, as described above, Settlement Class Counsel also engaged in substantial confirmatory discovery.

37.     In connection with these efforts, Settlement Class Counsel retained and worked closely with three subject matter experts: damages expert and finance Professor Nejat Seyhun at the University of Michigan, payment industry expert Professor Adam Levitin at Georgetown University, and database expert Arthur Olsen of Cassis Technology, LLC.

38.     After reaching an agreement in principle, Settlement Class Counsel conducted confirmatory discovery regarding, among other areas, the fee overcharges, the methodology Discover employed to calculate the estimated overcharges, Discover's pertinent data, database and data limitations, the code underlying the methodology and calculation of MID Amounts, additional information about interchange fee pricing tiers/percentages, and Discover's current internal controls regarding the classification of Discover cards.  Among other things:

a.      Discover produced, and Settlement Class Counsel and their experts reviewed, additional data regarding the estimated fee overcharges.

b.      Settlement Class Counsel conducted multi-hour formal interview sessions of pertinent Discover personnel regarding Discover's calculation of the approximate overcharges for each MID, and the proposed methodology for the same.  Following that session, Discover provided additional information requested by Plaintiffs regarding the methodology and the underlying data and data limitations.

c.      Settlement Class Counsel conducted a site visit along with two of Plaintiffs' experts, to Discover's headquarters in Riverwoods, Illinois that

included interviews of top members of Discover's data analytics team, including a Senior Manager and Discover's then-Vice President of Global Pricing and Analytics, and where Settlement Class Counsel and the experts investigated Discover's pertinent databases, confirmed the scope and nature of Discover's data used for the calculations set forth in the Methodology, reviewed Discover's quality control and validation efforts to ensure the accuracy of the underlying the data used to calculate restitution, and reviewed and analyzed the computer code underlying the calculations set forth in the Methodology.

d.      Following the site visit, Discover produced a random, statistically significant sample of merchant data from its database for review and use by Mr. Olsen to confirm that the calculations and output conformed with the formula in the Methodology.

e.      Settlement Class Counsel also conducted a formal interview of Discover Bank's then-Vice President of Portfolio Management regarding the assumptions used in the Methodology and, prior to and after that session, Discover produced additional documents and information pertinent to the same.

39.     Additionally, throughout the litigation and negotiations, Settlement Class Counsel continued interviewing potentially impacted entities and monitoring Discover's financial filings and other public releases of information.

**Preliminary Approval of the Original Settlement**

40.    The extensive efforts summarized above culminated in a settlement agreement, which the parties executed on June 28, 2024.  *See CAPP*, ECF Nos. 55, 59-1 (the "original" settlement agreement).

41.    After finalizing the original settlement agreement, the parties continued to work hard on negotiating and finalizing the features of the extensive Notice Program, working with the proposed (and now appointed) settlement administrator, Epiq Class Action & Claims Solutions, Inc. (the "Settlement Administrator").  Settlement Class Counsel were able to negotiate multiple improvements that expanded the reach and effectiveness of the notice program.  Settlement Class Counsel also continued to work diligently on finalizing the numerous forms of notice, claim forms, and other communications and instructions to be used in connection with the notice and claims process.  Given the Notice Program here, the efforts required on this front were significantly more extensive than in a typical class action settlement.

42.    On August 27, 2024, Settlement Class Counsel filed Plaintiffs' unopposed motion for preliminary approval of the original settlement agreement.  *CAPP*, ECF No. 59.

43.    On October 22, 2024, the Court entered an order granting preliminary approval of the original settlement agreement.  *CAPP*, ECF No. 63.

44.    Following the Court's preliminary approval order, Settlement Class Counsel, in conjunction with the Settlement Administrator and Discover, worked hard on the launch of the notice program and settlement administration.

**Discover Identifies New Transaction Data and Negotiations and Confirmatory Discovery Resume**

45.    On November 21, 2024, while the parties and Settlement Administrator were working on launching the notice program and settlement administration, Discover notified

Settlement Class Counsel that Discover had identified new entity-level transactional data (in the possession of Discover Bank) that would support a more accurate calculation of MID Amounts for the years 2007 through 2015, despite its previously unsuccessful efforts to locate such data. Discover also claimed that the pre-2016 data was of the same quality and reliability as its later data.

46. The availability to such additional data meant the parties could now calculate Annual MID Amounts for years 2007 through 2015, using the MID-level transactional data rather than relying on assumptions and extrapolation for those years (as was done under the methodology in the original settlement). As a reminder, the extrapolation was previously necessary for those years because, as it explained, Discover "d[id] not have similar transaction-level data prior to 2016." *See CAPP*, ECF No. 60.

47. Promptly after learning about the discovery of this new data, Settlement Class Counsel served document requests on Discover about the new data. In response, Discover produced additional information to Settlement Class Counsel, including a statistically random sample of the newly discovered data for review and analysis by Mr. Olsen.

48. Additionally, Settlement Class Counsel conducted a second interview of Discover's former Vice President of Global Pricing, Controls, and Analytics regarding the source, reliability, and completeness of the new data.

49. Following an approximately four-week period of additional confirmatory discovery and expert analysis, and after the parties agreed that the newly discovered data was sufficient to support revisions to the original settlement, methodology, and notice program, Settlement Class Counsel spent several additional weeks negotiating with Discover to reach a modified settlement agreement (the "Settlement").

50.     The modified Settlement and Methodology provide for more precise calculations of the MID Amounts for the MIDs in the Settlement Class (i.e., because it utilizes the actual data and not extrapolations for years 2007 through 2015).  In addition, Settlement Class Counsel successfully negotiated additional improvements for the Settlement Class.

51.     For example, the modified (i.e., operative) Methodology assumes that each misclassified card transaction took place at the mid-point of the year (i.e., July 1), instead of the last day of the year (i.e., December 31) which had been used in the original Methodology.  This modification results in higher interest amounts calculated, and thus higher MID Amounts.  *See* Settlement, Ex. B § 2.3.  Additionally, Settlement Class Counsel negotiated a significantly longer period during which interest will accrue for all MID Amounts—specifically, through the Escrow Final Funding Date, which occurs 235 days after the Effective Date.  *See* Settlement § 5.11, Ex. B § 2.3.  Discover had originally contemplated, as part of a refund program, that interest would only accrue through December 31, 2023.  In the original settlement agreement, Discover agreed to extend that to the date of the Court's original preliminary approval order of the original settlement agreement, which occurred on October 22, 2024.  Under the terms of the modified Settlement, interest will continue to accrue until no earlier than February 2027.  Plaintiffs' expert, Mr. Olsen, calculates that, taken together, these interest-related improvements will increase the Settlement's Total Settlement Payout figure (i.e., the ceiling) by approximately $170 million, as compared to under the interest calculation method and timing Discover had originally contemplated.

52.     Additionally, because a small portion of MIDs in the Settlement Class would have had higher Total MID Amounts under the methodology set forth in the original settlement agreement than they would have had under the modified Methodology, Settlement Class Counsel negotiated a provision in the modified Settlement whereby the Total MID Amounts for those

particular MIDs will still be calculated based on the original methodology. *See* Settlement, Ex. B § 2.4.

53.     As part of the modified Settlement, Settlement Class Counsel also negotiated a $40 million increase to the Minimum Total Class Payout (i.e., from $500 million to $540 million) and improvements to the Notice Plan and claims process that were made possible by the discovery of the additional data for 2007 through 2015. *See CAPP*, ECF No. 65 (discussing enhancements).

54.     On January 21, 2025, the parties executed the modified Settlement Agreement. *See CAPP*, ECF No. 65-1 (the "Settlement").

55.     Despite the many additional hours that Settlement Class Counsel spent in connection with the modification of the settlement and related discovery, Settlement Class Counsel did not seek to renegotiate the Settlement's terms regarding attorneys' fees and expenses.

56.     On January 22, 2025, Plaintiffs moved for preliminary approval of the Settlement, as modified. *CAPP*, ECF No. 65.

57.     On July 30, 2025, the Court issued an order granting preliminary approval of the modified Settlement. *CAPP*, ECF No. 68 (the "Preliminary Approval Order").

**<u>Settlement Class Counsel's Ongoing Work on Settlement Implementation</u>**

58.     In the months following the Court's Preliminary Approval Order, Settlement Class Counsel have continued to work diligently on notice and other settlement implementation efforts, working closely with the Settlement Administrator. Given the requirements of the Notice Program here, the time and commitment required of Settlement Class Counsel for implementation work have been, and will continue to be, uniquely substantial in this case. To date, these efforts have included overseeing the dissemination of the initial wave of direct notices

and extensive media notice program, working closely with the Settlement Administrator on the Settlement Website and online claims and other functionalities, working on various supplemental materials needed to fully and successfully execute the administration process, following up communications to Settlement Class Members, and staying in daily communication with the Settlement Administrator regarding class member inquiries and important issues such as the first phase of the notice and claims process and related collection of data from the Merchant Acquirers and Payment Intermediaries. Settlement Class Counsel have also spoken with numerous Settlement Class Members and third-party aggregators since the Notice Program commenced, answering questions about the litigation, the Settlement, the claims process, and other issues.

59. Settlement Class Counsel also reached out to, and held video conferences, with officials at both the Federal Deposit Insurance Corporation ("FDIC") and the Office of the Comptroller of the Currency ("OCC") following the filing of the modified Settlement. The conference with the FDIC occurred on June 5, 2025, and the conference with the OCC occurred on September 12, 2025. During these conferences, Settlement Class Counsel provided information about the Settlement, the Methodology, and notice and claims program.

60. As contemplated by the Settlement, Settlement Class Counsel will continue to expend substantial resources on this matter through the Fairness Hearing, on notice and other implementation efforts and communicating with Settlement Class Members. Their work will continue well after the Fairness Hearing, should the Court grant final approval of the Settlement, including regarding payment allocation and distribution and other implementation matters, and ongoing communications with Settlement Class Members.

61.     Attached hereto as **Exhibit 1** is a true and correct copy of the Declaration of Cameron R. Azari, Esq. on Implementation of Notice Program.

**Settlement Class Counsel's Motion for an Award of Attorneys' Fees and Expenses**

62.     As described above, Settlement Class Counsel devoted substantial time and resources to litigating these actions and achieving an excellent outcome for the Settlement Class. Settlement Class Counsel did so despite the very real risk that they might receive no compensation at all.

63.     Attached hereto as **Exhibit 2** is a true and correct copy of the Declaration of Catherine Pratsinakis in Support of Settlement Class Counsel's Motion for Attorneys' Fees, Costs, and Service Awards.

64.     Attached hereto as **Exhibit 3** is a true and correct copy of the Declaration of Roger Heller in Support of Motion for an Award of Attorneys' Fees, Costs, and Service Awards.

65.     Attached hereto as **Exhibit 4** is a true and correct copy of the Declaration of Taras Kick in Support of Motion for an Award of Attorneys' Fees, Costs, and Service Awards.

66.     In addition to the Settlement Class Counsel firms, counsel for the *Support Animal* plaintiffs, Pomerantz LLP and Portnoy Law Firm LLP, worked on this litigation.  Attached hereto as **Exhibit 5** is a true and correct copy of the Joint Declaration of Joshua Silverman and Lesley Portnoy in Support of Plaintiffs' Motion for Final Approval and for an Award of Attorneys' Fees and Expenses.

67.     Attached hereto as **Exhibit 6** is a true and correct copy of the Declaration of Brian T. Fitzpatrick.

**Plaintiffs' Commitment to the Class**

68.     Settlement Class Counsel seek service awards of $7,500 each for the five Settlement Class Representatives, in recognition of their commitment on behalf of the Settlement

Class in this case.  We believe that the requested Settlement Class Representative service awards are well justified under the circumstances here.

69.     Attached hereto as **Exhibit 7** is a true and correct copy of the Declaration of D. Montgomery Caplan on Behalf of CAPP, Inc. in Support of Motion for Final Approval of Class Action Settlement and Motion for an Award of Attorneys' Fees, Costs and Service Awards.

70.     Attached hereto as **Exhibit 8** is a true and correct copy of the Declaration of Keith Glauber on Behalf of Young People's Day Camps Inc. in Support of Motion for Final Approval of Class Action Settlement and Motion for an Award of Attorneys' Fees, Costs and Service Awards.

71.     Attached hereto as **Exhibit 9** is a true and correct copy of the Declaration of Katan K. Patel on Behalf of Prayus Group LLC in Support of Motion for Final Approval of Class Action Settlement and Motion for an Award of Attorneys' Fees, Costs and Service Awards.

72.     Attached hereto as **Exhibit 10** is a true and correct copy of the Declaration of Harrison Jacob Lemmo on Behalf of Lemmo's Pizzeria, LLC in Support of Motion for Final Approval of Class Action Settlement and Motion for an Award of Attorneys' Fees, Costs, and Service Awards.

73.     Attached hereto as **Exhibit 11** is a true and correct copy of the Declaration of Lenny Nourafchan [Lenny's Casita, LLC] in Support of Plaintiffs' Motion for Final Approval of Class Action Settlements and Request for Service Awards.

## Risks of Continued Litigation

74.     In our view, the Settlement achieved here represents a very strong result for the Settlement Class, particularly given the risks of ongoing litigation.  Among other risks, Discover sought discovery regarding a potential motion to compel arbitration, which if successful could, alone, have at least substantially impacted the cases and delayed the litigation (and any potential

recovery) by a year or more. Discover also made clear that it would vigorously defend this case on the merits and seek an offset for what it asserted were certain *under*charges stemming from misclassifications. Among other merits issues, Discover made clear that it would vigorously defend against allegations that it violated federal and state statutes and common law, and disputed the premise that it had a legal obligation to Settlement Class Members in implementing its internal credit card classification system. Moreover, Discover has made clear that it would oppose certification of a litigation class. Discover's data limitations, along with the lack of ready access to the different contracts between Merchant Acquirers and End Merchants, might have created additional complications and challenges for measuring damages and obtaining relief for Settlement Class Members absent a settlement. Even if Plaintiffs were able to overcome these challenges, and prevail at trial on the merits, they would have faced an inevitable appeal.

75.     While Settlement Class Counsel absolutely believe they could overcome these challenges, such challenges are indicative of the risks that Plaintiffs and the proposed Settlement Class would face if the litigation were to continue. The proposed Settlement provides substantial, well-tailored relief while allowing Settlement Class Members to avoid the risks of unfavorable, and in some cases dispositive, rulings on these and other issues.

76.     Had this litigation continued, it is quite possible, if not likely, that Discover would have proceeded independently to implement a remediation program that lacked many of the benefits created as a result of the parties' negotiation, which include: more generous payment calculation terms, the default payment provisions negotiated as part of the Settlement, a minimum total payment amount (i.e., floor), minimum payments for valid claimants, the additional interest provisions that increase payments substantially, and the thoughtful, tailored notice program, user-friendly claims process, and allocation process. Despite this lingering risk

(which remained even as the parties engaged in their mediation efforts), Settlement Class Counsel committed themselves and their resources to this litigation and to negotiating a strong class Settlement for the Settlement Class.

77.     Another major benefit of the Settlement is that it helps the Settlement Class avoid further delay in obtaining relief.  Proceeding with the litigation could add years to the resolution, given the legal and factual issues raised and likelihood of appeals.  Avoiding further delay is particularly beneficial in this case, given the alleged overcharges occurred as many as 17 years ago, meaning that as time passes, it is going to get harder to track down and pay Settlement Class Members.

<u>**The Settlement Should Be Approved**</u>

78.     Based on our experience and knowledge about the facts and issues in this litigation, we believe that the proposed Settlement represents a fair, reasonable, and adequate result for, and is in the best interests of, the Settlement Class.

We declare under penalty of perjury of the laws of the United States that the forgoing is true and correct.

Executed on December 1, 2025, at Philadelphia, PA.

By: _s/  Catherine Pratsinakis_____


Executed on December 1, 2025, at San Francisco, CA.

By: _s/  Roger N. Heller_____


Executed on December 1, 2025, at Los Angeles, CA.

By: _s/ Taras Kick_____

## CERTIFICATION PURSUANT TO GENERAL ORDER 16-0020

I hereby certify that the content of the document is acceptable to all persons required to sign the document, and all such persons have consented to inclusion of their electronic signatures on the document.

Dated: December 1, 2025                          */s/ Catherine Pratsinakis*