**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **CAPP, INC.,** et al., on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>**DISCOVER FINANCIAL SERVICES, DFS SERVICES, LLC, AND DISCOVER BANK**,<br><br>    Defendants. | Case No. 1:23-cv-04676 |
| **LEMMO'S PIZZERIA, LLC**, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>**DISCOVER FINANCIAL SERVICES, DFS SERVICES, LLC, DISCOVER BANK, AND DOES 1–100**,<br><br>    Defendants. | Case No. 1:23-cv-14250 |
| **SUPPORT ANIMAL HOLDINGS, LLC,** et al., individually, and on behalf of all other similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>**DISCOVER FINANCIAL SERVICES, DFS SERVICES, LLC, DISCOVER BANK, AND DOES 1–100**,<br><br>    Defendants. | Case No. 1:23-cv-15297 |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

The Discover defendants—Discover Financial Services, DFS Services LLC, and Discover Bank (collectively, "Discover")—submit this memorandum in support of Plaintiffs' Motion for Final Approval of the parties' proposed class action settlement (the "Settlement"). *See Capp, Inc. v. Discover et al*, Case No. 1:23-cv-04676, Dkt. No. 71 ("Plaintiffs' Motion").

## INTRODUCTION

After Discover's disclosure that it had classified certain Discover credit card accounts into an incorrect tier, which affected the interchange fees paid by businesses involved in processing Discover credit card transactions, Discover stated that it was working to "prepare a program to compensate affected direct merchants and merchant acquirers" and that it was "in discussions with regulators regarding this matter."[1] The Settlement in this case is the best way to fulfil Discover's commitments to provide compensation to affected entities.

The Settlement proposes to pay class members compensation based on a methodology that reflects a reasonable estimate of the amount of excess interchange fees paid by those involved in processing a misclassified transaction, plus interest. And the process implemented following the Court's preliminary approval has demonstrated that the class-wide settlement, with its court-approved claims process, is an appropriate and effective mechanism for assessing and distributing settlement payments to affected businesses. Over the past nine months, Discover, Class Counsel, and the Settlement Administrator worked together to implement a comprehensive claims process on schedule to deliver a fair outcome to all class members. This has involved the collection of significant amounts of data from payment processors about downstream businesses that may have been impacted by the misclassification issue—information that otherwise would have been

---

[1] *Discover Financial Services Reports Second Quarter 2023 Net Income of $901 Million or $3.54 Per Diluted Share* (July 19, 2023), available at https://investorrelations.discover.com/newsroom/press-releases/press-release-details/2023/Discover-Financial-Services-Reports-Second-Quarter-2023-Net-Income-of-901-Million-or-3.54-Per-Diluted-Share/default.aspx ("July 19 Press Release").

unavailable to the parties—to identify the broadest range of class members, provide them notice of the Settlement, and fairly apportion appropriate payment.

The reaction of the class strongly supports approval of the settlement. To date, more than 1.4 million claims have been submitted under the Settlement. Still others will receive settlement monies without having to submit a claim. No significant objection was raised; the one letter received may not have even come from a class member. While 100 entities opted out of the Settlement, the vast majority of these entities were businesses with direct relationships to Discover who wanted to negotiate payments directly with Discover and outside of the settlement process. The Parties and the Settlement anticipated that this might occur, and Discover has made or agreed to make $263 million to date in qualifying nonclaimant payments using the same methodology that applies under the Settlement. (These payments are subject to validation through the process set forth in the Settlement.) Although validated non-claimant payment amounts count toward satisfying Discover's obligations under the Settlement, the Settlement does not operate through a shared fund, and they will not reduce the payments that Settlement Class Members receive under the Settlement.

It is rare that a class-action settlement seeks to distribute 100 percent of monies that a putative class may potentially be entitled to plus interest, but that is what this Settlement proposes to do. Judging by the response of the Settlement Class to date, it is the relief that class members seek. Discover's commitment to providing payment to impacted businesses is reflected in the Settlement, and it is the most fair and effective way to provide payment to the Settlement Class. This Court should promptly grant final approval of the Settlement so that the settlement administrator can begin validating settlement claims, allocating settlement monies, and issuing settlement payments.

I.      THE SETTLEMENT METHODOLOGY HAS PROVED A RELIABLE MEANS
        TO DETERMINE SETTLEMENT AMOUNTS ACROSS THE CLASS.

Plaintiffs' Motion for final approval summarizes the key background leading up to the Settlement, as well as its terms. As explained in Plaintiffs' Motion, not every entity involved in processing Discover credit card transactions paid excess interchange fees. *See* Motion at 5–6. And Discover's records generally do not allow it to determine which entities involved in a credit card transaction paid excess interchange fees; the necessary information is held by third parties. Furthermore, given the time period at issue, Discover lacks contact information for many class members, so it cannot directly distribute settlement payments to the vast majority of the Settlement Class. The Settlement has created a process to overcome these challenges in which a third-party settlement administrator is collecting and analyzing information provided by Discover and affected class members to provide notice to class members and to ultimately calculate and distribute settlement payments.

The centerpiece of the Settlement is Discover's commitment to compensate affected entities using the methodology set forth in Exhibit B to the Settlement Agreement, presented with Plaintiffs' motion for preliminary approval. *See Capp*, Dkt. No. 65.1, Ex. B. Discover has agreed to pay at least $540 million and up to $1.225 billion before interest to affected entities. *Id*. §§ 2.37, 2.79.

The settlement methodology is the product of significant work by Discover and Class Counsel. The methodology reflects Discover's effort to determine the amount that each "merchant identifier code"—a code corresponding to a particular merchant account in Discover's records—was impacted by the misclassification issue. *Id.* § 2.33. Multiple entities—such as an acquirer and a merchant—usually are associated with a single merchant identifier code. Likewise, a single merchant may be associated with multiple merchant identifier codes, because merchant identifiers

are assigned by merchant acquirers and merchants may change acquirers over time. *Id.*

The methodology calculates the difference between the estimated amount actually charged for improperly classified Discover Card transactions from January 1, 2007 to December 31, 2023, and any estimated *lower* amount that would have been charged for such transactions had the card used in the transaction been properly classified. *Id.* § 3.5 & Ex. B. These amounts are estimates because, among other things, Discover does not necessarily know the precise fee rates that would have applied to the transactions at issue. As a result, the methodology incorporates reasonable assumptions—including interest payments—that are intended to estimate the amount of excessive interchange fees charged to each merchant identifier account. *Id.*, Ex. B §§ 2.1–2.3.

Importantly, the settlement methodology has been vetted by Plaintiffs' counsel and their experts and was finalized after the parties' mediation sessions. The methodology also has been accepted by some of Discover's largest and most sophisticated customers, including entities that settled with Discover outside of the class claims process.

The methodology puts many affected class members in a better position than they would be if this case were to proceed to litigation. As noted in Plaintiffs' Motion (at 6), depending on how cards were classified, some class members were charged more in interchange fees than they should have been absent misclassification. But other class members were charged *less* than they could have been absent misclassification. The settlement methodology ignores the undercharges associated with these latter transactions entirely. In other words, the methodology has provided a means to compensate class members based on the gross amount overcharges they paid, ignoring the net impact of any misclassification that could have resulted in class members paying less than if transactions had been classified differently.

The methodology forms the backbone of the Settlement, and has been validated many times over as the most appropriate way to allocate payments among the wide range of possible class members. The effectiveness and fairness of the methodology is a strong reason why the Settlement should be granted final approval.

**II.    THE LACK OF ANY SERIOUS OBJECTIONS AND THE RELATIVELY LIMITED NUMBER OF OPT-OUTS EVIDENCE THE FAIRNESS OF THE SETTLEMENT.**

For a Settlement that covers a seventeen-year time period, and potential total payouts in excess of $1.2 billion, the lack of any serious objections reflects the fairness of the Settlement.

Only one objection to the settlement was made. The objection, which was not accompanied by any proof that the objector was a class member, questioned whether *Discover* has been treated fairly in this putative class action. The lack of any serious objections goes to the third and fourth *Wong* factors regarding fairness of a settlement, as evidence that there is no recorded opposition to the Settlement and no negative reaction to the Settlement by class members. *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014).

The low opt-out rate is further evidence of the fairness of the Settlement. Class members had more than seven months to consider and opt out of the settlement. Only 100 entities did so. This is in contrast to the over 1.4 million claims that have been submitted under the Settlement.

As to the 100 entities that did opt out: The parties always anticipated that some businesses might opt-out of the settlement, potentially in an attempt to negotiate a resolution directly with Discover. For purposes of satisfying its minimum payment obligations, the Settlement allows Discover to take "credit" for any amount Discover pays or agrees to pay to any opt-out or Exhibit A entity, but only in accordance with the procedures set forth in the Settlement and only up to the amount the entity would have received had it remained a member of the Settlement Class. *See Capp*, Dkt. No. 65.1, § 3.5. To date, these qualifying payments (which are subject to validation in

accordance with the terms of the Settlement) amount to about $263 million. Those payments will not reduce payments available to Settlement Class Members.

The lack of any substantive objections, the sizeable number of submitted claims, and the limited number of opt-outs all provide strong reasons for the Court to grant final approval of this Settlement.

## CONCLUSION

A class-action settlement provisions an appropriate mechanism to help Discover fulfill its promise to compensate affected entities by, among other things, incorporating a court-approved notice plan and a court-supervised claims process. For these reasons and the additional reasons set forth in Plaintiffs' motion for final approval, this Court should enter the Final Approval Order.

Dated: May 18, 2026

Respectfully submitted,

*/s/ Andrew Soukup*

Rachel E. Grossman
HWG LLP
1919 M Street N.W., Washington
DC 20036
Tel.: (919) 504-9824
Email: rgrossman@hwglaw.com

Julie B. Porter (#6243787)
SALVATORE PRESCOTT
PORTER & PORTER, PLLC
1010 Davis Street
Evanston, IL 60201
(312) 283-5711
porter@spplaw.com

Valerie L. Hletko
Andrew Soukup
Samuel Greeley
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW Washington, DC 20001-4956
Tel.: (202) 662-6000
Email: vhletko@cov.com
Email: asoukup@cov.com
Email: sgreeley@cov.com

*Counsel for Defendants Discover Financial Services, DFS Services LLC, and Discover Bank*